IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:19-cv-02660-RM-SKC

CHADWICK JORDAN,

        Plaintiff,

v.

LISA FORBES, and
DAVID STEWARD,

        Defendants.

## RECOMMENDATION RE: MOTION TO DISMISS [#25]

During his enrollment at the University of Colorado-Denver, Plaintiff Chadwick Jordan was involved in a number of disciplinary actions, which ultimately culminated in his expulsion from the school. [#17.][1] According to the Amended Complaint, three disciplinary cases—nos. 2015039201, 2016034501, and 2016085401—arose from Plaintiff's allegedly disruptive and/or threatening behavior and his failure to disclose his criminal history. [#17 at pp.4-5; #1 at pp. 86, 121; #25-1 at pp.14-15.][2] Defendant David Steward initiated and made the final determination in each of Plaintiff's disciplinary cases. [*Id.*]

---

[1] The Court uses "[#__.]" to refer to specific docket entries in CM/ECF.

[2] In his original complaint, Plaintiff included over 160 pages of documents, including the notices regarding his disciplinary cases. [#1.] In his Amended Complaint, he continues to refer to those attached documents. [*See* #17.] These attachments did not

1

On August 7, 2017, Steward initiated Disciplinary Case No. (DCN) 2017000601 against Plaintiff based on Plaintiff's allegedly disruptive conduct in the Financial Aid Office. [#17 at p.6.] Following a hearing, where Plaintiff was neither permitted to record nor cross-examine witnesses, Steward suspended Plaintiff and ordered him to attend four counseling sessions with Defendant Dr. Lisa Forbes, a psychotherapist. Plaintiff appealed Steward's determination, but the suspension was upheld. [*Id.*]

On February 19, 2018, Plaintiff met with Dr. Forbes and told her five police officers arrived at his apartment for a welfare check because they heard Plaintiff had $80,000 and an AR-15 rifle. According to Plaintiff, Dr. Forbes is the only person he spoke to about the incident. Thereafter, on March 5, 2018, Steward initiated DCN 2017094401 based Plaintiff's purchase of the AR-15 and on threats Plaintiff allegedly made to a neighbor. [*See* #1 at pp.185-86.] Steward immediately suspended Plaintiff on this basis. Steward then sent a second notice of charges in June based on Plaintiff's alleged possession of a controlled substance. [*Id.*] Plaintiff and Steward met telephonically on July 31, 2018, to discuss Plaintiff's response to the charges, and

---

include pages related to Disciplinary Case No. 2016085401, despite being central to Plaintiff's claims. Defendants provided these missing pages. The Court concludes it may review these attachments without converting the present motion to one for summary judgment. *See Lorusso v. Boulder Brands, Inc.*, No. 15-cv-00679-MSK-KMT, 2017 WL 4334070, at *1 (D. Colo. Feb. 27, 2017) ("If a document is not incorporated by reference or attached to the complaint, but is referenced in the complaint and is central to the plaintiff's claim, the defendant may submit an 'indisputably authentic copy to the court to be considered on a motion to dismiss.'") (citing *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)).

2

Steward issued his decision on September 6, 2018, expelling Plaintiff from the University. [#17 at p.7.]

In his Amended Complaint, Plaintiff claims Steward violated his Fourteenth Amendment rights to procedural and substantive due process. He also asserts state law claims for "breach of confidence, breach of contract, breach of duty of care, and invasion of privacy" against Dr. Forbes.[3] Defendants argue, pursuant to the Eleventh Amendment and the Colorado Governmental Immunity Act ("CGIA"), this Court lacks jurisdiction over Plaintiff's claims. [#25.] They also contend Steward is entitled to qualified immunity. [*Id.*] Having reviewed the Amended Complaint, the Motion and related briefing, and the relevant law, the Court concludes a hearing is unnecessary.[4] For the following reasons, the Court RECOMMENDS Defendants' Motion be GRANTED IN PART and DENIED IN PART.

## STANDARD OF REVIEW

### A.     Fed. R. Civ. P. 12(b)(1)

Defendants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(1). As courts of

---

[3] Plaintiff proceeds *pro se*; thus, the Court liberally construes his pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But the Court may not "supply additional factual allegations to round out a plaintiff's complaint." *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Nor may a plaintiff defeat a motion to dismiss by alluding to facts that have not been alleged, or by suggesting matters that were not pleaded. *Associated Gen. Contractors of Cal. Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *Pro se* plaintiffs must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[4] Plaintiff filed a Sur-Reply on October 27, 2021. [#38.] While the Federal Rules do not contemplate sur-replies, the Court, in its discretion, has considered it. Though the parties are reminded they must seek leave to file a sur-reply in the future.

limited jurisdiction, federal courts must have a specific legal basis for their jurisdiction. *See Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)). The determination of a court's subject matter jurisdiction is a question of law. *Madsen v. U.S. ex rel. U.S. Army, Corps of Eng'rs*, 841 F.2d 1011, 1012 (10th Cir. 1987). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

**B.     Fed. R. Civ. P. 12(b)(6)**

The Court accepts the well-pleaded facts as true and views the allegations in the light most favorable to the non-movant. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova*, 595 F.3d at 1124-25 (10th Cir. 2010) (internal citations omitted). The Court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause

4

of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotation marks omitted).

The *Twombly/Iqbal* pleading standard requires courts take a two-prong approach to evaluating the sufficiency of a complaint. *Id.* at 678–79. The first prong requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id.* at 678. The second prong requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Accordingly, in examining a complaint under Rule 12(b)(6), [courts] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). In other words, the court strips the complaint bare of the deficient allegations and determines whether the remainder plausibly states a claim for relief. But the standard is a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver,* 567 F.3d 1169, 1178 (10th Cir. 2009).

## ANALYSIS

**A.     Eleventh Amendment Immunity**

Defendants first contend, to the extent they are sued in their official capacities, the claims are barred by the Eleventh Amendment. In his Response and Sur-Reply, Plaintiff affirmatively states he is only suing these Defendants in their individual capacities. [#32 at pp.6-7; #38-1 at p.2.] Thus, the Court does not address any arguments regarding sovereign immunity because it does not apply to Plaintiff's claims, which are only brought against Defendants in their individual capacities.

**B.     Dr. Lisa Forbes**

The CGIA grants public employees immunity from tort liability for any act or omission undertaken in the scope of their employment, except for acts done willfully or wantonly. Colo. Rev. Stat. § 24-10-118(2)(a). Dr. Forbes is employed by the University, and therefore, is a public employee. *See Univ. of Colo. v. Booth*, 78 P.3d 1098, 1102 (Colo. 2003) (the University is an instrumentality of the state for CGIA purposes); Colo. Rev. Stat. § 24–10–103(4) ("Public employee" is defined as "an officer, employee, servant, or authorized volunteer of the public entity".). And Plaintiff's claims for breach of the duty of care and invasion of privacy are tort claims falling under the purview of the CGIA.[5] *G.A. Resort Condo. Ass'n, Inc. v. Chicago Title*

---

[5] The Amended Complaint also alleges a claim for "breach of confidence." But this is not a cognizable legal claim. Because this claim involves the allegations that Dr. Forbes revealed information told to her in confidence by Plaintiff in the context of a psychotherapist-patient relationship, the claim appears to be subsumed by, and redundant of, the claims for breach of the duty of care and invasion of privacy. The Court recommends dismissal of the "breach of confidence" claim on this basis, and

*Timeshare Land Tr., Inc.*, No. 19-CV-01870-RM-GPG, 2020 WL 5815029, at *13 (D. Colo. Sept. 14, 2020), *report and recommendation adopted*, 2020 WL 7022354 (D. Colo. Nov. 30, 2020) (citing *Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1263 (Colo. 2000)) ("[S]ome special relationships by their nature automatically trigger an independent duty of care that supports a tort action even when the parties have entered into a contractual relationship (i.e., attorney-client relationship, physician-patient relationship, insurer-insured relationship)."); *Robert C. Ozer, P.C. v. Borquez*, 940 P.2d 371 (Colo. 1997) (recognizing a tort claim for invasion of privacy in nature of unreasonable publicity given to one's private life).

Concerning Plaintiff's claim for breach of contract, the CGIA "was not intended to apply to actions grounded in contracts." *Berg v. State Bd. of Agric.*, 919 P.2d 254, 258 (Colo. 1996) (citing cases). "However, the form of the complaint does not determine whether the claim is based in tort or contract." *W.-Helmle v. Denver Dist. Att'ys Off.*, No. 19-cv-02304-RM-STV, 2020 WL 6119524, at *14 (D. Colo. May 29, 2020), *report and recommendation adopted as modified*, 2020 WL 5406126 (D. Colo. Sept. 9, 2020) (citing *Carothers v. Archuleta Cty. Sheriff*, 159 P.3d 647, 655 (Colo. App. 2006)). "Rather, the dispositive question in determining whether the CGIA bars a plaintiff's claim is whether the claim is a tort claim or *could be a tort claim*." *Id.* (emphasis added). Here, the Court has little trouble concluding this claim could be a tort claim. To be sure, Plaintiff's claim for breach of contract is based on the same

---

liberally construes the underlying factual basis for this "claim" as supporting the claims for breach of the duty of care and invasion of privacy.

7

facts as the tort claims—Dr. Forbes' alleged disclosure of information she learned during her session with Plaintiff. Moreover, the Court has reviewed the "non-disclosure agreement" and concludes the breach of contract claim is not based on an actual contract. *See Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013) (Courts are permitted to review "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."). This document contains no promises, bargains, or mention of consideration. Rather, the "non-disclosure agreement" is a notice of Plaintiff's rights as a patient. The signatures on the document are acknowledgments that Dr. Forbes provided Plaintiff with the information and Plaintiff read and understood his rights. [#38-2.] Therefore, this claim also falls under the CGIA.

The Court must now consider whether Plaintiff has sufficiently alleged Dr. Forbes acted willfully or wantonly with respect to his tort claims. The CGIA does not define "willful and wanton." But courts interpreting the CGIA have held "a person engages in 'willful and wanton' conduct when that person 'purposefully pursue[s] a course of action or inaction that he or she consider[s] would probably result in harm' to the plaintiff." *Romero v. Denver Public School Dist. No 1*, No. 09-cv-01043-CMA-KLM, 2010 WL 1235635, at *3 (D. Colo. March 18, 2020) (quoting *Castaldo v. Stone*, 192 F. Supp.2d 1124, 1141 (D. Colo. 2001)). "An essential component of the definition of willful and wanton conduct is that the actor specifically contemplated that his or her actions may cause harm to another and thereafter proceeded to act heedless of

that risk of harm." *Carani v. Meisner*, No. 08-cv-02626-MSK-CBS, 2009 WL 2762719, at *2 (D. Colo. Aug. 26, 2009).

Plaintiff alleges Dr. Forbes "acted in conscious disregard and with reckless indifference to the consequences of exposing the Plaintiff's treatment." [#17-1 at ¶17.] But this is a legal conclusion and naked assertion unsupported by related factual allegations, and therefore, the Court is not bound to accept this allegation as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's allegation that Dr. Forbes "knew under the circumstances and conditions [her conduct] would probably result in injury to Plaintiff" is similarly bare. The Amended Complaint does not allege any facts concerning Dr. Forbes' knowledge of some probable injury to Plaintiff; indeed, it is not clear from the Amended Complaint which potential injury (criminal proceedings, academic repercussions, or both) she is purported to have recognized and disregarded. The Court may not assume facts not specifically alleged in the Amended Complaint. *Whitney*, 113 F.3d at 1173-74.

When asserting willful and wanton behavior against a public employee, the CGIA requires a plaintiff to plead "the specific factual basis of such allegations" in his complaint or suffer dismissal for failure to state a claim upon which relief can be granted. Colo. Rev. Stat. § 24–10–110(5)(a)–(b). The Amended Complaint does not allege sufficient facts to plausibly establish Dr. Forbes "purposefully" acted in a way

9

that "would probably result in harm" to Plaintiff. Therefore, Plaintiff's claims against her are barred by the CGIA, and the Court recommends their dismissal.[6]

## C. David Steward

### 1. Statute of Limitations

Plaintiff filed his original complaint on September 17, 2019. Under the applicable statute of limitations, any claims accruing before September 17, 2017, are barred by the two-year statute of limitations. *See* Colo. Rev. Stat. § 13–80–102(g) (creating a two-year limitation period for "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "[a]ll other actions of every kind for which no other period of limitation is provided"); *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir.1993) (applying Colo. Rev. Stat. § 13–80–102 to a § 1983 claim). Defendants argue any conduct related to DCNs 2015039201, 2016034501, 2016085401, and 2017000601 is time barred.

Plaintiff does not challenge Defendants' proposition that claims related to DCNs 2015039201, 2016034501, and 2016085401 are time barred. Further, it does not appear any claims against Steward are based on these three disciplinary cases. Rather, these three disciplinary cases were pleaded with respect to Claim One (deliberate indifference) against Kristin Kushmider. Ms. Kushmider, and the deliberate indifference claim were previously dismissed from this action. [#22.]

---

[6] Considering this conclusion, the Court does not address Defendants' arguments regarding Colo. Rev. Stat. § 13-20-602 (certificates of review).

Plaintiff argues the remaining disciplinary case, DCN 2017000601, is not barred because his appeal of that case was not completed until September 20, 2017. Defendants argue the statute of limitations began to run on August 22, 2017, when Steward's conduct concerning that disciplinary case was complete, and therefore, the claim is time-barred. These arguments implicate principles of exhaustion of remedies and claim accrual, although the parties failed to address these issues directly.

In civil rights actions brought under 42 U.S.C. § 1983, "the constitutional violation actionable under § 1983 is complete when the wrongful action is taken." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). "This rule applies to two of the three kinds of § 1983 claims that can be brought under the Due Process Clause of the Fourteenth Amendment: (1) deprivations of rights guaranteed by the Bill of Rights and incorporated by the Due Process Clause, and (2) substantive due process rights." *Pinder v. Mitchell*, 658 F. App'x 451, 453 (10th Cir. 2016). Allegations that conduct violated procedural due process rights requires a plaintiff to first exhaust state remedies. *Id.*; *see also Heldman v. Oklahoma*, 415 F. Supp. 3d 1012, 1018 (W.D. Okla. 2019) (plaintiff failed to allege a procedural due process claim where she did not allege exhaustion of state remedies).

Neither party has addressed whether administrative appeals in these disciplinary cases are necessary to exhaust state remedies. The Court has reviewed the University's Student Code of Conduct and notes it provides that decisions made in the disciplinary process are "final, *pending the appeal process*." University of Colorado Denver, Student Code of Conduct at pp. 4-5 (September 2020) (emphasis

11

added).[7] Because Plaintiff was in the process of appealing DCN 2017000601, and his appeal was not complete until September 20, 2017, it appears Plaintiff timely filed his claim for procedural due process since he filed his Complaint on September 17, 2019. Without any substantive argument from the parties on this issue, and viewing the allegations in the Amended Complaint in the light most favorable to the non-movant, the Court recommends denial of the motion to the extent it seeks dismissal of the procedural due process claim involving DCN 2017000601.

In sum, to the extent they are asserted against Steward, the Court recommends Plaintiff's procedural and substantive due process claims arising out of DCNs 2015039201, 2016034501, and 2016085401 be dismissed as time barred. On this same basis, the Court recommends Plaintiff's substantive due process claim arising out of DCN 2017000601 be dismissed, but the procedural due process claim involving DCN 2017000601 remain.

2. Qualified Immunity

Defendant Steward has raised the qualified immunity defense, which the Court considers in the context of the procedural due process claim involving DCNs

---

[7] *See* https://www.ucdenver.edu/docs/librariesprovider284/default-document-library/cu-denver-student-code-of-conduct---final-with-suspension-update-9-16-20.pdf?sfvrsn=6b5464ba_2 (last visited April 15, 2021). This language also appears in the September 2017 University Student Code of Conduct (https://www.ucdenver.edu/docs/librariesprovider129/student-conduct-library/cudenver-codeofconduct.pdf?sfvrsn=1a4e07b9_2). The Court takes judicial notice of these University records. *See New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 703 (10th Cir. 2009) (taking judicial notice of two federal agency websites); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1223 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute.").

12

2017000601 and 2017094401. Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). Qualified immunity is "immunity from suit rather than a mere defense to liability [and] it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Whether defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

When the qualified immunity defense is raised, the plaintiff bears the burden of showing, with particularity, facts and law establishing the inference that the defendant violated a clearly established federal constitutional or statutory right. *Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994). If the plaintiff fails to satisfy either prong, the defendant is entitled to qualified immunity. *Pearson*, 555 U.S. at 236. The court has the discretion to consider these prongs in any order. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011).

As to the first prong, "[i]f no constitutional right would have been violated were the allegations established," the inquiry is at an end. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong—whether the right was clearly established—must be considered "in light of the specific context of the case, not as a broad general proposition." *Id.* An official's conduct "violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing is violating

13

that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

### a. Procedural Due Process

In his Amended Complaint, Plaintiff lists a number of procedural infirmities (occurring in DCNs 2017000601 and 2017094401), which purportedly violate his constitutional right to due process. These include:

1. Failing to provide the identities of any witnesses;
2. Preventing Plaintiff from cross-examining witnesses;
3. Conducting a hearing by telephone;
4. Preventing Plaintiff from recording the hearings;
5. Refusing to provide a transcript of the hearings;
6. Failure to provide Plaintiff with the evidence against him;
7. Not affording Plaintiff a presumption of innocence;
8. Failing to provide Plaintiff with an attorney;
9. Proceeding with the hearing while Plaintiff's criminal case was ongoing;
10. Failing to provide written finding of fact; and
11. Depriving him of an impartial tribunal.

(collectively, "Alleged Procedures.")

The Fourteenth Amendment's Due Process Clause states, "No state shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. The Supreme Court has recognized public school students have a

"property interest" in their public education, and that any deprivation of that education which is "not de minimis" requires some form of due process. *Goss v. Lopez*, 419 U.S. 565, 576 (1975) (holding that a ten-day suspension was not de minimis). In this context, courts have emphasized that less stringent procedural requirements attach when a school makes an academic decision about a student rather than when it takes disciplinary action against a student. *Board of Curators v. Horowitz*, 435 U.S. 78, 85-91 (1978). Where, as here, a dismissal or suspension is for disciplinary reasons, heightened procedural due process protections are required. *See Brown v. Univ. of Kansas*, 599 F. App'x 833, 837 (10th Cir. 2015). But, "the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Harris v. Blake*, 798 F.2d 419, 423 (10th Cir. 1986) (quoting *Cafeteria Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895 (1961)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (alterations in original).

### i. Alleged Procedures One – Ten

Defendants argue, even assuming Plaintiff stated plausible due process violations, he cannot meet his burden to show he had a clearly established right to Alleged Procedures one through ten. The Court agrees. Although Plaintiff spends much time discussing application of the procedures stated in 34 C.F.R. § 106.45.(a) and (b), this regulation does not apply.

This particular regulation specifies how public schools must respond to allegations of sexual harassment consistent with Title IX's prohibition against sex

15

discrimination. *See* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30026, 30028 (promulgating regulation pursuant to authority under 20 U.S.C. § 1682). None of Plaintiff's disciplinary actions involved allegations of sexual harassment, and further, the regulation in its current iteration (which requires live hearings and cross examinations) was adopted in 2020, and does not apply retroactively. *Doe v. Stonehill Coll., Inc.*, No. CV 20-10468-LTS, 2021 WL 706228, at *5 (D. Mass. Feb. 23, 2021) (citing 5 Fed. Reg. 30026, 30061). Plaintiff bears the burden to show he had a clearly established right, and in relying solely on this Title IX regulation, he has failed to meet his burden for Alleged Procedures one through ten. Defendant Steward is therefore entitled to qualified immunity as concerns these specific procedures.

### ii. Alleged Procedure 11 re: Impartial Tribunal

"A fundamental principle of procedural due process is a hearing before an impartial tribunal." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 518 (10th Cir. 1998) "A tribunal is not impartial if it is biased with respect to the factual issues to be decided at the hearing." *Id.* To disqualify a hearing officer or tribunal, there must be a "substantial showing of personal bias." *Id.* Honesty and integrity are presumed, so there must also be "some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to the factual issues being adjudicated." *Id.* (citing *Mangels v. Pena*, 789 F.2d 836, 838 (10th Cir. 1986)). "Plaintiff need not allege gender bias, or indeed any bias on the basis of any otherwise legally protected group or class of individuals. To the contrary, any type of actual bias

16

is sufficient." *Doe v. DiStefano*, No. 16-CV-1789-WJM-KLM, 2018 WL 2096347, at *9 (D. Colo. May 7, 2018).

Defendants agree the right to an impartial decision maker was clearly established in this case, but argue Plaintiff has failed to allege anything but conclusory facts. The Court disagrees.

In his Amended Complaint, and repeatedly throughout the attached materials, Plaintiff alleges Steward called Plaintiff a "liar" and told him "he did not deserve to be at the university." [#17 at p.6.] Plaintiff also alleges another University employee, Will Dewese, agreed Steward was biased and not impartial toward Plaintiff. [*Id.*] Construing these allegations in the light most favorable to the Plaintiff, as it must, the Court concludes dismissal is not appropriate. Whether the Plaintiff can develop evidence of "a substantial showing of personal bias," *Tonkovich*, 159 F.3d at 518, is a matter for discovery. The Court, therefore, recommends finding Steward is not entitled to qualified immunity on the procedural due process claim insofar as Alleged Procedure 11 is concerned.

### b. Substantive Due Process

The bedrock of due process is protecting individuals against arbitrary government action. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 8446 (1998). "[S]ubstantive due process 'bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them,' but only for 'the most egregious official conduct [that] can be said to be arbitrary in the constitutional sense.'" *Messeri v. Univ. of Colorado, Boulder*, No. 18-CV-2658-WJM-SKC, 2019 WL

4597875, at *10 (D. Colo. Sept. 23, 2019) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) and *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008)). To state a substantive due process claim, a plaintiff "must sufficiently allege the University's actions were arbitrary, lacked a rational basis, or would shock the conscience of federal judges." *Id.* (citing *Butler v. Rio Rancho Pub. Sch. Bd. of Educ.*, 341 F.3d 1197, 1200–01 (10th Cir. 2003)); *see also Brenna v. S. Colo. State Coll.*, 589 F.2d 475, 477 (10th Cir. 1978) ("Substantive' due process requires only that termination of an interest not be arbitrary, capricious, or without a rational basis.").

Plaintiff contends there was no reasonable basis for his expulsion, which shocks the conscience. [#17 at p.7.] But nearly all Plaintiff's allegations in support of this conclusion are rooted in the Alleged Procedures, discussed above. To the extent the Amended Complaint alleges a race-based motive [#17 at p.6], which could conceivably support arbitrary, capricious or irrational conduct, those allegations are conclusory and are not supported by factual allegations to plausibly allege a race-based motive by Steward.

Because Plaintiff's allegations challenge the way in which he was suspended and expelled—as opposed to the fact of suspension or expulsion—the Court concludes he has failed to sufficiently allege a violation of his substantive due process rights. The Court recommends this claim be dismissed.

* * *

For the foregoing reasons, the Court RECOMMENDS Defendants' Motion to Dismiss [#25] be GRANTED IN PART and DENIED IN PART.

DATED: April 22, 2021

BY THE COURT:

S. Kato Crews
United States Magistrate Judge

**Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objection      s to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge and waives appellate review of both factual and legal questions.** *Thomas v. Arn*, **474 U.S. 140, 148–53 (1985);** *Makin v. Colorado Dep't of Corrs.*, **183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse*, **91 F.3d 1411, 1412–13 (10th Cir. 1996).**