THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02660-RM-SKC

CHADWICK JORDAN

      Plaintiff,

V.

DAVID STEWARD

      Defendant.

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC - 8 2023

JEFFREY P. COLWELL
CLERK

---

## PLAINTIFF'S MOTION OF SUMMARY JUDGMENT

---

*STATEMENT OF THE CASE*

    This is a 1983 action filed by a former student of the University of Colorado-Denver seeking damages based on the due process violation of not having an impartial tribunal. The Defendants have filed a motion for summary judgment............

    Stewards bias goes back to 2016 when a teacher said he was scared of Jordan because he did not want to tell him he did not have an A. These charges were dropped after Steward suspended Jordan for a whole semester because of this. At this point Steward decided to run a background check on Jordan and then suspended him again in his opinon for lying on the application. These charges were dropped because Jordan did in fact have a criminal backround review by the university and was cleared. Which kushmider adjusted on appeal moving Jordan to probation. These bizarre accusations resulting in a disporptionate suspension everytime casued Jordan to notify Davids superiors he was biased and these cases of him accusing the plaintiff then charging him were biased. (Jordan complained to and et.) David continued this pattern.

*STATEMENT OF THE FACTS*
*UCD CASE # 2015039201*

1.     On Feb 29th, 2016, David Steward stated, the Plaintiff, "escalated became angry and David said he had to end their meeting, during one of their meeting," Attached as Exhibit B; CUJORDAN-0041-0042, when David accused and then charged the plaintiff with obstruction and providing false information, Exhibit A, CU JORDAN_0047-0048. Then the Plaintiff asked

to speak with his supervisor Kristen Kushmider, regarding his impartiality.

2.      March 4, 2016, the plaintiff told David Steward and Detective Justin V he did not disrupt class or provide false info, Exhibit C; CU JORDAN_0040.

3.      <u>On March 8, 2016, Due to concerns about David not being impartial and how to appeal, David and his supervisor Kristen Kushmider met with Omar Montgomery of the OMBUDS office, Exhibit D; CU JORDAN_0038</u>.

        Also on March 8, 2016, David made the biased comment "<u>In our discussion it was clear to me that you were unable to see another individual's perspective that such a statement could be interpreted as threating and went on to say the other individual was at fault for their perception.</u>" David then dropped the obstruction charge and found the plaintiff guilty of providing false info, and suspended the plaintiff and banned him from campus, Exhibit E; CU JORDAN_0044-0045.

4.      On March 16, 2016, the plaintiff appealed, he did not provide false info.  Exhibit F; CU JORDAN_0057-0059.  The plaintiff did in fact already have criminal history reviewed, see Exhibit G; CU JORDAN_0022.

5.      March 25, 2016 Kristen overturned this suspension because the plaintiff did have his background reviewed and gave him probation, Exhibit H; CU JORDAN_0049-0050. The probation might be for the plaintiff checking he did not need to download his criminal history when he transferred back to the University, Exhibit G; CU JORDAN_0032.

<p style="text-align:center">STATEMENT OF THE FACTS
UCD CASE # 201700601</p>

6.      On the 1st day of Aug., 2017 there Was an a anonymous CARE Team Referral report made by Reymundo.  At 3:00 PM Attached as CU172-cu-173.  Stating they had a disagreement, the plaintiff was yelling and called him a liar.  Also Alma Vasquez stated on the 1st of Aug. at1:50 PM, the plaintiff accused Reymundo of putting words in his mouth, he was upset and wanted to speak to Justin, Attached as CU174-CU175.  Aug 2, 2017, 4:49PM Mary Morales made an anonymous CARE report stating he left calmly which is in confliction with the other reports, and his behavior was erratic and she helped him with financial aid Attached as CU 175-CU176.  Aug. 2 3:30 AM Jose Celis made a CARE report the plaintiff seemed upbeat and didn't think anything about it until he heard from people their was an incident,  Attached as CU178-179.

6.      August 3, 2017, David stated he, "<u>referred to a pattern of behavior noticed when Chadwick does not get something he wants. – A pattern of becoming confrontational and demanding with a raised voice appearing to be angry</u>," Exhibit J; CU JORDAN_0122-0123.

7.      On the 7th day of August, 2017,  David  said he rececieved a report that occurred July 31, 2017.  This is befor any reports were made about the plaintiff, nor was the plaintiff in the office on this date. Exhibit K; CU191-192.

8.      On the 14th of Aug. 2017 there were two more anonymous CARE Team Referrals.   On the 14th of Aug. 2017 Alma Vasquez then stated the plaintiff refused to leave, CU180-CU181 and also she also stated in Attachement CU182-CU183 he was agitated with a raised voice.  On

this same day and time Julie Thompson simply said the plaintiff displayed no inappropriate behavior when asked about the same inicident. David decided to drop this issue.

9.     On the 22nd of Aug., 2017, David said the issue on the 14th didn't was not t an issue someone said the plaintiff raised his voice and he and then he stated he, <u>" referred to a pattern of behavior noticed when Chadwick does not get something he wants. – A pattern of becoming confrontational and demanding with a raised voice appearing to be angry,"</u> Exhibit L; CU189-190.

10.     Aug. 22, 2017, David said, <u>"this behavior is another incident where you confronted individual in an office on campus as a result of hearing news you did not like or agree with."</u> He then found the plaintiff guilty of raising his voice-abusive behavior and obstruction, without any one saying he raised his voice and contradictory statements, Exhibit M; CU 193-195.

11. <u>Aug. 30 2017, the plaintiff spoke with Will Dewese of Title IX regarding Davids lack of impartiality and bias charging him with raising his voice, and that he talked to Omar in OBUDS office as well. Exhibit Q.</u>

12.     Sept. 1st the plaintiff appealed, stating he did not raise his voice, lack of an impartial tribunal and then explained Davids lack of impartiality.

13.     Sept. 20th, 2017, Kristen said Cardenas completed my appeal, Exhibit M; CU196.

14.     Oct. 10, 2017, David told Justin, <u>"We know he reacts to adverse news and that a direct conversation is much better than an email.  If you haven't reached out to Chadwick please do so to minimize any surprise."</u> Exhibit N; CU206.

15.     On Sept. 20, 2017 Raul Cardenas denied the appeal of another case apparently and sent it to the plaintiff.  The plaintiff did not have a case # 2017008701.  Technically the plaintiff did not get a response to his appeal.  Exhibit O; CU208-209.

*STATEMENT OF THE FACTS*
*UCD CASE # 2017094401*

16.     3/5/2018, at 9AM, or before the 1:30PM meeting with the plaintiff, Steward said the decision was made to  move forward with the conduct process in relation to the threats to a neighbor in Aug. 2017 and a veiled threat to Lisa Forbes buying an AR-15,  Exhibit R; CU257.

17.     3/5/2018, 1:02PM, David said he called the plaintiff to deliver the ineterim suspension letter.  When the plaintiff called back all he said was they needed to meet ASAP.  The plaintiff did not know this should have been a hearing; or this 1:30PM meeting was about to occur. Exhibit T; CU JORDAN_0146.

18.     3/5/2018, at 9AM, or before the 1:30PM meeting with the plaintiff to tell him he was interim suspended, Detective Aldridge said he and David Steward met to talk about, <u>"concerning comments"</u> the plaintiff made to Lisa Forbes on Feburary 19th, 2018.  <u>"Comments about the plaintiff purchasing an AR-1,"</u> and how the plaintiff, <u>"supports mass destruction and killing by the military,"</u> in Aldridges words. Also the plaintiff, <u>"history of student conduct vilolations and him making staff members uncomfortable"</u>.  <u>At this meeting they decided to interim suspend the plaintiff barring him from campus.</u>  Exhibit U.

19.     3/5/2018, at 9AM, or before the 1:30PM meeting to notify the plaintiff he was interim

suspended, officer Timmerman Stated the plaintiff told Lisa Forbes, his psychologist - not a counselor as David Steward believes – "he supported mass killing by the military and that he purchased an AR-15," and they were going to tell the plaintiff, "he was no longer allowed on campus." Exhibit U.

20.    3/5/2018, at 9AM, in the meeting before the 1:30PM meeting to tell the plaintiff he was suspended, Detective Shotts stated that the plaintiff made comments Lisa Forbes, that Brooke Farley said on 3/2/2018, the plainitiff made, "concerning comments which included general homicidal ideations". He also stated the plaintiff, "supported mass destruction and killings" by the military, that he recently purchased and AR-15. All this supposedly came from a meeting with Lisa Forbes on the 19th of February, 2018, at 3PM. Also that, "he was declined the sale of a firearm at the tanner gunshow," he had a, "military background in the United States Marine Corps and that he served time in Iraq, he has PTSD", a, "lengthy criminal history, he is a multi state offender with convictions for and a 4 year sentence for dangerous drugs, Assault on a Police Officer and an 18-month Felony Menacing". Exhibit U.

21.    3/5/2018,at 1:30PM, while at this meeting David states the plaintiff said in response to their questions, his AR-15 purchase was legal and the threat case involving his neighbor was dismissed and if he knew it would effect his school he never would of plead guilty. The plaintiff told them the AR-15 was and 80/20 kit, a back ground check was not required. Exhibit R, CU256-257.

22.    3/5/2018, Based on the Feburary 19,2018, report from Lisa Forbes and in, "addition to your pattern of behavior exhibited by past conduct," the plaintiff was summarily suspended and excluded from the campus. A conconference was set for March 8,2018. And according to information he received the verbal altercation outside of his home in August of 2017, where David says the plaintiff threatened to shoot his neighbor and having purchased and AR-15. This might be a violation. The plaintiff was charged with Threats and violation of a Local, State, or Federal Law. Exhibit X; CU48-CU249.

At the end of this notice of charges David says I may bring an advisor, and if I do not attend the conference they will render a dececison without my input. It seems he already made his decison. Exhibit X; CU48-CU249.

23.    June 5, 2018 David added Drugs base on probable cause statements. Exhibit Z; 00259-00260.

24.    July 26, 2018, the plaintiff said he wants to move forward with the case and he will be exonerated. Exhibit X; CU246.

25.    September 6, 2018, in Exhibit Y; CU267-CU-269, David Steward found the plaintiff responsible for threats based on report, 2017-533672, city ordinance 38-92, threats to injure person/property. He found me responsible for violating, state, local and Federal laws, because in the charging statement of 18 CR 016875, said I had an illegal firearm in my trunk. He last found me responsible for Drugs because of probable cause report, 2018-9518073, *Exhibt W*.

26.    Sept 25, 2018the plaintiff Appealed David not being impartial and not having jurisdiction over cases that had nothing to do with the University, Exhibit BB ; CU233-284.

27.    November 2, 2018 Kristen Kushmider responded to someoneleses appeal. The plaintiff never had a case no. 2018052201. Technically the plaintiff did not receive a response to his

*4 of 8*

appeal.  Furthermore Kristen says the final decision date was July 31, 2018, which is not the final decision date.  The final decision date is Sept. 6, 2018.  Exhibit cc; CU285.

## ARGUMENT

### POINT 1
### The plaintiff was deprived of Due Process in UCD Case # *201700601*

A.  The plaintiff was deprived the right to an impartial Tribunal.

I.    David Steward made the statements, "In our discussion it was clear to me that you were unable to see another individual's perspective that such a statement could be interpreted as threating and went on to say the other individual was at fault for their perception," , Exhibit E; CU JORDAN_0044-0045, and, in his words the plaintiff, "escalated became angry and David said he had to end their meeting, during one of their meeting," CUJORDAN-0041-0042, David made in UCD CASE # 2015039201, before suspending, the plaintiff, and then having it overturned on appeal by his supervisor Kristen, Exhibit H; CU JORDAN_0049-0050, shows he put this bias in action. Then David stated, 'referred to a pattern of behavior noticed when Chadwick does not get something he wants. – A pattern of becoming confrontational and demanding with a raised voice appearing to be angry, Exhibit J; CU JORDAN_0122-0123 and," Exhibit L; CU189-190.  David also stated "We know he reacts to adverse news and that a direct conversation is much better than an email.  If you haven't reached out to Chadwick please do so to minimize any surprise." Exhibit N; CU206.
These statements David made before the UCD Case # 201700601 hearings reveal a tribunal not meeting the demands of due process for a hearing with fairness and the appearance of fairness. Staton v. Mayes, 552 F.2d 908.
These were not mere statements on a policy issue related to the dispute, leaving the decision maker capable of judging a particular controversy fairly on the basis of its own circumstances.  Staton v. Mayes, 552 F.2d 908.  Nor was this simply a case of the instigation of charges and a statement of them during an investigatory phase by the body that will later decide the merits of the charges. Staton v. Mayes, 552 F.2d 908.  Instead this case involves statements on the merits by those who must make factual determinations of the contested act issues of alleged incompetence and willful neglect of duty, where the fact finding is critical. Staton v. Mayes, 552 F.2d 908.  And the ruling here was whether the plaintiff was a threat.  McClure v. Independent Sch. Dist. No. 16, 228 F.3d 1205. Personal bias may be shown by prior statements going to the merits of animus that establish the decision maker cannot be fair.  Riggens v. Goodman, 572 F.3d 1101.

II. An unconstitutional bias existed when David served as both accuser and adjudicator in this case especially since he had a meeting with the OMBUDS office and his supervisor Kristen Kusmider, about the plaintiffs concerns of his lack of impartiality, CU JORDAN_0038.

These objective risk of bias is reflected in the due process maxim that no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. Where David prosecuted, initiated and then judged the cases was. Williams v. Pennsylvania, 579 U.S.1

III. David Steward also deprived the plaintiff of due process by Interim suspending him. According to Exhibit S; CU415, Sec. 7, David could only Interim suspend the plaintiff is there was actions that threaten the health of safety of any person, there was never any actions of potential actions mentioned by David. Furthermore David kept the Interim suspension in place until the final disposition, which was supposed to occur only in extreme matters being charged with a serious crime. The plaintiff supposedly raising his voice is not extreme and serious. David violated this policy because he was bias.

### POINT 2
### The plaintiff was deprived of Due Process in UCD Case # *2017094401*

A. The plaintiff was deprived the right to an impartial Tribunal.

I. Despite the bias demonstrated in case UCD #201700601, the following <u>Comments about the plaintiff purchasing an AR-1</u>," and how the plaintiff, "<u>supports mass destruction and killing by the military,</u>" in Aldridges words, and the plaintiffs, "<u>history of student conduct vilolations and him making staff members uncomfortable,</u> " Then deciding <u>to interim suspend the plaintiff barring him from campus,</u> are biased. Exhibit U.

These comments are also biased, "<u>Jordan made concerning comments which included general homicidal ideations</u>". He also stated the plaintiff, "<u>supported mass destruction and killings. He was declined the sale of a firearm at the tanner gun show</u>," he had a, "<u>military background in the United States Marine Corps and that he served time in Iraq, he has PTSD</u>", a, "<u>lengthy criminal history, he is a multistate offender with convictions for and a 4 year sentence for dangerous drugs, Assault on a Police Officer and an 18-month Felony Menacing</u>". Exhibit U.

These statements are particular biased since they are not true, Exhibit V Cleary shows the plaintiff would not hurt anyone, he supported the military. The plaintiff never made any of the statements or comments that was alleged in Exhibit U. Furthermore his firearm was legal, Exhibit A page 13, states so.

These statements David made before the UCD Case # *2017094401* hearings reveal a tribunal not meeting the demands of due process for a hearing with fairness and the appearance of fairness. Staton v. Mayes, 552 F.2d 908.

These were not mere statements on a policy issue related to the dispute, leaving the decision maker capable of judging a particular controversy fairly on the basis of its own circumstances. Staton v. Mayes, 552 F.2d 908. Nor was this simply a case of the instigation of charges and a statement of them during an investigatory phase by the body that will later decide the merits of the charges. Staton v. Mayes, 552 F.2d 908. Instead this case involves statements on the merits by those who must make factual determinations of the contested act issues of alleged incompetence and willful neglect of duty, where the fact finding is critical. Staton v. Mayes, 552 F.2d 908. And the ruling here was whether the plaintiff was a threat. McClure v. Independent Sch. Dist. No. 16, 228 F.3d 1205. Personal bias may be shown by prior statements going to the merits of animus that establish the decision maker cannot be fair. Riggens v. Goodman, 572 F.3d 1101.

II. David's predetermination to terminate the Plaintiff is another matter. When at the conclusion of the meeting it was determined that Jordan would be given a 3 day interim suspension barring him from the campus, then as stated David "Planed to draft the required documentation and then call Jordan requesting that he respond to the Tivoli Student Union for a meeting, this violated due process, Exhibit U. Brassell v. City of Santa Rosa, U.S. Dist. LEXIS 168704. David's stated intent was to suspend the plaintiff. Statements on the merits by decision maker charged with fact finding related to Jordan's suspension left no room for a determination there there was a decision by a fair tribunal, with the appearance of fairness. Brassell v. City of Santa Rosa, U.S. Dist. LEXIS 168704. David goes further than making statements on the merits prior to a suspension he had already made his decision. Brassell. Personal bias may be shown by prior statements going to the merits of animus that establish the decision maker cannot be fair. Riggens v. Goodman, 572 F.3d 1101.

III. An unconstitutional bias existed when David served as both accuser and adjudicator in this case especially since he had a meeting with the OMBUDS office and his supervisor Kristen Kusmider, about the plaintiffs concerns of his lack of impartiality, CU JORDAN_0038.
These objective risk of bias is reflected in the due process maxim that no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. Where David prosecuted, initiated and then judged the cases was. Williams v. Pennsylvania, 579 U.S.1

IV. David Steward also deprived the plaintiff of due process by Interim suspending him. According to Exhibit S; CU415, Sec. 7, David could only Interim suspend the plaintiff is there was actions that threaten the health of safety of any person, there was never any actions of potential actions mentioned by David. Furthermore David kept the Interim suspension in place until the final disposition, which was supposed to occur only in extreme matters being charged with a serious crime. The plaintiff

6.5 of 8

supposedly raising his voice is not extreme and serious.  David violated this policy because he was bias.  *David has never followed the CW Suspension Checklist, Exhibit DD*

*V.  Attached as page 8 of this Motion.*

For the reasons listed above I respectfully request this Court Grant the Plaintiffs **PLAINTIFFS MOTION OF SUMMARY JUDGMENT MOTION.**

Dated this *9th* day of *Nov* , 2023.

CHADWICK JORDAN
*PLAINTIFF PRO SE*

/s/ *Chadwick Jordan*
Chadwick Jordan

Chadwick Jordan, #122629
Limon Correctional Facility
49030 State Hwy 71 South
Limon, CO 80826
Princeofwadesboro@gmail.com

## CERTIFICATE OF SERVICE

I certify that I served the foregoing **MOTION FOR SUMMARY JUDGEMENT** on all parties herein by USPS by and thru the Sterling Colorado Correctional Facilities inmate mail filing system, on this *9th* day of *Nov* , 2023, addressed as follows:

UNITED STATES DISTRICT COURT
901 19th Street
Denver, CO 80294

*7 of 8*

V. David Steward did not have Jurisdiction to use Denver PD (2017-533672), PD (2018-9518073), and Denver County Court Case number 18CR01675, listed in his Sept. 6 2018 decision to expell and exclude the plaintiff from Auraria Campus, Exhibit Y, CU2167-CU2169. The University of Colorado Student Code of Conduct states the student code of conduct shall only apply to off campus behavior that adversely affects the University community, or damages the institutions reputation or relationship with the greater community. There is no allegations or evidence of the plaintiff adversely affecting the community or damaging the institutions reputation or relationship with the community in UCD Case #2017094401. David only used these cases because he was not impartial. Using these cases violated and deprived the plaintiff of University policy, Section C. Jurisdiction of the Student Code of Conduct, Exhibit S, CU405.

Furthemore it is problematic David relied on probable cause statements to Justify expelling the Plaintiff given that such statements are by nature 1) made at the start of a case before investigation is complete 2) Not subject to Cross-examination, and 3) do not necessarily result in Charges filed or convictions. For instance David wants to consider firearm parts, the plaintiff was not convicted of any crimes related to a firearm. Exhibit W, CU241 is a probable cause statement, CU233, Exhibit AA, pg. 13((18CR01675) Transcripts).

Case No. 1:19-cv-02660-RM-JPO   Document 168   filed 12/08/23   USDC Colorado
pg 10 of 215
Case No. 1:19-cv-02660-RM-SKC   Document 143-15 filed 08/02/23   USDC Colorado   pg 47
of 298


University of Colorado
Denver

**Office of Student Conduct and Community Standards**

Campus Box 196
P.O. Box 173364 | Denver, CO 80217-3364
o 303 556 2444 | f 303 352 3751
ucdenver.edu/standards

Exhibit A

February 26, 2016

Chadwick Jordan

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2015039201

Dear Mr. Jordan,

I have received a report, dated February 25, 2016 that indicates you may have violated the Student Conduct Code. Based on the severity of the report, I am assigning an interim suspension to you from the University of Colorado Denver and excluding you from the Auraria Campus.

This suspension includes an immediate exclusion from the Auraria Campus. You are not to be on any of the CU Denver, Metropolitan State University of Denver, or Community College of Denver campuses, including attending any scheduled classes, other than to attend your scheduled meeting with our office to discuss these allegations. Violation of these restrictions may result in additional student conduct action and/or arrest. This suspension will remain in effect until such a time as your case is heard by the Office of Student Conduct and Community Standards.

According to the information I have received, you allegedly exhibited disruptive classroom behavior, made threats to one or more people, and provided false information on your admissions applications. This alleged behavior may be in violation of the following standards.

**(9) Interference, obstruction, or Disruption of University Activity**
Materially and substantially interfering with, obstructing, or disrupting a university activity. a. University activities include, but are not limited to, all normal university activities, such as teaching, research, recreation, meetings, public events, and disciplinary proceedings. b. This prohibition includes, but is not limited to, the following: behavior disruptive of university functions; Behavior resulting in injury to persons or damage to property on the campus; and interference, obstruction, or disruption of the freedom of movement of students, or other members of the university community and their guests. Interference in any manner with the public or private rights of citizens, Behavior that threatens or endangers the health or safety of any person, and damage to property are prohibited.

**(2) Threats**
Threatening or endangering the mental and/or physical health or safety of a person.

**(12) Knowingly Providing False Information**
The use of false identification or the identification of another person to gain entrance to a facility or business is prohibited. This also includes forging, altering, falsifying or misusing documents or records, or knowingly using/possessing forged, altered or false documents or records.

Admission to the University carries with it the assumption that students will be responsible members of our community. When you chose to enroll at the University of Colorado Denver, you assumed the responsibility to uphold standards of conduct appropriate to the academic and community goals set by the University.

You will need to schedule a conference with me to discuss these charges as soon as possible. Once

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15    filed 08/02/23    USDC Colorado    pg 48
pg 11 of 315
of 298

scheduled the conference will take place in the Tivoli Student Union, Room 227. The purpose of this conference is to discuss your responsibility for this incident and to determine the next steps in the student conduct process. At the time of the conference you may bring written accounts from any witnesses present during the alleged incident, as well as your own account. You may also bring an advisor with you if you wish. I suggest that you refer to the Student Conduct Polices and Procedures at http://www.ucdenver.edu/standards for more information about your rights and responsibilities.

Your attendance at this conference is important. If you do not attend the conference I will review the written documentation and render a decision without your input. If you are unable to attend this conference due to a reasonable conflict, academic or otherwise, you must contact me no later than twenty-four hours prior to your conference to request a new appointment.

Please remember that until the time of our meeting you are not allowed on the campus. If you have any questions please do not hesitate to contact our office at 303-556-3682. I look forward to meeting with you to resolve this situation.

Sincerely,


David Steward
Director Student Conduct and Community Standards
University of Colorado Denver

CU JORDAN_0048

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15    filed 08/02/23    USDC Colorado    pg 41
of 298

Exhibit B

Chadwick stated that he probably made the statements but did not intend to make threats. It was the teachers fault to interpret them as threats due do his racist feelings.

Chadwick said it was not against the law to use words, it is just a civil issue.

Discussion was about discussing an assignment.
- Statement was about trying to be friends.
- Chadwick was trying to be intellectual.

Chadwick said that there was nothing to be scared of
- discussion was about the assignment
- watched a movie about zombies and reacted to how movies such as this impact society.

When asked how he was doing in class Chadwick stated he had a A.
- When told the teacher was fearful of informing him he was failing he dismissed the fear saying it was unfounded.

When asked about his applications he said there were just two offenses.
- the two in 2000 he stated he was a juvenile (he was 18 years 3 months old)
- he said of the remaining 4 that the two in 2003 were run concurrently with the 2006 cases.

Chadwick began to escalate with anger and after attempts to deescalate DKS ended the meeting.

DKS stated that he needed time to process and be mindful about a decision and would send an email by Thursday and that Chadwick was still interim suspended until the decision was made.

Chadwick stated that we wanted to meet immediately with KK but she was in a meeting and could not meet. He said he would call.
⌐

Faculty notification Uncategorized

David Steward - Monday February 29, 2016 at 1:45pm

---

DKS informed all faculty of Chadwick's absence from class the week of February 29 via email and called _____ to inform him that Chadwick had been interim suspended pending the meeting on Friday, March 4.
⌐

Interim Suspension Meeting Uncategorized

David Steward - Monday February 29, 2016 at 11:00am
Last edited Monday February 29, 2016 at 1:43pm

---

DKS tried to find Chadwick at his Monday 9:30 class but Chadwick did not attend that class. DKS did meet up with Chadwick at his Monday 11:00 class and discussed the charges against him as well as informing him of his interim suspension. Chadwick was informed he was not to

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC   Document 143-15  filed 08/02/23   USDC Colorado   pg 42
pg 13 of 215
of 298

be on campus until our meeting on Friday, March 4. DKS also informed him that when he did come on campus he must call Auraria PD dispatch to be escorted onto campus.

Outreach to Instructor Uncategorized

David Steward - Friday February 26, 2016 at 3:49pm

KK sent an email to the instructor informing         of what action was being taken and to contact DKS if he had any questions.

            called DKS immediately after receiving the email and DKS stated that the student would be interim suspended and described the conduct process which would follow. DKS also discussed the procedure if the student would retaliate in any way.

CU JORDAN_0042

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 043-15  filed 08/02/23    USDC Colorado    pg 40
of 298
pg 14 of 215

Exhibit K

Conduct Decision Meeting Uncategorized

David Steward - Friday March 4, 2016 at 3:00pm
Last edited Monday March 7, 2016 at 8:22am

DKS met with Chadwick with Detective Justin V of the Auraria PD. DKS described the factors which influenced his decision and relayed the decision was that he was not responsible for disrupting class, there was not decision on whether he made threats, and he was responsible for providing false information on his two applications to CU Denver. When Chadwick tried to debate the false information issue DKS redirected him that the purpose of the meeting was to communicate the decision. DKS also reviewed the sanctions given and that an appeal was his way to contest the decision and the appeal deadline is March 11, 2016. DKS then provided Chadwick with a written letter with all the information just discussed and quickly walked him through the letter. At the completion of the meeting Chadwick requested to meet with KK immediately but she was in a meeting so Chadwick stopped at the front desk and scheduled an appointment.

Schedule a decision meeting Uncategorized

David Steward - Friday March 4, 2016 at 9:58am

DKS reached Chadwick via phone at 720-273-9741 and was able to schedule a meeting to discuss the decision and sanctions at 3 PM on Friday, March 4, 2016.

Attempts to contact Uncategorized

David Steward - Thursday March 3, 2016 at 3:30pm
Last edited Friday March 4, 2016 at 9:56am

Starting at approximately 8:00 AM DKS began sending emails to Chadwick's official CU Denver email account and calling phone numbers 720-503-8111 and 303-286-1997 in an attempt to let Chadwick know that a meeting had been established at 3 PM to discuss the decision made in this case. DKS attempted via email three times and attempted via phone four times to reach Chadwick but was unable to reach him.

Conduct Conference Notes Uncategorized

David Steward - Tuesday March 1, 2016 at 3:05pm

Chadwick made an initial statement that he would do what he had to do to stay in school.
- is a business major with a focus in accounting.

Chadwick stated that he is an emotional person and speaks via his emotions.

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 15 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-15    filed 08/02/23    USDC Colorado    pg 39
of 298

Sarah Fields called and wanted to double check                    request to change a classroom
due to        fear of retaliation from Chadwick. DKS confirmed the case. Dr. Fields asked if indeed
the student was suspended and DKS confirmed that but did add that the appeal deadline was still
open and if he appealed the decision could be a week or two. She requested that we notify her in
suspensions of CLAS students.
Appeal Request Uncategorized

Kristin Kushmider - Tuesday March 8, 2016 at 10:37am
Last edited Wednesday March 9, 2016 at 4:37pm

KDK spoke with Chadwick by phone, he had several questions and concerns about the conduct
process. Chadwick wanted to know if he would receive a tuition refund for the semester, if he
could access transcripts to attend another school, if he could take on-line courses, if he could
access his application for admission, how long were applications for admission good for, can he
receive copies of the policies and procedures for student conduct, could he receive a copy of the
threat report from PD, could he have another hearing, could he get an extension on his appeal,
why wasn't his criminal history reviewed prior to his attendance.

His request to receive a copy of the threat report from PD was denied by AHEC police chief, he
also stated he provided documentation of his criminal history to an academic committee with the
university and disclosed it on his original 2006 application. The student also stated repeatedly
that he had juvenile cases that were the foundation for the conduct decision and these juvenile
records should not have been accessible to the University (note: records are public records obtain
through CBI).

Faculty Update Uncategorized

David Steward - Monday March 7, 2016 at 8:35am

DKS sent the following email to                    to update        on the status of the case.

I wanted to update you on the status of the conduct case with Chadwick. I met with Chadwick to
discuss his case last week on Tuesday and then met with him Friday to discuss the decision
reached in the case. He has been suspended from CU Denver through the Summer 2017 semester
and is able to return for Fall 2017 if he satisfactorily completes a Forensic Threat Assessment
with a nationally recognized expert on threat assessments. Being out for that many semesters he
will need to reapply for admission. He does have the ability to appeal my decision and I believe
he will do so. His deadline is this Friday and I will keep you informed on what happens with the
appeal. He is still banned from campus.
Dave

David Steward

CU JORDAN_0039

Case No. 1:19-cv-02660-RM-JPO   Document 168   filed 12/08/23   USDC Colorado
Case No. 1:19-cv-02660-RM-SKC   Document 143-1   filed 08/02/23   USDC Colorado   pg 38
of 298

Exhibit O

KDK sent the student the following information:

Dear Mr. Jordan,

Thank you for talking with me on Tuesday. I appreciate your patience as I work to address your questions. Per our conversation I would like to respond to the questions you have. First, you had inquired about receiving a tuition refund, I am inclined to provide this to you should the suspension decision be upheld. Secondly, you had asked for an additional hearing, that would be your appeal request which I would be happy to schedule a meeting with you in person to discuss your appeal once it is submitted. During our meeting I will gladly present to you the documentation you had requested which includes your ability to review a copy of your most recent application to the University and an opportunity to review the criminal background history that the University accessed from the Colorado Bureau of Investigation which will show no juvenile records were obtained. Additionally you had requested a copy of our Student Conduct policies and procedures which I have attached here, in an attempt to address your specific concerns I have highlighted information in the code that may be useful to you.

Your request for additional time for your appeal has been granted. I will allow you an additional 5 business days to gather whatever information you deem pertinent to the appeal process therefore your written appeal is due no later than 5 PM on March 16th. Guidelines for an appeal can be found on page 12 of the Student Code of Conduct (attached).

Furthermore, you had inquired about participating in on-line classes and accessing your transcripts, please review the description on disciplinary suspension on page 11 of the code, students suspended from the university may not attend or participate in any course work at the university. Additionally, after review of your account the pending holds do not pertain to the conduct process you will need to contact those related offices to have the hold removed (i.e. Immunization holds are not managed by our office) . Registration holds will be placed on your account after your appeal process is complete if the suspension decision is upheld.

I believe I have addressed all of the questions we discussed on Tuesday. I look forward to receiving and reviewing your appeal and scheduling a time to meet with you. If you have additional questions please let me know.
Information gathering Uncategorized

Kristin Kushmider - Tuesday March 8, 2016 at 12:39pm
Last edited Wednesday March 9, 2016 at 4:39pm

KDK and DKS met with a representative from the Ombuds Office who had a release from Chadwick to speak with us about his concerns about the conduct process and his appeal. It was also shared there were concerns for him being escalated about the suspension.

Phone conversation with Sarah Fields Uncategorized

David Steward - Tuesday March 8, 2016 at 11:00am
Last edited Wednesday March 9, 2016 at 8:09am

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 17 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-15 filed 08/02/23    USDC Colorado    pg 37
of 298

From: Chadwick Jordan
Date: March 11, 2016 at 3:55:10 PM MST
To: "Fields,Sarah"
Subject: Re: Withdrawal

I will discuss this with Dr Kushmider since she has notified my teachers that me missing classes is out of my control and I will have an opportunity to make up my classes. This is inconsistent with what you just said. How about you ask her when I can make up my classes and since this is out of my control, what will be done so I can withdraw. More importantly so I can transfer my grades. This might help avoid some legal action which I will enjoy. This is a letter of intent to sue if my GPA and or grades are tarnished due to circumstances out of my control; reducing my status as a transfer student to another University.
--
Sent from my Android phone with mail.com Mail. Please excuse my brevity.

"Fields, Sarah" wrote:
I have just learned as long as you are under suspension you cannot withdraw from classes. This is something to discuss with the dean of students.

Sent from Outlook Mobile
⌐
Hold Placed Uncategorized

David Steward - Friday March 11, 2016 at 1:56pm

Hold placed until completion of the conduct process.

Kristin Kushmider - Friday March 11, 2016 at 1:38pm

KDK spoke with Sarah Fields, Chadwick is requesting information about the committee who reviewed his request for a retro active withdrawal.
                                    , he continues to state he is on academic probation (which he is not) and he is claiming there is a committee monitoring his probationary status (which there is not) and he didn't seem to understand.
⌐
Collatoral Data Sent Uncategorized

David Steward - Friday March 11, 2016 at 10:19am

Kristin Kushmider - Wednesday March 9, 2016 at 4:38pm

CU JORDAN_0037

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-1    filed 08/02/23    USDC Colorado    pg 43
pg 18 of 215
of 298

EXHIBIT E

March 4, 2016

Chadwick Jordan
Sent electronically to CHADWICK.JORDAN@UCDENVER.EDU

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2015039201

Chadwick,

I sent you an email yesterday with the following information and did not hear back from you:

*I am ready to communicate my decision and the sanctions and would like to meet with you today but am limited. Can we meet at 3:00 PM today. If you want or need to meet earlier I can make that work but would need to do some adjusting in my schedule. Let me know what is best for you.*

Please contact me ASAP via phone at 303-556-3682 or via email at david.steward@ucdenver.edu to schedule a time to discuss the decision in this case.

Thanks so much!

David Steward
Student Conduct and Community Standards PO Box 173364, Campus Box 184 | Denver, CO 80217-3364
(o) 303-556-3682,, (f) 303-352-3751,, (e) david.steward@ucdenver.edu

CU JORDAN_0043

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-215 filed 08/02/23    USDC Colorado    pg 44
of 298



University of Colorado
Denver

Office of Student Conduct and Community Standards

Campus Box 196
P.O. Box 173364 | Denver, CO 80217-3364
o 303 556 2444 | f 303 352 3751
ucdenver.edu/standards

March 8, 2016

Chadwick Jordan
1630 Pennsylvania St., Apt. 21
Denver, CO 80203

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2015039201

Dear Chadwick:

This is a follow-up to our conference on March 1, 2016 regarding alleged violations of the Student Conduct Code, as outlined in your Conference Letter.

Chadwick your conduct came to the attention of my office when a faculty member indicated they were concerned about allegedly threatening statements. As part of our routine and regular practice, we double checked your criminal history background. What we discovered was an extensive criminal history. This extensive criminal background was not fully disclosed on any application you made to the University in 2011 or 2014. It is clear to me that all six of the guilty findings are significant even though you stated that the first two from 2000 were while you were a juvenile; they were in fact while you were an adult (18 years of age). The University takes matters of failing to be completely open and honest on applications for admission very seriously.

I am also concerned about the statement you made to your faculty and the context in which it was made. Even when we discussed the statement, you wavered in describing the context in which the statement was made. At first you described the conversation at that point to be in a friendly relationship building context and then a few minutes later described the statement as a discussion aimed specifically at the assignment related to watching a zombie movie and the describing the impact such movies have on society. In our discussion it was clear to me that you were unable to see another individual's perspective that such a statement could be interpreted as threating and went on to say the other individual was at fault for their perception. As I have considered and reviewed our meeting I believe that the statement you made could have had the intent of being a threat.

Based on our meeting and the written documentation, and using a preponderance of the evidence standard, I have made the following determination regarding the alleged violations outlined in your original conference letter:

(9) Interference, obstruction, or Disruption of University Activity -- Not Responsible Materially and substantially interfering with, obstructing, or disrupting a university activity. a. University activities include, but are not limited to, all normal university activities, such as teaching, research, recreation, meetings, public events, and disciplinary proceedings. b. This prohibition includes, but is not limited to, the following: behavior disruptive of university functions; Behavior resulting in injury to persons or damage to property on the campus; and interference, obstruction, or disruption of the freedom of movement of students, or other members of the university community and their guests. Interference in any manner with the public or private rights of citizens, Behavior that threatens or endangers the health or safety

CU JORDAN_0044

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-1    filed 08/02/23    USDC Colorado    pg 45
of 298
pg 20 of 215

of any person, and damage to property are prohibited.

(2) Threats -- No Decision
Threatening or endangering the mental and/or physical health or safety of a person.

(12) Knowingly Providing False Information -- Responsible
The use of false identification or the identification of another person to gain entrance to a facility or business is prohibited. This also includes forging, altering, falsifying or misusing documents or records, or knowingly using/possessing forged, altered or false documents or records.

You have been sanctioned as follows:
**Disciplinary Suspension**
As a result of this incident you are being suspended from the University of Colorado Denver beginning February 29, 2016 and lasting through August 1, 2017. Suspension means that you are not eligible to enroll in any courses including online courses at any of the University of Colorado campuses. You will be eligible to return to the university upon completion of all other sanctions beginning August 1, 2017.

**Forensic Threat Assessment**
Please make an appointment with Nicoletti-Flater Associates, PLLP for a forensic threat assessment, by THIS FIELD IS EMPTY. A forensic threat assessment focuses on determining the likelihood of a threat leading to actual violence. These results will be shared with the CARE TEAM/David Steward. University of Colorado Denver will pay for all costs associated with this assessment. If you fail to cooperate with this request or do not attend your scheduled appointment, there may be additional consequences.

**Auraria Campus Ban**
As a result of this incident you have been suspended from the Auraria Campus beginning February 29, 2016 and ending August 1, 2017. This means that you are not eligible to be anywhere on the Auraria Campus. A hold has been placed on your account. As a result of this suspension you are not eligible to enroll at any of the Auraria institutions including CU Denver, Metropolitan State University of Denver or the Community of College of Denver. If you are seen anywhere on the Auraria Campus during the period of your suspension, the police will be notified and you may be subject to additional Student Conduct or Criminal action.

**Follow-Up Meeting**
When you have completed your suspension and all other sanctions please contact the Student Conduct and Community Standards office to schedule a follow-up meeting. The purpose of this meeting is to review the Forensic Threat Assessment results as well as discussing support mechanisms for moving forward.

Please understand that completion of these sanctions is your responsibility. Failure to complete these sanctions will result in further judicial action, specifically a hold being placed on your records and a stop on your registration.

If you have been given a sanction of probation with loss of good standing or higher, you have the right to appeal this decision. Such an appeal must be made in writing and submitted via the Student Conduct and Community Standards website,

CU JORDAN_0045

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15 filed 08/02/23    USDC Colorado    pg 46
pg 21 of 215
of 298

www.ucdenver.edu/standards. This appeal must be submitted no later than March 15, 2016. More information about the appeals process can be found on our webpage www.ucdenver.edu/csw.

It is my hope that you will have a positive experience while a student here at the University of Colorado. The faculty and staff will continue to support your positive contributions to the university learning/living environment. If you have any questions, please do not hesitate to contact me.

Sincerely,


David Steward
Assistant Director of Student Conduct and Community Standards

CU JORDAN_0046

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-1    filed 08/02/23    USDC Colorado    pg 57
of 298



University of Colorado
Denver | Anschutz Medical Campus

CU Denver Student Conduct Appeal
Submitted on March 16, 2016 at 4:12:21 pm MDT
Last modified March 16, 2016 at 4:46:05 pm MDT

| | |
|---|---|
| Type: | **Appeal** |
| Urgency: | **Normal** |

*Exhibit F*

| | |
|---|---|
| Incident Date: | **2016-03-16** |
| Incident Time: | |
| Incident Location: | **On Campus** |

<u>Reported by</u>

Name:
Title:
Email:
Phone:
Address:

<u>Your Information</u>

**Chadwick Jordan (830282211)**    1982-06-05    CHADWICK.JORDAN@UCDENVER303-8111
Off Campus

<u>Appeal Grounds & Rationale</u>

* Case Number
2015039201

* As outlined in Section G.G. of the Code of Student Conduct;
A student may only appeal if they have received a sanction including probation with loss of good standing, housing termination, suspension, or expulsion.  A decision reached by a Conduct Officer may be appealed to an Appeal Officer by either the Respondent(s) or Complainant(s). For an appeal to be considered it must meet at least one of the criteria listed below.
Reason for Appeal:
a. To determine whether the conference was conducted fairly in light of the charges and information presented, and in conformity with proscribed procedures giving both the Respondent and complaining parties the opportunity to prepare and present relevant information to be considered in the determination of an appropriate outcome. Minor deviations from designated procedures will not be a basis for sustaining an appeal unless there is a demonstrable adverse effect on the outcome of the conference., b. To determine whether the sanctions(s) imposed were appropriate for the violation of the Student Code of Conduct which the student was found to have committed., c. To consider new information, sufficient to alter the decision or other relevant facts not brought out in the original conference, because such information and/or facts were not known to the person appealing at the time of the original conference.  This does not include information that was known at the time of the conference but was not shared.

* The appeal process is a written process, you will not be granted an in person meeting with the Appeal Officer to further discuss this case or your appeal.  Please provide a rationale, details, and specifics for each "grounds" box checked above here.
Attention: Kristin Kushmider
Re: 2015039201
Appeal
David Steward failed to prove under the preponderance of evidence standard that I knowingly provided false information.  In fact, I had to go down to the Colorado bureau of Investigation and update my criminal background. So the criminal background David Steward used was not correct.  The updated information states in exhibit (A), the official court document, my sentences were suspended by my attorney while I was serving this country in the military 16 years ago, in Integrated Online Network Report, which I may provide.  Coupled with the fact that I sustained Traumatic Brain Injury and Post Traumatic Stress Disorder, as listed in exhibit(C) after these two misdemeanors and the lengthy date elapse in time I did not know I provided false information.
The former covers two of the guilty findings in my CBI report, and the other two; "four," were in fact dealt sufficiently by my already.  The two crimes I listed in my 2011 and 2014 applications, exhibit (D) 1 and (2) are in fact the only

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15 filed 08/02/23    USDC Colorado    pg 58
pg 23 of 215
of 298

official court documents pertaining to exhibit (F).  Look at the Judges signatures.  There is nothing false here let alone anything I knew were false.  This is because as highlighted in exhibit (F) they ran concurrent to the two crimes in exhibit(D).  Therefore, the only official document here is exhibit(D), in legal terms and technically all four crimes are represented in exhibit (D).  I did not know I had to provide unofficial information, the type found in secondary accounts like the Colorado Bureau of investigations background report. Therefore, I did not "knowingly provide any false information.

I request the forensic threat assessment sanction be eliminated, since I do not have access to the threat assessment made against me as illustrated in exhibit (G) and because the allegations are obviously not within David Stewards abilities in the first place, nor authority, I will explain in a later paragraph.  Furthermore, I have PTSD and Traumatic Brain Injury, diagnosed by a team of psychologist, with ongoing treatment-they know me better than anyone could" who will support my findings that I did not threaten any one, highlighted in exhibit (H)(2) and exhibit (H)(3).

Since this is my first issue at the campus at the very least I request my suspension be eliminated; or overturned in light of the fact 33% of black males have these type of backgrounds due to the political recognition of a racist; or biased judicial system. I do not believe I would have been accused of a thereat nor my background of been an issue if I were not of African American; black skin color. And consider the Col. State Gov't Affirmative Action Plan, and Policy 10A: Discrimination/Affirmative Action--General Policy Statement and Long-Range Goals, as this is a text book example, with uttermost pertinence to said case. I ask that you uphold the Mission, Vision and Values of the University of Colorado Denver  Anschutz Medical Campus and dismiss and or overturn these allegations.

I  also request I be withdrawn from my classes due to the fact these circumstances are out of my control and the academic committee, as illustrated in exhibit (I), failed to abide by  article 9; and report these crimes, causing me to move well past my withdrawal deadline after I submitted them all official court documents of my crimes-Exhibit (D), except the two misdemeanors that happened 16 years ago, with the updated  information of the suspended sentence, while I was serving this country, and unfortunately occurring before my Traumatic Brain Injury and PTSD.

Also, may you take into consideration I am one of the very few black males attending this university, my Traumatic Brain Injury and Post Traumatic Stress Disorder, my intent to sue David Keener, a English teacher, because judgements are to be based solely on factors demonstrable to performance and expectations as a student, rather, he judged me on whether I "felt" like a threat or not, in violation of Article 10 nondiscrimination of the Academic Principles, Professional Rights and Responsibilities, and Related Policies, when he filed a threat assessment against me that was false, misleading, slanderous, and quite frankly a flat out lie.  His motivations are unknown. This is a clear case of discrimination.  A police report was filed and an Internal Affairs report.  I requested that he be laid off; and or suspended. Furthermore, I was not responsible for a threat.  I request you find me not responsible for any violations of rule (12) and (2) of the student conduct code.

According to exhibit (J), the University of Colorado-Denver, background disclosure and Authorization background checks are pursuant to the Fair Credit Reporting Act, which states no background check is to go back any further then 7 years.  All of my crimes are past 7 years, rendering them obtained in violation of disclosure this disclosure authorization. For this I render them stricken from the record.  Hire Right, Inc. does not go back further then 7 years, as the professional world in general, due to the Fair Credit Reporting Act.  Furthermore, this document clearly states the nature and scope of "any" investigative consumer reports that may be requested, which was violated by the Central Bureau of Investigation background check, of David Steward.  I have reported him to Internal Investigations for the aforementioned violation.


Article 10: Nondiscrimination

The University of Colorado does not discriminate on the basis of race, color, national origin, sex, pregnancy, age, disability, creed, religion, sexual orientation, gender identity, gender expression, veteran status, political affiliation, or political philosophy in admission and access to, and treatment and employment in, its educational programs and activities. The university takes action to increase ethnic, cultural, and gender diversity, to employ qualified disabled individuals, and to provide equal opportunity to all students and employees.

Qualification for the position and institutional need shall be the sole bases for hiring employees, and the criteria for retaining employees shall be related to performance evaluation, assessment of institutional need, fiscal constraints, and/or, in the case of university staff, the rational exercise of administrative prerogative.

All students shall have the same fundamental rights to equal respect, due process, and judgment of them based solely on factors demonstrably related to performance and expectations as students. All students share equally the obligations to perform their duties and exercise judgments of others in accordance with the basic standards of fairness, equity, and inquiry that should always guide education.

CU JORDAN_0058

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15    filed 08/02/23    USDC Colorado    pg 59
of 298

History: Amended November 8, 2001; September 17, 2013; April 17, 2015, November 6, 2015

The term "officer and exempt professional" was replaced with the term "university staff" effective April 17, 2015.
I was not judged by David Keener based solely on factors demonstrable to performance and expectations as a
student, rather, he judged me whether I "felt" like a threat or not, in violation of Article 10 nondiscrimination of the
Academic Principles, Professional Rights and Responsibilities, and Related Policies.  Once again I have reported his
actions.

Sincerely,
Chadwick Jordan
PH: 720-273-9741
Email: cjllc@post.com

Attachments

exhibita.pdf
exhibitc.html
exhibitd1.pdf
exhibitd2.pdf
exhibitf.pdf
exhibitg.pdf
exhibith1.pdf
exhibith2.pdf
exhibit3.pdf
exhibiti.html
exhibitj.pdf
finalappeal.docx

*Pending IR #00000824*
*Submitted from 73.153.10.124 and routed to David Steward (Assistant Director of Student Conduct and Community Standards)*
*Modified by Kristin Kushmider on March 16, 2016 at 4:46:05 pm MDT from 132.194.28.229*

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 25 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-15 filed 08/02/23    USDC Colorado    pg 60
of 298

Attention: Kristin Kushmider

Re: 2015039201

<u>Appeal</u>

David Steward failed to prove under the preponderance of evidence standard that I knowingly provided false information. In fact, I had to go down to the Colorado bureau of Investigation and update my criminal background. So the criminal background David Steward used was not correct. The updated information states in exhibit (A), the official court document, my sentences were suspended by my attorney while I was serving this country in the military 16 years ago, in Integrated Online Network Report, which I may provide. Coupled with the fact that I sustained Traumatic Brain Injury and Post Traumatic Stress Disorder, as listed in exhibit(C) after these two misdemeanors and the lengthy date elapse in time I did not know I provided false information.

The former covers two of the guilty findings in my CBI report, and the other two; "four," were in fact dealt sufficiently by my already. The two crimes I listed in my 2011 and 2014 applications, exhibit (D) 1 and (2) are in fact the only official court documents pertaining to exhibit (F). Look at the Judges signatures. There is nothing false here let alone anything I knew were false. This is because as highlighted in exhibit (F) they ran concurrent to the two crimes in exhibit(D). Therefore, the only official document here is exhibit(D), in legal terms and technically all four crimes are represented in exhibit (D). I did not know I had to provide unofficial information, the type found in secondary accounts like the Colorado Bureau of investigations background report. Therefore, I did not "knowingly provide any false information.

I request the forensic threat assessment sanction be eliminated, since I do not have access to the threat assessment made against me as illustrated in exhibit (G) and because the allegations are obviously not within David Stewards abilities in the first place, nor authority, I will explain in a later paragraph. Furthermore, I have PTSD and Traumatic Brain Injury, diagnosed by a team of psychologist, with ongoing treatment-they know me better than anyone could" who will support my findings that I did not threaten any one, highlighted in exhibit (H)(2) and exhibit (H)(3).

Since this is my first issue at the campus at the very least I request my suspension be eliminated; or overturned in light of the fact 33% of black males have these type of backgrounds due to the political recognition of a racist; or biased judicial system. I do not believe I would have been accused of a thereat nor my background of been an issue if I were not of African American; black skin color. And consider the Col. State Gov't Affirmative Action Plan, and Policy 10A: Discrimination/Affirmative Action--General Policy Statement and Long-Range Goals, as this is a text book example, with uttermost pertinence to said case. I ask that you uphold the Mission, Vision and Values of the University of Colorado Denver | Anschutz Medical Campus and dismiss and or overturn these allegations.

I also request I be withdrawn from my classes due to the fact these circumstances are out of my control and the academic committee, as illustrated in exhibit (I), failed to abide by article 9; and report these crimes, causing me to move well past my withdrawal deadline after I submitted them all official court documents of my crimes-Exhibit (D), except the two misdemeanors that happened 16 years ago, with the updated information of the suspended sentence, while I was serving this country, and unfortunately occurring before my Traumatic Brain Injury and PTSD.

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-1    filed 08/02/23    USDC Colorado    pg 61
of 298
of 215

Also, may you take into consideration I am one of the very few black males attending this university, my Traumatic Brain Injury and Post Traumatic Stress Disorder, my intent to sue David Keener, a English teacher, because judgements are to be based solely on factors demonstrable to performance and expectations as a student, rather, he judged me on whether I "felt" like a threat or not, in violation of Article 10 nondiscrimination of the Academic Principles, Professional Rights and Responsibilities, and Related Policies, when he filed a threat assessment against me that was false, misleading, slanderous, and quite frankly a flat out lie.  His motivations are unknown. This is a clear case of discrimination.  A police report was filed and an Internal Affairs report.  I requested that he be laid off; and or suspended. Furthermore, I was not responsible for a threat.  I request you find me not responsible for any violations of rule (12) and (2) of the student conduct code.

According to exhibit (J), the University of Colorado-Denver, background disclosure and Authorization background checks are pursuant to the Fair Credit Reporting Act, which states no background check is to go back any further then 7 years.  All of my crimes are past 7 years, rendering them obtained in violation of disclosure this disclosure authorization. For this I render them stricken from the record.  Hire Right, Inc. does not go back further then 7 years, as the professional world in general, due to the Fair Credit Reporting Act.  Furthermore, this document clearly states the nature and scope of "any" investigative consumer reports that may be requested, which was violated by the Central Bureau of Investigation background check, of David Steward.  I have reported him to Internal Investigations for the aforementioned violation.


Article 10: Nondiscrimination


The University of Colorado does not discriminate on the basis of race, color, national origin, sex, pregnancy, age, disability, creed, religion, sexual orientation, gender identity, gender expression, veteran status, political affiliation, or political philosophy in admission and access to, and treatment and employment in, its educational programs and activities. The university takes action to increase ethnic, cultural, and gender diversity, to employ qualified disabled individuals, and to provide equal opportunity to all students and employees.


Qualification for the position and institutional need shall be the sole bases for hiring employees, and the criteria for retaining employees shall be related to performance evaluation, assessment of institutional need, fiscal constraints, and/or, in the case of university staff, the rational exercise of administrative prerogative.


All students shall have the same fundamental rights to equal respect, due process, and judgment of them based solely on factors demonstrably related to performance and expectations as students. All students share equally the obligations to perform their duties and exercise judgments of others in accordance with the basic standards of fairness, equity, and inquiry that should always guide education.

CU JORDAN_0061

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 27 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-15    filed 08/02/23    USDC Colorado    pg 62
of 298

History: Amended November 8, 2001; September 17, 2013; April 17, 2015, November 6, 2015

The term "officer and exempt professional" was replaced with the term "university staff" effective April 17, 2015.

I was not judged by David Keener based solely on factors demonstrable to performance and expectations as a student, rather, he judged me whether I "felt" like a threat or not, in violation of Article 10 nondiscrimination of the Academic Principles, Professional Rights and Responsibilities, and Related Policies.  Once again I have reported his actions.

Sincerely,

Chadwick Jordan

PH: 720-273-9741

Email: cjllc@post.com

CU JORDAN_0062

Case No. 1:19-cv-02660-RM-JPO   Document 168   filed 12/08/23   USDC Colorado   pg 10
Case No. 1:19-cv-02660-RM-SKC   Document 143-1   filed 08/02/23   USDC Colorado   pg 10
of 298

*Exhibit G*

# UNIVERSITY OF COLORADO DENVER
## Application for Undergraduate Admission

**Office of Admissions**
Campus Box 167
P.O. Box 173364
Denver, CO 80217-3364

**DOWNTOWN CAMPUS ONLY**
To apply for all Health programs, go to
www.uchsc.edu or call 303-720-8005

This application is for:
Fall Term _____
Spring Term _____
Summer Term _____

Refer to the application instructions for further clarification. Use ink and print legibly.

1. Full Legal name   *Jordan*   Last   *Chadwick*   First
   *Heath*   Middle

   Name under which transcripts will be submitted if different from above

2. Social Security number (SSN) *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*
   (Disclosure of SSN is voluntary and is used for record keeping purposes only. Use of SSN is protected under federal and state privacy laws. You will be assigned a student identification number.)
   *830282211E*   Previous CU student number (if applicable)

3. Permanent address  *8853 Colorado Blvd., Bldg A, Unit 101*
   Number and Street or P.O. Box
   *Thornton*   City   *Adams*   County   *CO* State   *80229* Zip Code   Foreign Country (if applicable)

4. Address to which all mailings should be sent if different from your permanent address _____
   Number and Street or P.O. Box
   City   State   Zip Code   Foreign Country (if applicable)

5. Telephone number Home ( *303* ) *286-1997*   Other ( *303* ) *507-7494*
   E-mail address (optional) _____

6. Next of kin information:  Complete the following information for your (check one):  Parent ✓  Legal Guardian ____  Spouse ____
   Name *Jordan*   Last   *Gwen*   First   *Rettiff* Middle   Occupation *Secretary*   Employer *Col. St. Div. of Wildlife*
   Home address *8853 Colorado Blvd*   *Thornton* *Col* *80229*   (*303*) *286-1997*   (*303*) *291-7336*
   Number and Street or P.O. Box   City   State   Zip Code   Home Phone   Work Phone

7. List any family members who have attended the University of Colorado

   | Name | Dates Attended | Year Graduated | Relationship |
   |------|----------------|----------------|--------------|
   |      |                |                |              |
   |      |                |                |              |

8. Military Service ✓ Yes ____ No
   Active duty dates (mo/yr) *12* / *00*  to *06* / *02*   Are you eligible for veterans' benefits? ✓ Yes ____ No

9. Age and birth date *218* Age | *10* Month | *5* Day | *82* Year   10. Gender ✓ Male ____ Female

11. Select the one category that most accurately reflects your ethnic background (for government reports and University compliance with the Civil Rights Act of 1964). Disclosure is voluntary and will not be used in a discriminatory manner.
    ✓ American Indian or Alaskan Native   ____ Asian or Pacific Islander   ✓ White, not of Hispanic origin
    *Cherokee*   Tribal affiliation
    ____ Black/African American, not of Hispanic origin   ____ I do not wish to provide this information
    ____ Census Enrollment Number
    ____ Hispanic (Chicano, Latino, Mexican American, Spanish American, other Spanish)

12. Citizenship
    ✓ U.S. citizen
    ____ Permanent resident (immigrant)   Alien Registration Number _____   Date of Issue _____
    Please attach copy of both sides of Alien Registration card.
    ____ Nonimmigrant on temporary status
    Type of visa you now hold
    ____ Student (F-1)   ____ Exchange Visitor (J-1)   ____ None   ____ Other (specify) _____

13. Country of Citizenship (if not U.S.) _____

CU JORDAN_0010

3/08/2006
Arrest – Westminster Police
Dangerous Drugs, Felony
Carrying a Concealed Weapon, Misdemeanor

Court
Controlled Substance, Felony – Dismissed
Controlled Substance, Misdemeanor – Dismissed
Possession of a Weapon, Misdemeanor – Dismissed
Controlled Substance, Felony – Guilty
4 years

5/30/2006
Arrest – Adams County Sherriff
Assault 2nd Degree, Felony

Court
Assault 2 Peace Officer, Felony – Dismissed
Assault 2 Peace Officer, Felony – Dismissed
Assault 2-In Custody, Felony – Dismissed
Assault 2-In Custody, Felony – Dismissed
Assault 2 Peace Officer, Felony – Guilty
4 years

3/6/2007
Arrest – Denver Police
Obstruct Police, Misdemeanor
Public Order Crimes, unlawful acts in/about schools

3/30/2007
Arrest – Adams County Sherriff
Shoplifting, Misdemeanor
Dangerous Drugs, Felony
Assault, Felony

4/19/2007
Arrest – Denver Reception and Diagnostic Center
Assault 2nd Degree, Felony
Dangerous Drugs, Felony

7/23/2013
Arrest – Denver PD
Parole Violation, Misdemeanor

CU JORDAN_0009

14. Have you ever been convicted of a crime, made a plea of guilty, accepted a deferred judgment, been adjudicated, or been required to register as a sex offender? (Misdemeanor traffic offenses are exempt) ____✓____ Yes _____ No
(Failure to answer this question will stop processing of your application. If you answer "yes," you must include a written explanation.)

15. Have you ever been placed on probation, suspended, expelled, or been subject to official disciplinary action from any high school or postsecondary institution for any academic misconduct or behavioral misconduct? _____ Yes ___✓___ No
(Failure to answer this question will stop processing of your application. If you answer "yes," you must include an explanation with this application including specific offense, the length of suspension, and the date (month/year) it occurred.)

16. To comply with Colorado state law, all males between the ages of 17 years, 9 months and 26 years must answer the following question:
Are you registered with the selective service? _____ Yes _____ No

17. Indicate the highest level of formal education attained by your parents or guardians

| | Father (or guardian) | | Mother (or guardian) |
|---|---|---|---|
| No High School | ☐ | 1 | ☐ |
| Some High School | ☐ | 2 | ☐ |
| High School Graduate | ☐ | 3 | ☐ |
| Some College or Technical Training | ☐ | 4 | ☐ |
| Two-Year College Graduate | ☐ | 5 | ☐ |
| Four-Year College Graduate | ☑ | 6 | ☑ |
| Post Graduate Study | ☐ | 7 | ☐ |

18. Indicate the college you are applying to and the major:
☐ Arts and Media • Major _____    ☑ Business • Major _Accounting_
☐ Engineering • Major _____    ☐ Liberal Arts & Sciences • Major _____    ☐ Public Affairs • Criminal Justice

19. If you were previously enrolled at the University of Colorado, what campus(es) did you attend?
_____ Boulder    _____ Colorado Springs    _____ Continuing Education/Extended Studies    ___✓___ Denver    _____ Health Sciences Center

20. Admission level
_____ Freshman (have not enrolled in a college or university since graduation from high school)
_____ Transfer (have enrolled at a college or university, including other campuses of the University of Colorado, since graduation from high school)
___✓___ Readmit (previously enrolled in an undergraduate degree program at UC Denver)

21. Term and year of intended enrollment
_____ Fall 20 |____| begins late August    _____ Spring 20 |____| begins mid-January    ___✓___ Summer 20 |_1_|_1_| begins late May/early June

22. Do you intend to obtain a degree from this campus?
___✓___ Yes    _____ No (This information is used for planning purposes only and has no impact on your admission status)
If no, what are your educational plans? _____

## 23. TEST SCORE INFORMATION

List the dates you have taken or are planning to take any of these tests. Please request that the appropriate testing service report scores directly to the University of Colorado Denver.

American College Test (ACT)    _____    _____    _____
College code for UC Denver is: 0533    Month/Year    Month/Year    Month/Year

College Board Scholastic Aptitude Test (SAT I)    _____    _____    _____
College code for UC Denver is: 4875    Month/Year    Month/Year    Month/Year

## 24. HIGH SCHOOL INFORMATION

Complete this section even if you are a transfer student.

| Westminister | Westminister | Col. | 80229 | 04/99 | 04/00 | 12th | 04/00 |
|---|---|---|---|---|---|---|---|
| Name of current or last high school | City | State | Zip Code (required) | From Mo/Yr | To Mo/Yr | Highest Grade Completed | Graduation Date – Mo/Yr |

If you are not a high school graduate, have you earned a GED Certificate or equivalent? _____ Yes _____ Date _____ No

If you are a freshman applicant and you answered "yes" to this question, you must submit an official copy of your GED scores as well as an official high school transcript from the last high school you attended.

If you are a freshman applicant and have not yet graduated from high school, please pay special attention to question #25. You must list all courses you are taking or plan to take beyond what is listed on your high school transcript.

CU JORDAN_0011

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15    filed 08/02/23    USDC Colorado    pg 12
of 298

## 25. COLLEGE AND UNIVERSITY INFORMATION

List all collegiate institutions you have attended (including the University of Colorado and foreign institutions), regardless of the length of attendance, whether or not courses were completed, and whether or not you believe the record will affect your admission or transfer credit. You must notify the Office of Admissions as soon as possible if you attend additional institutions. Failure to list and submit transcripts from all institutions previously attended before enrolling at UCD is considered to be a violation of academic ethics and may result in the cancellation of your admission or your dismissal.

Be sure to request that each college or university send an official transcript directly to the Office of Admissions. Transcripts from the University of Colorado are not required. Final official transcripts showing all subsequent work must be submitted upon completion of the work. If you do not provide these final transcripts, you may not be allowed to register for classes.

| Names of institutions of higher education attended (chronological order) | City | State | Zip Code (required) | From Mo/Yr | To Mo/Yr | Degree and Date Earned | Type of System* | Number of Hours Completed |
|---|---|---|---|---|---|---|---|---|
| Front Range Community College | Westminster | Col | 80031 | 04/03 | 01/04 | | S | 9600 |
| Metropolitan State College of Denver | Denver | Col | 80217 | 01/04 | 07/04 | | Q | 280 |
| University of Colorado-Denver | Denver | Col | 80217 | 01/06 | 03/06 | | Q | 220 |
| | | | | | | | | 2060 |

*Type of System: Semester (S), Quarter (Q), Trimester (T)

Are you eligible to return to all collegiate institutions previously attended?  ✓ Yes _____ No  If no, attach a statement of explanation.

_____ I am not currently enrolled in college nor do I plan to enroll prior to the term for which I am applying.

## 26. CURRENT AND FUTURE COURSE WORK

List all high school or college courses you are now taking or plan to take before enrolling at the University of Colorado Denver. This information is required to determine total number of academic units completed prior to enrollment.

| Name of High School or College | Term/Year | Complete Course Title | Course No. and Dept. | Credit Hours |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## 27. TUITION CLASSIFICATION

Are you claiming eligibility for in-state tuition classification?  ✓ Yes _____ No

If yes, please answer the following questions. Failure to answer a question may result in your being misclassified. Indicate "none" or "not applicable," if appropriate. Month and year are sufficient for dates more than two years past. In addition to your own information, if you are under 23 years of age on the first day of classes for the term for which you are applying and not married, please give parent or court appointed legal guardian information.

| Tuition Classification Information (Use month/day/year to month/day/year) | (If you are 23 or older) YOU | N/A | (If you are under 23) CHECK ONE  Parent _____ Guardian | N/A |
|---|---|---|---|---|
| Dates of continuous physical presence in Colorado | 8/3/85 to 3/8/11 | | __/__/__ to __/__/__ | ○ |
| Dates of employment in Colorado | 3/6/08 to 12/29/00 | ○ | __/__/__ to __/__/__ | ○ |
| List exact years for which Colorado income tax returns were filed | _____ | ○ | _____, _____ | ○ |
| Dates of extended absences from Colorado of more than two months within the past two years | 12/29/00 to 6/5/02 | ○ | __/__/__ to __/__/__ | ○ |
| Dates of active duty military service, if applicable | 12/29/00 to 6/5/02 | ○ | __/__/__ to __/__/__ | ○ |
| Dates stationed in Colorado | __/__/__ to __/__/__ | ○ | __/__/__ to __/__/__ | ○ |
| Dates you have had a Colorado driver's license | 12/18/00 to 3/8/11 | ○ | __/__/__ to __/__/__ | ○ |
| Current driver's license number | 97-073-0217 | | | |
| List exact years of Colorado motor vehicle registration | _____ | ○ | _____, _____ | ○ |
| Current license plate number | _____ | | | |
| Give state in which you are currently registered to vote | Colorado | ○ | _____ | ○ |
| Dates of Colorado voter registration, if applicable | __/__/__ to __/__/__ | ✓ | __/__/__ to __/__/__ | ○ |
| Dates of ownership of any Colorado residential property that is your primary residence | __/__/__ to __/__/__ | ○ | __/__/__ to __/__/__ | ○ |

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15    filed 08/02/23    USDC Colorado    pg 13
of 298

## TUITION CLASSIFICATION (continued)

If you are 23 years of age or older, give us your employment information. If not, give us your parent's or guardian's information.

| Employer | Type of Work/Hours Per Week | City | State | From Mo/Yr | To Mo/Yr |
|----------|------------------------------|------|-------|------------|----------|
| Veterans Admin. | Disabled | Denver | Col | 12/03 | current |
| Col. State | Secretary | Denver | Col | 6/97 | current |

## 28. PERSONAL STATEMENT

Please feel free to include on a separate sheet any additional information that you wish to share with us, such as your educational aspirations, travel and work experience, creative talents, factors affecting your academic record, and any other information that might be of use and interest to the admission committee.

## 29. SIGNATURES

Attach the non refundable $50 application fee, in the form of a check or money order made payable to the University of Colorado Denver. Write your name and birth-date on the back of the check or money order. If you are currently attending high school, submit your completed application to the appropriate high school official for review. Request that a copy of your high school transcript be sent with the application.

I hereby certify that to the best of my knowledge the information furnished in this application is true and complete without evasion or misrepresentation. I understand that, if found to be otherwise, it is sufficient cause for rejection or dismissal. I also understand that if I am classified as a non-resident for tuition purposes, and I have not petitioned for a change in my status by the first day of classes, I will remain classified as a non-resident for the entire semester and must submit a petition to request a change in my status for a future term. Proof of age and proof of legal employment or additional information may be required by the Tuition Classification Office.

Applicant's Signature _____    Date 8 March 2011

Parent/Guardian Signature _____    Date _____
(if applicant is under 18 years of age)

## 30. HIGH SCHOOL OFFICIALS ONLY

1. Please complete the required information below concerning grade point average and rank-in-class (or statement that high school does not rank).
2. Verify the courses in progress.
3. Make sure the application has been signed by the student and parent or guardian (if the student is under 18), and then sign it yourself. Submit the following with the application: a) $50 application fee; b) high school transcript and available test scores; and c) any other information appropriate for admission consideration.
4. Please send the application and all credentials in one complete mailing to the Office of Admissions, University of Colorado Denver, Campus Box 167, P.O. Box 173364, Denver, CO 80217-3364.

Grade point average _____ Is this based on a 4.00 grading scale (4.00=A, 3.00=B, etc.)? _____ Yes _____ No If not, what type of scale is used? _____

Cumulative rank and class size:  Unweighted ____/____  Weighted ____/____   For how many semesters? _____  For how many quarters? _____

_____ Rank does not include 9th grade _____ Rank includes work taken at another high school _____ By policy of this high school, students are not ranked

( _____ ) _____    _____    _____    _____    _____
High School Telephone    SAT/ACT Code    Signature of High School Official    Title    Date

_____
E-mail Address of High School Official

**THE UNIVERSITY OF COLORADO DENVER IS
AN EQUAL OPPORTUNITY/AFFIRMATIVE ACTION INSTITUTION.**
Alternative formats of this application are available upon request for applicants with disabilities.

CU JORDAN_0013

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15 filed 08/02/23    USDC Colorado    pg 14
of 298
pg 33 143-15

# Disciplinary History

On 3/09/2006, I was in the possession of cocaine, which was found in my pocket after I forgot it was there during a routine traffic stop. Albeit then I believed in moderation, invested in the wrong asset - I make more money legally - and frankly was immature, I now adamently oppose the use of any drug, unless there is a "legit" medical need. Furthermore I think it is wrong to minimize the abuse of drugs, as witnessed with Michael Jackson, Paris Hilton, Jimmy Hendrix, Anna Nichol Smith, Elvis Presley, and more recently Charlie Sheen. It is a shame how much people die all-over the world from myopia and the need for instant self-gratification. I think the quintessentially sad segment of all this, is it is for nay. These undertakings do nothing to improve mankind.

Science has proven that alcohol is the most dangerous drug because of social use; the accepted pratice of drugs simply dimenishes our society, economic output and overall potential. Prescription drugs are now more widely being abused by patients and physicians then illegal drugs. This is a debilitating component of our society that needs corrected.

CU JORDAN_0014

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-1    filed 08/02/23    USDC Colorado    pg 15
of 298

The albeit fact specific question is how. We could bankrupt our state budgets by overflowing prisons; kill 30% of our population — terrible for the economy; invest in more counseling; or my favorite, just make everything legal and lack of moderation illegal. Here is why I support the last suggestion, supply did not create demand demand created supply. There is a large segment of addiction — 30% — rooted in DNA — There goes counseling — therefore a all encompassing solution would have to include genetic engineering, and unfortunately this is not available yet. Given genetics can be overcome, society would more accurately reflect reality — The most mentally capable affluent people with high I.Q's would capitalize and continue to experience success. Fortunately I have a I.Q of 159. This remedy coupled with abortion would dramatically reduce crime.

While I was in the county for possessing cocaine, on 5/30/2006, I attempted to assault a officer — Where was my I.Q then, showing him a receipt for some stamps during a routine shakedown, he took them anyway then asked me to cuff up, I refused due to the whole indignation of the matter, and eventually was taken down. My actions were contrary to what I am willing to die for — After serving the Marine Corps Honorably — everybody deserves peace and welfare, I have

2

CU JORDAN_0015

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
page 35 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-15  filed 08/02/23   USDC Colorado   pg 16
of 298

to live for and safeguard this, by simply
complying with the societal norms I agreed upon.

I aim not nor are my crimes Malum In Se -
evil in itself, "naturally evil as adjudged by the
sense of a civilized community." My crimes are
Malum Prohibitum - Wrong because it is prohibited,
"made unlawful by statute for the public
welfare, but not inherently evil and not involving
moral turpitude.①

I will willingly die for my country as
most americans, evidenced by my enlistment in
the Marines, and I realize I can not stop
giving to the world - Forward or backwards, life or
death. I was suffering from PTSD (Post
Traumatic Stress Disorder), when I ended my
military contract. It took me some time to adjust
to the civilan world, I now have.

I have since learned the law of nature,
that no one has been able to explain, some might
call this religon. The name is of no importance. The
fact is, if I keep positive thoughts, it works for
the glory and success of mankind, when used
constructively.  On the other hand, if I have
negative thoughts, and use them destructively, it
will just as readily destroy. In this statement can
be found a very significant truth, namely, that
those who go down in defeat, and end their lives
in poverty, misery, and distress, do so because

3

CU JORDAN_0016

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-1    filed 08/02/23    USDC Colorado    pg 17
pg 36 of 215
of 298

of the negative application of their thoughts. This is how my crimes came to be. All impulses of thought have a tendency to clothe themselves in their physical equivalent. I assure you the positive clothes I a'm now adorned in are very attractive.

I a'm deeply remorseful for committing these crimes. Regardless of how much I have changed, I will have to face the consequences, and to a large degree I believe I have. I have spent five years in prison for these crimes. I will have these crimes on my record for 10 more years now, which is why I will understand if you do not bestow your good graces upon me and accept my re-admittance, however I do believe I deserve to be re-admitted.

I a'm entirely funded with 2 full rides to pay for college, a total of eight years. If you re-admit me I will continue my education at the University of Colorado-Denver, for at least 4 years.

<u>Footnote</u>

1.    I have to note that neither of my crimes were violent, I have not stolen anything, I could never be a sex-offender, and I a'm foregiven.

4

CU JORDAN_0017

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15  filed 08/02/23    USDC Colorado   pg 18
of 298

# Personal Essay

I believe in Samuel Adams and Jhon Hancocks vision of this country, largly motivated by their disdain for the King of England and Hamiltons vision of a capitalistic society – Which is motivated by money, supply and demand – the "Invisible Hand". This is why I served the United States Marine Corps Honorably, before being 30 percent disabled during Operation Iraq Freedom, because of massive shoulders like these I now stand on. Despite my willingness to die for this country I realize the true Heroes are the ones who create jobs in our country.

It is common knowledge that the Federal Reserve System primary function is to balence the economy – When its not growing, or cold, lower interest rates to get it growing, and when there is too much inflation, or hot, raise interest rates to take money out of the economy. In other words keep the economy warm. Despite the failure of the financial system the Federal Reserve has done a incredible job. The prospective growth of the economy is 3-4% this year. With that in mind there is a whole lot more we need to do. The World Trade Organization has just found China has no right to impose export

CU JORDAN_0018

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15    filed 08/02/23    USDC Colorado    pg 19
of 298

restrictions on nine raw materials - This will lead to rare earth magnets - their attempt to attract manufacturing under the guise of preventing pollution. The Department of Commerce and Trade Commission has just stoped China from buying a company because of security reasons. These things are good because we need a tougher trade policy, after all this is how the rich developed countries became rich. It is important to note that eventhough we became rich thru protectionism and to revert back to it against protectionism would create that needed necessity, for instance a way around using earth magnets, we need policies to attract the best talent, as we have done in the past. We have to build more infrastructure, out educate, and innovate the rest of the world, as indicated in president Obama's State of the Union address this year.

The Quantitative Easing scheduled to continue until June, has given banks the capital to create jobs, especially with these tighter, tougher, credit standards. China has recently tried to point the finger at the United States during the G-20. Timothy Geithner wisely responded, "China is fueling its own inflation by holding down the yuan's value, and its in China's best interest to let the yuan rise." At this G-20 meeting China received something it wanted,

2

CU JORDAN_0019

fiscal policy to focus on debt, relative to the exchange rate, and we received something we wanted, guidelines for fiscal policy, relative to the exchange rate, albeit China is still letting the yuan rise to slowly.

The important thing now is that we continue to grow our share of the world. Right now is a turning point in our country. There is no reason China should have fast rail systems and we don't. There is no reason our roads and bridges should be in decay, one of the reasons we are so great

Quantitative Easing is just one tool that will help us increase exports and balance our 39 billon dollar trade deficit with China. I know one sector we should be leading in is energy, especially considering the current oil situation.

China wants to become a consumer based economy like us. They are also looking for a growth spurt to their economy. Imports; specifically our businesses would make their businesses more competitive in the world, as long as we are not letting them steal our Intellectual Property rights this would be good. This is our chance to get a foothold in the world and grow our economy For China to fulfil their aspirations and become a consumer based economy they will need industries, hence they are in their protectionism

3

CU JORDAN_0020

Case No. 1:19-cv-02660-RM-JPO   Document 168   filed 12/08/23   USDC Colorado
pg 40 of 215
Case No. 1:19-cv-02660-RM-SKC   Document 143-5   filed 08/02/23   USDC Colorado   pg 21
of 298

stage.

I know we will continue to assist China along with the rest of the world because we are so interconnected and when businesses are growing they are innovating, solving problems, creating wealth, and improving the world. I have no doubt that the more successful we are as a country the more freedom will reign as it is now

My purpose has been to make the world a joyful, peaceful and loving place, while improving it. I will do this by innovating and creating assets all over the world.

I have 3 business plans oriented around the, health, financial and real estate sectors. President Barack Obama's new approach towards businesses will help bring them to fluition, and so will the University of Colorado - Denver after re-enrolling me in your business program for accounting and business statistics. You will be incredibly beneficial to my goals and a long life of learning.

4

CU JORDAN_0021

# University of Colorado Denver
### Anschutz Medical Campus · Downtown Campus

## Referral for CRIMINAL HISTORY Review

**Applicant Name:** Chadwick Jordan

**SID#:** 830282211

**Referred to Admission Counselor on** 03/25, 201 1

**Admission Counselor review results:**

✗ **Criminal offense satisfactorily explained. OK to move forward with processing**

By _____ 3/25/201 1
    Admission Counselor              Date

_____ **Additional information needed from applicant and request for this entered on ISIS**

By _____ _/_/201_
    Admission Counselor              Date

_____ **Referred to Criminal History Review Committee**

By _____ _/_/201_
    Admission Counselor              Date

*10/2010*
*Qhoang folder – Admissions Documents – Referral for Criminal History review*

# CU DENVER - TRANSFER WEB

## Personal Information

| | |
|---|---|
| First Name | Chadwick |
| Middle Name | Heath |
| Last Name | Jordan |
| Gender (optional) | [X] Male          [] Female |
| Social Security Number | 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 |
| Date of Birth | 06/5/1982 |

**How to Reach You**

| | |
|---|---|
| Email Address | sidewayz8383@gmail.com |
| Home Phone | (720)639-4372 |
| Cell Phone | (303)880-7017 |

## Your Address

**Your Mailing Address**

| | |
|---|---|
| Mailing Address | 4550 E jewell Ave. |
| Address Line 2 | Apt. 224 |
| City | Denver |
| State/Province | Colorado |
| ZIP/Postal Code | 80222 |
| Country | United States |
| Is your permanent address the same as above? | [X] Yes          [] No |

## Your Citizenship

**Citizenship Type**

[X]   U.S. Citizen
[]   Permanent Resident
[]   I Am on or Expecting a Temporary Visa
[]   None of the Above

Please send a copy of your Green Card to admissions@ucdenver.edu.

What is your country of birth? _____

**The following selective service question must be answered to comply with Colorado State law:**
If you are a male between the ages of 17 years and 9 months and 26 years, are you [] Yes          [] No          [X] Not Applicable
registered with the selective service?

## Military Service

| | |
|---|---|
| Are you - or have you been - a member of the military? | [X] Yes          [] No |
| What is your military status? | Veteran |
| Military Branch | Marines |
| Service Start Date | 12/2000 |
| Service End Date | 06/2015 |

CU JORDAN_0023

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15    filed 08/02/23   USDC Colorado   pg 24
of 298

## Ethnicity (Optional)

Are you Hispanic or Latino?          [ ]  Yes          [X]  No

[X]  Black or African American

## Enrollment Plans

In which term do you plan to enroll?                    [X] Spring 2015       [ ]  Summer 2015     [ ]  Fall 2015
Proposed Major                    Economics - BA
Please indicate your preferred housing status:                              [ ]  On-Campus       [X]  Commuter
                                                                                  Resident

## Your Academics

**Please provide information about the high school you attended.**

| | |
|---|---|
| Name | Westminster Senior High School(Ceeb :061440) |
| Address | 6933 Raleigh St |
| City | Westminster |
| State/Province | CO |
| ZIP/Postal Code | 80030-5912 |
| Country | US |
| Secondary School Graduation Date | / |

**Previous College**

Please provide information about any colleges you attended. Include attendance at any campus of the University of Colorado. **Note:** Transcripts from University of Colorado campuses are not required.

| | |
|---|---|
| Name | Community C Denver(Ceeb :004137) |
| Address | |
| City | Denver |
| State/Province | CO |
| ZIP/Postal Code | |
| Country | US |

Dates Attended

| | |
|---|---|
| From | 01/2014 |
| To | / |
| Hours Completed | 350 |
| Degree Earned | |

**Previous College 2**

| | |
|---|---|
| Name | |
| Address | |
| City | |
| State/Province | |
| ZIP/Postal Code | |
| Country | |

CU JORDAN_0024

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15    filed 08/02/23    USDC Colorado    pg 25
of 298

Dates Attended

From                          / _____
To                            / _____
Hours Completed               _____
Degree Earned                 _____

**Previous College 3**
Name                          _____
Address                       _____
City                          _____
State/Province                _____
ZIP/Postal Code               _____
Country                       _____

Dates Attended

From                          / _____
To                            / _____
Hours Completed               _____
Degree Earned                 _____

**Previous College 4**
Name                          _____
Address                       _____
City                          _____
State/Province                _____
ZIP/Postal Code               _____
Country                       _____

Dates Attended

From                          / _____
To                            / _____
Hours Completed               _____
Degree Earned                 _____

**Previous College 5**
Name                          _____
Address                       _____
City                          _____
State/Province                _____
ZIP/Postal Code               _____
Country                       _____

Dates Attended

From                          / _____
To                            / _____
Hours Completed               _____
Degree Earned                 _____

## Your Test Scores

**ACT**

Did you take the ACT? (Results are mandatory only for freshman engineering applicants.)

[ ]    Yes, I have already taken it.

[ ]    No, I have not taken it yet.

[X]    No, I will not be taking it.

Composite Score _____

**SAT**

Did you take the SAT? (Results are mandatory only for freshman engineering applicants.)

[ ]    Yes, I have already taken it.

[ ]    No, I have not taken it yet.

[X]    No, I will not be taking it.

Critical Reading Score _____

Math Score _____

Writing Score _____

**If you already have a University of Colorado (Boulder, Denver or Colorado Springs) Student ID #, please provide it in the space below.**

Former CU Student ID # (if applicable)    830282211 _____

## Your Activities

**List all activities and the school years in which you participated in them.**

Activity    Football _____

[ ]  9th Grade

[ ]  10th Grade

[ ]  11th Grade

[X]  12th Grade

## Honors & Awards

**List all honors and awards along with the school years in which you received them.**

Honor/Award _____

[ ]  9th Grade

[ ]  10th Grade

[ ]  11th Grade

[ ]  12th Grade

## Residency Information

**In-State Tuition Classification**

NOTE: Please make sure you answer the following question correctly. You will be asked to provide proof of Colorado residency if you select "Yes."

If you are seeking the in-state tuition rate, all questions below will need to be completed. The information you provide will be kept confidential and is used solely to determine residency. **Please provide your parent's information, as well, if you are under the age of 23.**

Do you plan to claim Colorado in-state tuition?                                   [X] Yes          [ ]  No

CU JORDAN_0026

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15    filed 08/02/23    USDC Colorado    pg 27
of 298

**Dates of Continuous Physical Presence in Colorado**

You

From       09/1990

To       /

Your Parent

From       /

To       /

**Colorado Driver's License, Permit or Other State-Related I.D.**

Do you (or your parent, if you're under 23) have a Colorado I.D.?       [] Yes       [X] No

Date Your I.D. Was Issued       /

Date Your Parent's I.D. Was Issued       /

Was this a renewal of a previous Colorado I.D.?       [] Yes       [] No

**Colorado Motor Vehicle Registration**

Have you (or your parent, if you're under 23) had a motor vehicle registration?       [X] Yes       [] No

You

From       10/2013

To       10/2015

Your Parent

From       /

To       /

**Colorado Voter Registration**

Have you (or your parent, if you're under 23) ever been registered to vote?       [X] Yes       [] No

Date of Your Initial Registration       04/2007

Date of Your Parent's Initial Registration       /

**Purchase of Any Colorado Residential Property**

Have you (or your parent, if you're under 23) ever purchased any Colorado residential property?       [] Yes       [X] No

Date of Your Purchase       /

Date of Your Parent's Purchase       /

**Employment in Colorado**

Have you (or your parent, if you're under 23) ever been employed?       [X] Yes       [] No

You

From       12/2000

To       06/2015

Your Parent

From       /

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15 filed 08/02/23   USDC Colorado   pg 28
of 298
pg 47 of 215

To                                    /_____

**Military Service**
Have you (or your parent, if you're under 23) ever served in the military?        [X] Yes            [ ]  No

(If you have been discharged, please include a copy of your DD214 form with your application.)

You

From                                  12/2000_____
To                                    06/2015_____

Your Parent

From                                  /_____
To                                    /_____

**Colorado State Income Taxes Filed**
Have you (or your parent, if you're under 23) filed Colorado state income taxes?    [ ]  Yes           [X] No

You

From                                  /_____
To                                    /_____

Your Parent

From                                  /_____
To                                    /_____

**Additional Classification Questions**
If your parents are divorced, which one
lives in Colorado?                    _____

Have you had an extended absence from Colorado? (more than one year)         [ ]  Yes           [X] No
Please explain the reason for your absence.
[_____]

**Marital Status**
Are you married?          [ ]  Yes            [X]  No
When were you married?    //_____

# Essay (Optional)

Are you transferring with more than 30 credits?                              [ ]  Yes           [X] No

**High School Classes**

In conjunction with your official high school transcript, please fill in the courses and number of years that you took in high school. Do not include courses
that you did not receive credit for or failed.

CU JORDAN_0028

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15    filed 08/02/23    USDC Colorado    pg 29
of 298

## English Classes

This includes communication, composition, debate, speech and literature courses. NOTE: Enter Yearbook and newspaper in the academic electives section below.

Class Name     English
Years Taken     1 Year

Class Name
Years Taken

Class Name
Years Taken

Class Name
Years Taken

Class Name
Years Taken

Class Name
Years Taken

## Math Classes

This includes statistics, applied mathematics, accounting and computer science courses with math prerequisites.

Class Name     Geometry
Years Taken     1 Semester

Class Name
Years Taken

Class Name
Years Taken

Class Name
Years Taken

Class Name
Years Taken

Class Name
Years Taken

## Natural Science

CU JORDAN_0029

Unspecified Natural Science With Lab includes anatomy, physiology, botany, ecology, zoology, genetics and other lab sciences.

Unspecified Natural Science Without Lab includes physical science, general science, earth science, astronomy, geology and other non-lab science courses.

| | |
|---|---|
| Class Name | Other Natural Science with Lab |
| Years Taken | 2 Trimesters |
| Class Name | |
| Years Taken | |
| Class Name | |
| Years Taken | |
| Class Name | |
| Years Taken | |
| Class Name | |
| Years Taken | |
| Class Name | |
| Years Taken | |

## Social Science

This includes U.S. government, economics, sociology, psychology and other social science courses.

| | |
|---|---|
| Class Name | United States History |
| Years Taken | 2 Trimesters |
| Class Name | |
| Years Taken | |
| Class Name | |
| Years Taken | |
| Class Name | |
| Years Taken | |
| Class Name | |
| Years Taken | |
| Class Name | |
| Years Taken | |

## Foreign Language

Case No. 1:19-cv-02660-RM-JPO   Document 168   filed 12/08/23   USDC Colorado
pg 50 of 315
Case No. 1:19-cv-02660-RM-SKC   Document 143-15   filed 08/02/23   USDC Colorado   pg 31
of 298

| Class Name | French |
|---|---|
| Years Taken | 1 Quarter |

| Class Name | Spanish |
|---|---|
| Years Taken | 1 Quarter |

| Class Name | |
|---|---|
| Years Taken | |

| Class Name | |
|---|---|
| Years Taken | |

| Class Name | |
|---|---|
| Years Taken | |

| Class Name | |
|---|---|
| Years Taken | |

## Electives Taken

This includes art, music, drama, journalism, yearbook, newspaper and computer science courses.

| Class Name | Art |
|---|---|
| Years Taken | 1 Trimester |

| Class Name | |
|---|---|
| Years Taken | |

| Class Name | |
|---|---|
| Years Taken | |

| Class Name | |
|---|---|
| Years Taken | |

| Class Name | |
|---|---|
| Years Taken | |

| Class Name | |
|---|---|
| Years Taken | |

## Almost Finished!

Wrap things up with these final steps!

CU JORDAN_0031

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 51 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-15    filed 08/02/23    USDC Colorado    pg 32
of 298

Simply answer a few questions below and hit the "Submit Your Application" button. Then you'll be able to:

- Download and print your application packet for your records.
- Send us your official college transcript(s).
- Submit your standardized test scores.
- Pay your $50 application fee.

Remember, once we receive your completed application (including your supporting materials), you'll receive a three-week admission decision!

Have you ever been placed on probation, suspended, expelled or been subject to official disciplinary action    [ ]  Yes                    [X]  No
from any high school or postsecondary institution for any academic misconduct or behavioral misconduct?

If Yes, please complete your application by logging in on a desktop computer using the link we emailed you. You will need to download the Application
Suspension Question Clarification form, fill it out and upload it before submitting your application.

Do you have a pending criminal charge OR have you ever been convicted of a crime, made a plea of guilty,    [ ]  Yes                    [X]  No
accepted a deferred judgment, been adjudicated or been required to register as a sex offender?
(Misdemeanor traffic offenses are exempt.) NOTE: You hereby agree to immediately notify the director of
admissions if criminal charges are subsequently brought against you for an offense that occurred prior to the
date you submitted this application. The University of Colorado Denver reserves the right to consider such
charges and take appropriate action, including, but not limited to, denying admission, and if already admitted
and enrolled, summary suspension and/or revocation of admission.

If Yes, please complete your application by logging in on a desktop computer using the link we emailed you. You will need to download the Criminal History
Supplement form, fill it out and upload it before submitting your application.

I waive my right to review or access letters and statements of recommendation on my behalf.        [ ]  Yes            [X]  No
[X]  I hereby certify that, to the best of my knowledge, the information furnished in this application is true and complete. I understand that if found to be
      otherwise, it is sufficient cause for rejection or dismissal. I grant my college permission to release my transcript to CU Denver.

CU JORDAN_0032

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15    filed 08/02/23    USDC Colorado    pg 33
pg 52 of 315
of 298

essay_pdf

1

## True Survival

I have been a survivor all of my life. Surviving implies more than just living, that we are here for inexorable reasons. Furthermore not all survival is equal, paralleling business and economics the study these businesses. For instance is prevention the ultimate key to survival, as example, never driving over an improvised explosive device, as opposed to living thorough millions of them? In the business world we call this risk mitigation, and is quintessential to all surviving organisms.

I often feel a source of bravado; increased testosterone after winning, or surviving near death experiences. For instance in Iraq, I was hit by a medics Hummer vehicle while I was in my communications Hum-V, which is killing my neck right now. This incidence, like all traumatizing ones, is humbling. This was a failure of mine, because I believe the fault is always our own, and shows a positive quality of failure-humbling. So perhaps this is not the best example, how about taking fire from a doped up Jihadist. The sound of 7.62 mm rounds whizzing by my ear, is a good example this kind of adrenalin that makes me feel "invincible". This was humbling as well, because people were killed, though only slightly, because I was not one of them. Beating up on an enemy combatant using hand to hand combat, is the greatest example of a testosterone increase or this feeling. This is what I am talking about, victory with no loss whatsoever, a high I hope to keep.

I look at people who have never been in combat, car accidents, or risked anything let alone their physical health, and wonder are they the real survivors. The truth is they are. If I had immaculate Health, which I don't, after risking my life many times over, my goal is still the same as the individual not taking any risk at all, which is still, immaculate health. The question is does the risk justify the reward? Now, I'm sure you can think of plenty scenarios in this regard.

CU JORDAN_0033

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15    filed 08/02/23    USDC Colorado    pg 34
pg 53 of 215
of 298

essay_pdf                          .

2

Those who practice prevention are the real survivors, for the fact the odds favor their goal of

great health; the health reward outweighs this risk.  Multiply this fact if you have someone else

to take the risk.  Proving the quote, "whoever is engaged in war loses," the winner just losses

less, less life that is.  This is true of all risk, including economic and financial.  It just so happens

there reward outweighs there risk, or the system (capitalism) would collapse.  This is what all

politicians, economists, entrepreneurs and the rest us rudimentarily grapple with, risk verse

reward.

Well is, "The greater the risk the grater the reward," true then?  For the most part, the old

adage is true.  High risk has the potential for high return.  Playing it safe will almost guarantee

that you will keep what you have but with little more to show for it.  War bears great risk and

great reward.  However, the risk are born by the few, yet the reward shared by all.  I have learned

in economics that there are many nuances and intricacies like this, leaving no definite answers

because everything extensively based on emotion.

On a weighted scale, I devised a decision purifier, using the following values: glory=1,

money=2, success=3, and health=4. Certain decisions became easier to make.  Perhaps, if you

take a moment and use these values as I did, you will understand my selection of the economist

verse the marine, on the other end of this spectrum.  Most people probably have not taken the

time to realize economist, save more lives, prevent more wars and mitigate these risk more than

any other occupation. I do wear my scares and bruise as a reminder of my prior, still critical,

occupation as a marine.

The greatest reward of surviving tough situations that are enormously risky, is to know

more about yourself.  This is powerful knowledge for anyone.  Studies have shown the most

effective way we learn is thorough failure.  I will explain mitigating the risk of terminating all

CU JORDAN_0034

Case No. 1:19-cv-02660-RM-JPO   Document 168   filed 12/08/23   USDC Colorado
Case No. 1:19-cv-02660-RM-SKC   Document 143-15   filed 08/02/23   USDC Colorado   pg 35
of 298
pg 54 of 215

essay_pdf

3

risk, for now, I have just explained why, "What doesn't kill you makes you stronger."    It would be divine to learn without failing-the painful emotions and occasional physical trauma that follows. This is my work and what I hope to achieve. Could you imagine reading someone's biography and then learning their lessons? This would be no doubt be a superb person.

The economist is in the greatest position, I would argue the most important as well. As an economist I prevent wars; loss for everyone, and if we are at war, I make sure we lose less. These tasks are achieved by building wealth, a bigger share of the world's wealth and helping others share in this prosperity. In other words, the more value in money we have, the more likely we will not go to war, win if we do, and the happier and more peaceful we all will be after sharing in this prosperity. This is a great responsibility us economist have.

As a self-proclaimed prevention expert, in such a valued position as an economist, I am going to make my success, yours and powerful. Through the years, great wealth has proven detrimental to civilizations. For instance Egypt, after thousands of years of great wealth and peace, decided to reduce its military and was soon overrun by Persia. Thankfully, capitalism; "war with more purpose then death," leaves us with plenty of failures to learn from. Nevertheless, I am going to put greater emphasize on competition, learning from others and our history, in my philosophy. This is where the adage, " He who does not know his history is doomed repeat it, originates from. Which translates into a greater emphasis on certain basic principles, in economics. Through sound economics we as a civilization will survive.

CU JORDAN_0035

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15  filed 08/02/23   USDC Colorado   pg 36
of 298

Kristin Kushmider - Friday April 1, 2016 at 3:30pm
Last edited Thursday May 12, 2016 at 9:14am

The following information was shared by Veteran Student Services:

Hi Denise,

I wanted to introduce you to Dr. Kristin Kushmider - Dean of Students here at the University.
She has been the primary contact in Mr. Jordan's case and will continue to be the main contact
moving forward. Please feel free to contact Dr. Kushmider if you have any concerns or
comments. Hopefully we can work together to make Mr. Jordan successful here at the
University. Thanks, and have a great weekend.

Dr. Kristin Kushmider
Dean of Students – Office of Case Management
303.724.8488

Denise Kupcho
Vocational Rehabilitation Counselor – Vocational Rehabilitation & Employment – Department
of Veteran Affairs
303.914.5544
denise.kupcho@va.gov

Respectfully,

Patrick Browne | Director
CARE Action: Information Gathering Uncategorized

Kristin Kushmider - Tuesday March 15, 2016 at 4:32pm

KDK reviewed social media history. Nothing concerning noted.

Kristin Kushmider - Friday March 11, 2016 at 4:30pm
Last edited Thursday May 12, 2016 at 9:12am

The following email exchange was received and forwarded by Sarah Fields:

Just an FYI. I will send no response.

Sent from my iPhone.

Begin forwarded message:

CU JORDAN_0036

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15 filed 08/02/23    USDC Colorado    pg 49
of 298



University of Colorado
Denver | Anschutz Medical Campus

*Exhibit H*

Dean of Students Office
Student Affairs
Campus Box 184
P.O. Box # 173364 | Denver, CO 80217-3364
o 303 556-2444 | f 303 352 3751 | DeanofStudents@ucdenver.edu
ucdenver.edu/DOS

March 25, 2016

Chadwick Jordan
1630 Pennsylvania St. Apt 21
Denver, CO 80203

Dear Chadwick,

This letter is in follow up to our meeting on March 21st, in regards to your appeal of the student conduct decision and sanctions issued to you as a result of your conduct meeting on March 1st. Based on all of the information available to me and based on our conversation I am modifying your sanctions.

You were found **responsible** for (12) *knowingly providing false information: the use of false identification or the identification of another person to gain entrance to a facility or business is prohibited. This also includes forging, altering, falsifying or misusing documents or records, or knowingly using/possessing forged, altered or false documents or records.* Your sanction for this finding was suspension. You failed to disclose on your application for admission submitted in 2014 that you did have a criminal history.

Based on your application for a retroactive withdrawal dated 5/9/14, you did provide some documentation of your criminal charges and incarceration period to the CLAS Academic Standards Committee. Although this was not provided on the original application, you did try to provide it at a later date. Technically this is still a violation, however, I recognize your efforts as an attempt to mitigate. Therefore, I am changing your sanction of suspension to a sanction of **General Disciplinary Probation** through August 1, 2017. *General Disciplinary Probation is for a designated period of time during which you are required to show appropriate changes in attitude and behavior. Specific sanctions or restrictions may be imposed as a part of this sanction but do not result in loss of good standing with the university. A violation of the terms of general disciplinary probation, or subsequent misconduct after discipline, is grounds for further disciplinary action, including loss of good standing, suspension, or expulsion. Disciplinary probation is separate from academic probation.*

Additionally, **"no decision"** could be determined regarding allegedly (2) *threatening behavior.* In our meeting together you indicated you were not responsible for how others perceived your words, and that you do not have an obligation to be nice to everyone. We also discussed the nature of an educational environment and that different expectations for behavior exist in a culture of academia. You were sanctioned to participate in a **Forensic Threat Assessment** and requested this sanction be eliminated.



University of Colorado
Denver | Anschutz Medical Campus

Dean of Students Office
Student Affairs
Campus Box 184
P.O. Box # 173364 | Denver, CO 80217-3364
o 303 556-2444 | f 303 352 3751 | DeanofStudents@ucdenver.edu
ucdenver.edu/DOS

Based on our conversation and your disclosure of personal psychiatric notes which support your ongoing treatment with the VA I would still like additional information regarding any potential risk to your safety or the safety of others, as well as recommendations we may gather from an outside assessment that would assist me in supporting your success as a student here at CU Denver. You have agreed to participate in an assessment with Nicoletti-Flater Associates on March 28th, failure to complete this assessment by April 15th will result in a hold being placed on your registration. I thank you for your willingness to engage in this assessment process.

Furthermore, you were also issued an **Auraria Campus Ban**, given your new disciplinary status as on probation this ban has been lifted and you may return to campus. However, I am issuing a **No contact order** preventing you from having any contact with Professor David Keener. You are to have no contact with Professor Keener for any reason. This includes contact by phone, voicemail, email, text messages, internet, or contact through any third party. Any contact with Professor Keener will be considered a violation of the CU Denver Student Code of Conduct and may lead to additional disciplinary action.

Finally, given the amount of time that has passed since you were interim suspended you have requested to be withdrawn from your classes and have your tuition refunded. I will grant this request. Please be advised that as a veteran student you may not directly receive the refund it will likely be returned to Vocational Rehabilitation. Please consult with our Veteran Student Services Office if you have questions.

Chadwick, I know this has been a frustrating and challenging time. I sincerely appreciated the time you took out of your day to meet with me and to share some of your personal experiences and philosophies. I hope we are able to continue to engage in future discussions and that you see me as a resource on campus who is here to assist you in being a successful student.

Sincerely,

Kristin D.Kushmider, PhD
Dean of Students
University of Colorado Denver

Cc: David Steward,

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15 filed 08/02/23    USDC Colorado    pg 171
pg 58 of 215
of 298



Student Conduct & Community Standards
UNIVERSITY OF COLORADO DENVER

**Office of Student Conduct and Community Standards**
Campus Box 196
P.O. Box 173364 | Denver, CO 80217-3364
**o** 303 315 7311
ucdenver.edu/conduct



# Memorandum

**Date:** September 22, 2017

**To:**    Office of the Registrar
        Financial Aid Office
        Bursar Office

**Re:**    Student Disciplinary Suspension

**Student Name:** Chadwick Jordan

**Student ID:**

**Academic Schedule**
        Managerial Accounting and Professional Issues – ACCT 2220-001
        Core Composition II – ENGL 2030-E01
        Modern Germany – HIST 4071-001
        Principles of Marketing – MKTG 3000-006

To Whom It May Concern:

Chadwick Jordan has been placed on disciplinary suspension effective August 18, 2017 through December 29, 2017. Please immediately withdraw him from classes and place the appropriate disciplinary hold(s) on his account. Please contact David Steward if you have any questions.

Sincerely,
David Steward
Director of Student Conduct and Community Standards
University of Colorado Denver
303.315.7311

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 59 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-15 filed 08/02/23    USDC Colorado    pg 172
of 298



University of Colorado
Denver | Anschutz Medical Campus

CARE Team Referral
Submitted on August 1, 2017 at 4:21:23 pm MDT

| | |
|---|---|
| Type: | **Threatening behavior** |
| Urgency: | **Normal** |

| | |
|---|---|
| Incident Date: | **2017-07-31** |
| Incident Time: | **3:00 PM** |
| Incident Location: | **-Downtown / Auraria Campus** |

<u>Reported by</u>

| | |
|---|---|
| Name: | **Reymundo** |
| Title: | |
| Email: | **reymundo.morales@ucdenver.edu** |
| Phone: | **303-315-1853** |
| Address: | |
| | **[UNAUTHENTICATED]** |

<u>Student/s of Concern</u>

**Chadwick Jordan (830282211)**        1982-06-05
Student of Concern

<u>Concerning Behavior Information</u>

Disruptive Classroom Behaviors:
**Rude or insubordinate behavior, Aggressive behavior, Argumentative**

Concerns for General Mental Health or Well-being:


Threatening Behaviors:


Suicidal Behaviors:


Please provide a detailed description of the incident or concern. Please use concise and objective terms to describe your interactions and the specific behaviors you observed.
**Student stopped by the office on 7/31 and immediately requested to speak with the "Mexican dude" whose name starts with "J" so I was assuming Justin and explained he is not available so what could I assist him with. Student was concerned because he did not receive any state or institutional grants. While i was looking at the account the student seemed anxious, pacing back and forth the front counter and looking out the window. After discovering that he applied for his FAFSA late and by the time we awarded him, the funds had already been depleted in May. Student became irritated at this point and started explaining that since he was a continuing student we should know that he is coming back. Explained it is a yearly application and must be applied within a good time frame since funds are not unlimited. Student began leaning over the desk upset because he feels like he should have been given the grant because he's been here for four years. Started explaining the process as to how it works and that funds do run out and since there is no way to truly determine if the student will return other than completing the application early. Student did not seem to grasp the concept of applying yearly, so I asked the student something along the lines of that the students who submitted the application before the deadline on time should not be considered for extra aid? Once this was said the student became upset and started repeating "I take offense to that, that is offensive, how dare you put words in my mouth". Explained I'm sorry he feels that way but there is no money left to give since the FAFSA was received after there was no more grant funding. Student at this point was annoyed and did not want to listen to what I had to say so I had student take a seat. After consulting with Mary Morales (another Advisor) letting her know that he was upset and wanted to consult with someone else, the student**

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 60 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-1 filed 08/02/23    USDC Colorado    pg 173
of 298

approached the counter again and started yelling "He's lying, he's lying, I am not upset" and Mary Morales
then took the student to a solution room.

Have you talked to or corresponded with the student regarding your concerns?
**No**

Does the behavior seem to be getting worse or more frequent?
**Yes**

Do you wish to remain anonymous if/when the student is contacted?
 ***If it is your preference to remain anonymous, the CARE Team will make every effort to maintain anonymity.
However, please know that anonymity can never been guaranteed. Please see document at top of form for additional
questions.
**Not sure, Yes**


*Pending IR #00001715*
*Submitted from 132.194.175.46 and routed to Brooke Farley (Case Manager)*
*Copies to:*
*david.steward@ucdenver.edu,franklin.kim@ucdenver.edu,jason.mollendor@ahec.edu,Brittany.Simonson@ucdenver.eduJONATHAN.SOWEIDY@
UCDENVER.EDU*

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC   Document 143-15   filed 08/02/23   USDC Colorado   pg 174
of 298
pg 61 of 215


University of Colorado
Denver | Anschutz Medical Campus

CARE Team Referral
Submitted on August 1, 2017 at 5:13:50 pm MDT

Type:              **Threatening behavior**
Urgency:           **Normal**

Incident Date:     **2017-07-31**
Incident Time:     **4:15 PM**
Incident Location: **-Downtown / Auraria Campus**

Reported by

Name:     **Alma Rocha Vasquez**
Title:
Email:    **alma.rochavasquez@ucdenver.edu**
Phone:    **303-315-1866**
Address:

          **[UNAUTHENTICATED]**


Student/s of Concern

**Chadwick Heath Jordan (830282211)**    06051982
Witness

Concerning Behavior Information

Disruptive Classroom Behaviors:


Concerns for General Mental Health or Well-being:


Threatening Behaviors:
**Threatening words or actions**

Suicidal Behaviors:


Please provide a detailed description of the incident or concern. Please use concise and objective terms to describe
your interactions and the specific behaviors you observed.
**Student came in and met with Financial Aid Advisor Reymundo Morales. I was sitting next to R.Morales at the
front counter so I witness the interaction between R. Morales and Jordan.  Jordan wanted to know why he
was not offered the Colorado Student Grant or the University Need Grant. R. Morales explained to Jordan
that he submitted his 17-18 FAFSA  July 2017. Due to the FAFSA being submitted after the priority deadline
sadly he missed out on grants. Jordan became upset and said that he filled out the FAFSA later but it was
not his fault he should be awarded the grants because he needs them. R.Morales explained that grants are
first come first serve and the FAFSA was open earlier this year ( October 2016) so students have been
applying since October for aid in the 2017-2018. Student said he should be awarded regardless of the other
students who applied early. R.Morales said that is not fair for students who submitted the FAFSA early and
completed their file early because  that is making it seem like they don't matter. Jordan voice escalated and
said "I, did not say that. Don't put words in my mouth!" Jordan then wanted to speak to Justin directly.
R.Morales asked the Jordan to please take a seat.  At this point Mary Morales, Senior Advisor, walked by
R.Morales told her that there is an upset student who wants to get grants. Jordan interrupted and said that
he was not upset but R.Morales is placing words on in his mouth and wanted to speak to some on how to get
aid. His voice sounded really angry and gave a threatening stare to R.Morales. Jordan then began to explain
how R.Morales was placing words in his mouth and wanted M.Morales to review the video about his
altercation with R.Morales and pointed to the cameras. Jordan was really upset and continued to yell.
M.Morales took the student to a solution room. After the meeting with M.Morales Jordan stormed off the**

CU174

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15 filed 08/02/23   USDC Colorado   pg 175
of 298

**office and was visually upset. During the interaction with both R.Morales and M.Morales he was very hostile
and puffing his chest. This was very alarming.**

**Student then called a short time later and ask to meet with Justin directly. Took down information.**

Have you talked to or corresponded with the student regarding your concerns?
**No**

Does the behavior seem to be getting worse or more frequent?
**I don't know**

Do you wish to remain anonymous if/when the student is contacted?
  ***If it is your preference to remain anonymous, the CARE Team will make every effort to maintain anonymity.
However, please know that anonymity can never been guaranteed. Please see document at top of form for additional
questions.
**Yes**

*Pending IR #00001716*
*Submitted from 132.194.175.90 and routed to Brooke Farley (Case Manager)*
*Copies to:*
*david.steward@ucdenver.edu,franklin.kim@ucdenver.edu,jason.mollendor@ahec.edu,Brittany.Simonson@ucdenver.eduJONATHAN.SOWEIDY@*
*UCDENVER.EDU*

CU175



University of Colorado
Denver | Anschutz Medical Campus

CARE Team Referral
Submitted on August 2, 2017 at 4:49:15 pm MDT

| | |
|---|---|
| Type: | **Concern for general mental health or well-being** |
| Urgency: | **Normal** |

| | |
|---|---|
| Incident Date: | **2017-07-31** |
| Incident Time: | **3:00 PM** |
| Incident Location: | **-Downtown / Auraria Campus** |

<u>Reported by</u>

Name: **Mary Morales**
Title:
Email: **mary.morales@ucdenver.edu**
Phone: **303-315-1848**
Address:
  **[UNAUTHENTICATED]**

<u>Student/s of Concern</u>

**Chadwick Jordan (830282211)**    06/05/1982
Student of Concern

<u>Concerning Behavior Information</u>

Disruptive Classroom Behaviors:
**Argumentative**

Concerns for General Mental Health or Well-being:
**Extreme mood swings, Unusual or erratic behavior**

Threatening Behaviors:
**Threatening words or actions**

Suicidal Behaviors:

Please provide a detailed description of the incident or concern. Please use concise and objective terms to describe your interactions and the specific behaviors you observed.
**Chadwick was upset with the advisor assisting him and was demanding to see the Director. I offered to assist the student in a solution room and listen to the issues since the Director was unavailable. The student was visibly upset that he was not awarded additional grant funding and was argumentative when explaining the fact that his FAFSA was not completed before the priority date. He argued that it should not matter when his FAFSA was completed since he is a continuing student and thus, should have been awarded additional grants despite when he applied for financial aid. He then stated he would be contacting his Congressman to complain about financial aid and hopes that financial aid is no longer offered to any students. While trying to explain the fact that State and University grant funding is limited, Chadwick insisted the problem of the lack of grants was due to immigrants in the U.S. and that he was going to study a Master's program that will eliminate immigrants from entering or remaining in the country. He insisted that he would be graduating after this year, so I explained that he had 51 credits completed and, if the 12 credit hours he was registered for Fall 2017 were completed with passing grades, he would be considered Junior status and would be eligible for an additional $2,000 in loans in the Spring semester to assist with financing educational expenses. I explained that most undergraduate degrees require 120 credit hours but he continued to insist he would be graduating in a year. Also explained that he could apply for scholarships for the 2018-19 academic year which may help with educational costs, as he is close to reaching financial aid aggregates.  Chadwick appeared to be calm and stated he would apply for scholarships and come in early January and request the additional loans. His mood quickly changed back to annoyed and Chadwick stated he wished all financial aid was based on merit.**

CU176

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-215 filed 08/02/23   USDC Colorado   pg 177
of 298

**As he was preparing to leave, he informed me that he was filing a lawsuit on a faculty member and that the FAFSA being completed late was most likely a result of the time consumption created from the lawsuit preparation. His behavior changed again and he left calmly stating he would apply for scholarships and be back in early January. Chadwick's overall behavior was erratic and unusual.**

Have you talked to or corresponded with the student regarding your concerns?
**No**

Does the behavior seem to be getting worse or more frequent?
**I don't know**

Do you wish to remain anonymous if/when the student is contacted?
 ***If it is your preference to remain anonymous, the CARE Team will make every effort to maintain anonymity. However, please know that anonymity can never been guaranteed. Please see document at top of form for additional questions.
**Yes**

*Pending IR #00001718*
*Submitted from 132.194.175.230 and routed to Brooke Farley (Case Manager)*
*Copies to: david.steward@ucdenver.edu,Brittany.Simonson@ucdenver.edu,JONATHAN.SOWEIDY@UCDENVER.EDU*

CU177

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 65 of 315
Case No. 1:19-cv-02660-RM-SKC    Document 243-1    filed 08/02/23    USDC Colorado    pg 178
of 298


University of Colorado
Denver | Anschutz Medical Campus

CARE Team Referral
Submitted on August 2, 2017 at 2:21:54 pm MDT

| | |
|---|---|
| Type: | **Threatening behavior** |
| Urgency: | **Normal** |

| | |
|---|---|
| Incident Date: | **2017-08-01** |
| Incident Time: | **3:30 AM** |
| Incident Location: | **-Downtown / Auraria Campus** |

Reported by

| | |
|---|---|
| Name: | **Jose Celis** |
| Title: | |
| Email: | **jose.celis@ucdenver.edu** |
| Phone: | **303-315-1834** |
| Address: | |
| | **[Authenticated as JOSE.CELIS]** |

Student/s of Concern

**Chadwick Jordan (830282211)**

Concerning Behavior Information

Disruptive Classroom Behaviors:

Concerns for General Mental Health or Well-being:

Threatening Behaviors:
**Threatening words or actions**

Suicidal Behaviors:

Please provide a detailed description of the incident or concern. Please use concise and objective terms to describe your interactions and the specific behaviors you observed.
**I entered the elevator on the first floor of the Student Commons building with this student. As we were going up the elevator ride the student seemed somewhat agitated. He rolled his shoulders, bobbed his head side to side and kept shifting his weight back and forth from foot to foot. It was odd behavior for the elevator and it seemed as though the student was preparing for a boxing match. At one point, he looked back at me (he was standing right at the elevator door) and I noticed his facial expression seemed a little agitated or aggressive as well. He looked back forward and resumed shifting his weight and then also shook out his hands, again as though he was preparing for some sort of athletic event. I walked behind him to the Financial Aid and Scholarships office and kept my eye on him but when he got to the front desk and spoke to the representative there, he no longer seemed shifting his weight and seemed like he was now in a good mood. His tone of voice when speaking to the representative seemed normal and upbeat. I didn't think anything else about it until later in the day when I learned that there had been an incident involving this student. It was then I remembered his odd behavior in preparation for speaking with someone about his financial aid awards.**

Have you talked to or corresponded with the student regarding your concerns?
**No**

Does the behavior seem to be getting worse or more frequent?
**I don't know**

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-1 filed 08/02/23    USDC Colorado    pg 179
of 298

**Do you wish to remain anonymous if/when the student is contacted?**
 ***If it is your preference to remain anonymous, the CARE Team will make every effort to maintain anonymity. However, please know that anonymity can never been guaranteed. Please see document at top of form for additional questions.
**Yes**


*Pending IR #00001717*
*Submitted from 132.194.33.26 and routed to Brooke Farley (Case Manager)*
*Copies to:*
*david.steward@ucdenver.edu,franklin.kim@ucdenver.edu,jason.mollendor@ahec.edu,Brittany.Simonson@ucdenver.eduJONATHAN.SOWEIDY@*
*UCDENVER.EDU*


University of Colorado
Denver | Anschutz Medical Campus

CARE Team Referral
Submitted on August 14, 2017 at 12:34:50 pm MDT

| | |
|---|---|
| Type: | **Other (describe below)** |
| Urgency: | **Normal** |

| | |
|---|---|
| Incident Date: | **2017-08-14** |
| Incident Time: | **12:15 PM** |
| Incident Location: | **-Downtown / Auraria Campus** |

<u>Reported by</u>

| | |
|---|---|
| Name: | **Alma Rocha Vasquez** |
| Title: | |
| Email: | **alma.rochavasquez@ucdenver.edu** |
| Phone: | **3033151850** |
| Address: | |
| | **[UNAUTHENTICATED]** |

<u>Student/s of Concern</u>

**Chadwick Heath Jordan (830282211)**    1982-05-06
Student of Concern

<u>Concerning Behavior Information</u>

Disruptive Classroom Behaviors:

Concerns for General Mental Health or Well-being:

Threatening Behaviors:
**Violent or aggressive behavior**

Suicidal Behaviors:

Please provide a detailed description of the incident or concern. Please use concise and objective terms to describe your interactions and the specific behaviors you observed.
**Student came in to talk to Justin the Director of Financial Aid. Told student that he needs to leave and to please contact Dean of Students. Told student that is what I was told to tell him. Student refused to leave after I asked him three times to leave.**

Have you talked to or corresponded with the student regarding your concerns?
**No**

Does the behavior seem to be getting worse or more frequent?
**I don't know**

Do you wish to remain anonymous if/when the student is contacted?
 ***If it is your preference to remain anonymous, the CARE Team will make every effort to maintain anonymity. However, please know that anonymity can never been guaranteed. Please see document at top of form for additional questions.
**Not sure**

*Pending IR #00001730*

CU180

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 68 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-1    filed 08/02/23    USDC Colorado    pg 181
of 298

Submitted from 132.194.175.90 and routed to Brooke Farley (Case Manager)
Copies to: david.steward@ucdenver.edu,Brittany.Simonson@ucdenver.edu,JONATHAN.SOWEIDY@UCDENVER.EDU

CU181

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 69 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-1 filed 08/02/23   USDC Colorado   pg 182
of 298


University of Colorado
Denver | Anschutz Medical Campus

CARE Team Referral
Submitted on August 14, 2017 at 3:18:57 pm MDT

Type:          **Threatening behavior**
Urgency:       **Normal**

Incident Date:     **2017-08-14**
Incident Time:     **12:15 PM**
Incident Location:  **-Downtown / Auraria Campus**

Reported by

Name:     **Alma Rocha Vasquez**
Title:
Email:    **alma.rochavasquez@ucdenver.edu**
Phone:    **3033151866**
Address:
          **[UNAUTHENTICATED]**

Student/s of Concern

**Chadwick Heath Jordan (830282211)**     1982-06-05
Student of Concern

Concerning Behavior Information

Disruptive Classroom Behaviors:

Concerns for General Mental Health or Well-being:

Threatening Behaviors:
**Violent or aggressive behavior**

Suicidal Behaviors:

Please provide a detailed description of the incident or concern. Please use concise and objective terms to describe your interactions and the specific behaviors you observed.
**Chadwick Jordan came to the Financial Aid & Scholarships Office and requested to meet with Justin Jaramillo, Director of Financial Aid, to talk about his financial aid account. I asked student for student id number and asked for him to take a seat and I will check as Justin might be in a meeting. Walked back to talk to the Associate Director of Financial Aid, Julia Alexander, about how to handle student request as the past experience with the student left me uneasy. I was informed I must tell student to please leave as he is not allowed to come to the FASO. I walked back to the front and told C. Jordan that he will need to leave and please contact Dean of Students to schedule appointment with Justin. Jordan inquired if I just asked him to leave. I told him yes, and that I was told to tell him to leave and to contact Dean of Students. Jordan did not leave and continued to ask for Justin. I again told the student to please contact Dean of Students. He wanted to know who gave me the instructions to tell him to leave. I told student my supervisor had provide that instruction. Student said Justin Jaramillo is your supervisor so did Jaramillo tell you to say that? Told him no my supervisor is someone else. I did not tell him who my supervisor was as he was getting agitated. Student then asked if he can have Justin Jaramillo's email. Told student to please contact Dean of Students and please leave. I felt unsafe after I told him to leave several times but he refused and seemed to get angrier after each request for him to leave. I pushed the panic button. At this point Julie Thompson (another staff member) came to the front and C. Jordan asked Julie Thompson if Justin was in.  J. Thompson told C. Jordan that J. Jaramillo was in a meeting. Student then wanted to know why he needs to speak to Dean of Students to speak to J. Jaramillo. C. Jordan asked if all students must do this, told him no but in certain**

CU182

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 70 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-15 filed 08/02/23    USDC Colorado    pg 183
of 298

**cases this is the policy. I looked up the location of the Dean of Students and wrote it on a piece of paper and told him to have a nice day. Student finally left after 10 minutes. Student was calm until I asked him to leave. After being asked to leave he raised his voice and his volume increased throughout the interaction. He did not make threatening motions but was very agitated and refused to leave. When the student left, the police arrived a couple of minutes later. I gave the description of the incident to the officers, described student, and provided student name and date of birth.**

Have you talked to or corresponded with the student regarding your concerns?
**No**

Does the behavior seem to be getting worse or more frequent?
**Yes**

Do you wish to remain anonymous if/when the student is contacted?
 ***If it is your preference to remain anonymous, the CARE Team will make every effort to maintain anonymity. However, please know that anonymity can never been guaranteed. Please see document at top of form for additional questions.
**Not sure**

*Pending IR #00001732*
*Submitted from 132.194.33.19 and routed to Brooke Farley (Case Manager)*
*Copies to:*
*david.steward@ucdenver.edu,franklin.kim@ucdenver.edu,jason.mollendor@ahec.edu,Brittany.Simonson@ucdenver.eduJONATHAN.SOWEIDY@*
*UCDENVER.EDU*

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 71 of 215
Case No. 1:19-cv-02660-RM-SKC   Document 143-15 filed 08/02/23   USDC Colorado   pg 184
of 298


University of Colorado
Denver | Anschutz Medical Campus

CARE Team Referral
Submitted on August 14, 2017 at 2:53:02 pm MDT

Type:                **Other (describe below)**
Urgency:             **Normal**

Incident Date:       **2017-08-14**
Incident Time:       **1:30 AM**
Incident Location:   **-Downtown / Auraria Campus**

Reported by

Name:       **Julie Marie Thompson**
Title:
Email:      **Julie.M.Thompson@ucdenver.edu**
Phone:      **303-315-1864**
Address:

            **[Authenticated as JULIE.M.THOMPSON]**

Student/s of Concern

**Chadwick Jordan (810282211)**          1982-06-05
Student of Concern

Concerning Behavior Information

Disruptive Classroom Behaviors:

Concerns for General Mental Health or Well-being:

Threatening Behaviors:

Suicidal Behaviors:

Please provide a detailed description of the incident or concern. Please use concise and objective terms to describe
your interactions and the specific behaviors you observed.
**Chadwick visited the Financial Aid & Scholarships Office on 8/14/17 and was speaking at the front counter
with a Financial Aid Advisor (Alma Rocha Vasquez). I walked by the front counter and Chadwick made eye
contact with me and requested to speak with Justin Jaramillo. I advised Chadwick that Justin was in a
meeting, and was unavailable. Chadwick continued to speak with Alma Rocha Vasquez, and I walked away. I
was requested to document this interaction. Chadwick displayed no inappropriate or concerning behavior to
me during our very brief interaction.**

Have you talked to or corresponded with the student regarding your concerns?
**No**

Does the behavior seem to be getting worse or more frequent?
**I don't know**

Do you wish to remain anonymous if/when the student is contacted?
 ***If it is your preference to remain anonymous, the CARE Team will make every effort to maintain anonymity.
However, please know that anonymity can never been guaranteed. Please see document at top of form for additional
questions.
**No**

CU184

*Pending IR #00001731*
*Submitted from 132.194.175.62 and routed to Brooke Farley (Case Manager)*
*Copies to: david.steward@ucdenver.edu,Brittany.Simonson@ucdenver.edu,JONATHAN.SOWEIDY@UCDENVER.EDU*

CU185

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 73 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-15   filed 08/02/23   USDC Colorado   pg 186
of 298



University of Colorado **Denver**
Student Conduct and Community Standards
Student Affairs

# Campus Exclusion Form

| 08/18/2017 | 12/29/2017 | Auraria Campus |
|---|---|---|
| Beginning Date | End Date | Area of exclusion |

| Name | Jordan | Chadwick | Heath | |
|---|---|---|---|---|
| | Last | First | Middle | Alias |

| 830282211 | 720.273.9741 | |
|---|---|---|
| Student ID | Phone #1 | Phone #2 |

| 2246 Clarkson St. Apt. A | Denver | CO | 80203 |
|---|---|---|---|
| Address | City | State | Zip Code |

| 06/05/1982 | M | Black | | | | |
|---|---|---|---|---|---|---|
| Date of Birth | Sex | Race | Height | Weight | Hair | Eyes |

**Reason For Exclusion**

Pattern of aggressive and disruptive behavior.

| David Steward | 303.315.7311 | |
|---|---|---|
| Exclusion Authorized By: | Phone | Phone |

| Signed Electronically | No |
|---|---|
| Signature | Exclusion Letter Attached |

| David Steward | Appeal - 9/21/2017 | 9/22/2017 |
|---|---|---|
| Exclusion served by | Date Served | Current Date |

Student Conduct and
Community Standards
University of Colorado Denver

Campus Box #196
P.O. Box 173364 Denver, CO
80217-3364

Office: 303-556-3682
ucdenver.edu/standards

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado    pg 121
Case No. 1:19-cv-02660-RM-SKC    Document 143-15 filed 08/02/23    USDC Colorado    pg 121
of 298

ANGER AND CONTEMPT SOCIAL FUNCTIONS                                    115

of secondary emotions. *Personality and Social Psychology Review, 4,* 186–197.

Leyens, J.-P., Rodriguez-Pérez, A., Rodriguez-Torres, R., Gaunt, R., Paladino, M. P., Vaes, J., et al. (2001). Psychological essentialism and the differential attribution of uniquely human emotions to ingroups and outgroups. *European Journal of Social Psychology, 31,* 395–411.

Mackie, D., Devos, T., & Smith, E. R. (2000). Intergroup emotions: Explaining offensive action tendencies in an intergroup context. *Journal of Personality and Social Psychology, 79,* 602–616.

Mallick, S. K., & McCandless, B. R. (1966). A study of catharsis of aggression. *Journal of Personality and Social Psychology, 4,* 591–596.

Manstead, A. S. R., & Fischer, A. H. (2001). Social appraisal: The social world as object of and influence on appraisal processes. In K. R. Scherer, A. Schorr, & T. Johnstone (Eds.), *Appraisal processes in emotion: Theory, methods, research* (pp. 221–232). New York: Oxford University Press.

Martin, R., Wan, C. K., David, J. P., Wegner, E. L., Olson, B. D., & Watson, D. (1999). Style of anger expression: Relation to expressivity, personality, and health. *Personality and Social Psychology Bulletin, 25,* 1196–1207.

Ortony, A., Clore, G. L., & Collins, A. (1988). *The cognitive structure of emotions.* New York: Cambridge University Press.

Parkinson, B. (2001). Putting appraisal in context. In K. R. Scherer, A. Schorr, & T. Johnstone (Eds.), *Appraisal processes in emotion: Theory, methods, research* (pp. 173–186). London: Oxford University Press.

Parkinson, B., Fischer, A. H., & Manstead, A. S. R. (2005). *Emotion in social relations: Cultural, intergroup and interpersonal processes.* New York: Psychology Press.

Parrott, W. G. (Ed.). (2001). *Emotions in social psychology.* Philadelphia: Psychology Press.

Robinson, M. D., & Clore, G. L. (2002). Episodic and semantic knowledge in emotional self-report: Evidence for two judgment processes. *Journal of Personality and Social Psychology, 83,* 198–215.

Roseman, I. J. (2001). A model of appraisal in the emotion system: Integrating theory, research, and applications. In K. R. Scherer, A. Schorr, & T. Johnstone (Eds.), *Appraisal processes in emotion: Theory, methods, research* (pp. 68–92). London: Oxford University Press.

Roseman, I. J., Antoniou, A. A., & Jose, P. E. (1996). Appraisal determinants of emotions: Constructing a more accurate and comprehensive theory. *Cognition & Emotion, 10,* 241–277.

Roseman, I. J., Copeland, J. A., & Fischer, A. H. (2003, January). *Contempt versus anger in interracial attitudes.* Paper presented at the fourth meeting of the Society for Personality and Social Psychology, Los Angeles.

Roseman, I. J., & Smith, C. A. (2001). Appraisal theory: Overview, assumptions, varieties, controversies. In K. R. Scherer, A. Schorr, & T. Johnstone (Eds.), *Appraisal processes in emotion: Theory, methods, research* (pp. 3–19). London: Oxford University Press.

Roseman, I. J., Wiest, C., & Swartz, T. S. (1994). Phenomenology, behaviors and goals differentiate discrete emotions. *Journal of Personality and Social Psychology, 67,* 206–221.

Rozin, P., Lowery, L., Imada, S., & Haidt, J. (1999). The CAD triad hypothesis: A mapping between three moral emotions (contempt, anger, disgust) and three moral codes (community, autonomy, divinity). *Journal of Personality and Social Psychology, 76,* 574–586.

Russell, J. A. (1991a). The contempt expression and the relativity thesis. *Motivation and Emotion, 15,* 149–168.

Russell, J. A. (1991b). In defense of a prototype approach to emotion concepts. *Journal of Personality and Social Psychology, 60,* 37–47.

Russell, J. A., & Barrett, L. F. (1999). Core affect, prototypical emotional

episodes, and other things called emotion: Dissecting the elephant. *Journal of Personality and Social Psychology, 76,* 805–819.

Russell, J. A., & Fehr, B. (1994). Fuzzy concepts in a fuzzy hierarchy: Varieties of anger. *Journal of Personality and Social Psychology, 67,* 186–205.

Smith, C. A., & Lazarus, R. S. (1993). Appraisal components, core relational themes, and the emotions. *Cognition & Emotion, 7,* 233–269.

Sommer, K. L., Williams, K., Ciarocco, N. J, & Baumeister, R. F. (2001). When silence speaks louder than words: Explorations into the intrapsychic and interpersonal consequences of social ostracism. *Basic and Applied Social Psychology, 23,* 225–243.

Spielberger, C. D., Johnson, E. H., Russell, S. F., Crane, J. C., Jacobs, G. A., & Worden, T. J. (1985). The experience and expression of anger: Construction and validation of an anger expression scale. In M. A. Chesney & R. H. Rosenman (Eds.), *Anger and hostility in cardiovascular and behavioral disorders* (pp. 5–30). New York: Hemisphere Publication Services.

Sternberg, R. J. (Ed.). (2005). *The psychology of hate.* Washington, DC: American Psychological Association.

Timmers, M., Fischer, A. H., & Manstead, A. S. R. (1998). Gender differences in motives for regulating emotions. *Personality and Social Psychology Bulletin, 24,* 974–985.

Twenge, J. M., Baumeister, R. F., Tice, D. M., & Stucke, T. S. (2001). If you can't join them, beat them: Effects of social exclusion on aggressive behavior. *Journal of Personality and Social Psychology, 81,* 1058–1069.

Twenge, J. M., Catanese, K. R., & Baumeister, R. F. (2002). Social exclusion causes self-defeating behavior. *Journal of Personality and Social Psychology, 83,* 606–615.

Twenge, J. M., Catanese, K. R., & Baumeister, R. F. (2003). Social exclusion and the deconstructed state: Time perception, meaninglessness, lethargy, lack of emotion, and self-awareness. *Journal of Personality and Social Psychology, 85,* 409–423.

Underwood, M. K. (2003). *Social aggression among girls.* New York: Guilford Press.

Underwood, M. K. (2004). Glares of contempt, eye rolls of disgust and turning away to exclude: Non-verbal forms of social aggression among girls. *Feminism and Psychology, 14,* 371–375.

Van Kleef, G. A., De Dreu, C. K. W., & Manstead, A. S. R. (2004). The interpersonal effects of anger and happiness in negotiations. *Journal of Personality and Social Psychology, 86,* 57–76.

van Zomeren, M., Spears, R., Fischer, A. H., & Leach, C. W. (2004). Put your money where your mouth is! Explaining collective action tendencies through group-based anger and group efficacy. *Journal of Personality and Social Psychology, 87,* 649–664.

Williams, K. (2001). *Ostracism: The power of silence.* New York: Guilford Press.

Williams, K., Forgas, J., & von Hippel, W. (Eds.). (2005). *The social outcast: Ostracism, social exclusion, rejection, and bullying.* New York: Psychology Press.

Wolf, K. A., & Foshee, V. A. (2003). Family violence, anger expression styles, and adolescent dating violence. *Journal of Family Violence, 18,* 309–316.

Xie, H., Cairns, R. B., & Cairns, B. D. (2002). The development of social aggression and physical aggression: A narrative analysis of interpersonal conflicts. *Aggressive Behavior, 28,* 341–355.

Received June 6, 2006
Revision received December 15, 2006
Accepted December 17, 2006 ■

CU JORDAN_0121

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 75 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-15 filed 08/02/23    USDC Colorado    pg 122
of 298

8/9/2017 DKS called to let Chadwick know he had a letter in his CU Denver Account - Left voicemail

8/10/2017 DKS called to let Chadwick know he had an important letter in his CU Denver Email - Left Voicemail

8/11/2017 DKS called to to discuss the letter sent previously via email and get a meeting set. - Left Voicemail

8/14/2017 DKS called Chadwick to discuss the conduct case - Phone went right to voicemail and mailbox was full so could not leave a message.

8/16/2017 DKS called Chadwick to discuss the case - Phone again went right to voicemail and mailbox was full.

8/21/2017 DKS called Chadwick to discuss setting a meeting. Left a message. Chadwick called back later in the day and set up a meeting for that afternoon.


Conduct Conference Uncategorized

David Steward - Monday August 21, 2017 at 1:00pm
Last edited Tuesday August 22, 2017 at 10:37am

Chadwick read his conduct conference letter because he had not read his letter via email.

He stated it was all lies and continued that he did not raise his voice at all and was just checking on what he had requested earlier.

DKS told Chadwick that the incident referenced in the letter was his first interaction at the Financial Aid Office and not the one where they called the police since he would not leave.
- DKS informed Chadwick the second incident is not a part of any conduct issue.

Chadwick stated he never got angry and was calm and quiet the whole time. He only reacted because the "kid" behind the table disrespected him.

DKS asked how the student behind the desk was disrespecting him.
- Chadwick stated that the person said "You people always act this way....."
- Chadwick continued by saying the "kid" was a racist.

DKS told Chadwick that he would notify the Office of Equity of the claims and the Ombuds office could provide assistance as well.

DKS referred to a pattern of behavior noticed when Chadwick does not get something he wants.
- A pattern of becoming confrontational and demanding with a raised voice appearing to be angry.

CU JORDAN_0122

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15 filed 08/02/23    USDC Colorado    pg 123
pg 76 of 215
of 298

Chadwick stated he was not angry and was only reacting because he was disrespected.

DKS pointed out that several individuals in the office thought he was angry and had witnessed the raised voice.
- Chadwick stated they were lying and he never raised his voice.
- DKS stated he would email Justin J in the Financial Aid Office and confirm the details of the reports.
- Chadwick said he wanted me to check as well.

DKS did return to the pattern of behavior and state that if the follow-up with Justin confirmed the report that Chadwick would probably be suspended.
- Chadwick stated that the "only pattern is the university pattern of racism"
- DKS did refer to the ability to appeal if suspension was the determination and encouraged Chadwick to utilize the process.
⌐

Telephone Conversation with Justin Jaramillo (financial aid) Uncategorized

David Steward - Thursday August 3, 2017 at 9:41am

Have had several interactions with Chadwick over the past year and a half
- Financial Aid Hurdles
- Faculty issues (caused FA hiccup)
- Applied late this year (July while most applied December and January)
- Need based allocated early
- By July was already out of $
- Met earlier and walked through some discrepancies in application
- Took about a week and was awarded
- Chadwick has almost used all his eligibility
- Didn't get same amount as last year

Chadwick came to front desk asking for me
- Justin wasn't there.
- Became increasingly upset
- used terms
- Not fair
- Racest (why didn't get aid)
- Giving $ to illegal immigrants
- Leaned over counter
- Figitty and jumpy

Calmed down before left office

Justin is worried as he cannot mitigate if Chadwick comes in and escalates.

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 77 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-1 filed 08/02/23   USDC Colorado   pg 124
of 298



**Office of Student Conduct and Community Standards**
Campus Box 196
P.O. Box 173364 | Denver, CO 80217-3364
o 303 315 7311
ucdenver.edu/conduct

# Memorandum

**Date:**  September 22, 2017

**To:**    Office of the Registrar
           Financial Aid Office
           Bursar Office

**Re:**    Student Disciplinary Suspension

**Student Name:** Chadwick Jordan

**Student ID:**

**Academic Schedule**
           Managerial Accounting and Professional Issues – ACCT 2220-001
           Core Composition II – ENGL 2030-E01
           Modern Germany – HIST 4071-001
           Principles of Marketing – MKTG 3000-006

To Whom It May Concern:

Chadwick Jordan has been placed on disciplinary suspension effective August 18, 2017 through
December 29, 2017. Please immediately withdraw him from classes and place the appropriate
disciplinary hold(s) on his account. Please contact David Steward if you have any questions.

Sincerely,
David Steward
Director of Student Conduct and Community Standards
University of Colorado Denver
303.315.7311

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-1 filed 08/02/23    USDC Colorado    pg 191
pg 78 of 215
of 298



University of Colorado **Denver**

**Student Conduct and Community Standards**
Student Affairs



Campus Box 196
P.O. Box 173364 | Denver, CO  80217-3364
o 303 556 3682 | f 877 556 7704
studentconduct@ucdenver.edu
ucdenver.edu/standards

August 7, 2017

Chadwick Jordan
Sent electronically to CHADWICK.JORDAN@UCDENVER.EDU

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2017000601

Dear Chadwick:

I have received a report, dated July 31, 2017 which indicates you may have violated the Student Conduct Code as outlined in the CU Denver Code of Student Conduct and the Resident Handbook (available at http://www.ucdenver.edu/standards & http://www.ucdenver.edu/life/services/housing/Pages/default.aspx). According to the information I have received, you allegedly disrupted the Financial Aid Office while demanding to receive aid which was not available. This alleged behavior may be in violation of the following standards:

1. (6) Abusive Behavior
Verbal abuse, threats, intimidation, coercion, or other behavior which has caused a person substantial emotional distress and where the circumstances would cause a reasonable person to suffer substantial emotional distress. This policy should not be construed, and will not be enacted, to deny any student the right of free speech and expression.

2. (9) Interference, obstruction, or Disruption of University Activity
Materially and substantially interfering with, obstructing, or disrupting a university activity. a. University activities include, but are not limited to, all normal university activities, such as teaching, research, recreation, meetings, public events, and disciplinary proceedings. b. This prohibition includes, but is not limited to, the following: behavior disruptive of university functions; Behavior resulting in injury to persons or damage to property on the campus; and interference, obstruction, or disruption of the freedom of movement of students, or other members of the university community and their guests. Interference in any manner with the public or private rights of citizens, Behavior that threatens or endangers the health or safety of any person, and damage to property are prohibited.

Admission to the University carries with it the assumption that students will be responsible members of our community. When you chose to enroll at the University of Colorado Denver, you assumed the responsibility to uphold standards of conduct appropriate to the academic and community goals set by the University.

In response to these allegations I have scheduled a conference for you on **Friday, August 11, 2017 at 1:30 PM**. The conference will take place in the **Tivoli Student Union, Room 227**. The purpose of this conference is to examine the context of the situation to determine your responsibility for this incident. At the time of the conference you may bring written accounts from any witnesses present during the alleged incident, as well as your own account. You may also bring an advisor with you if you wish. I suggest that you refer to the Student Conduct Policies and Procedures at http://www.ucdenver.edu/standards for more information about your rights and responsibilities. Please use this LINK to access a document titled "What to Expect in Your

Conduct Meeting" and read the document before you come to your conduct meeting.

Due to the nature of the incident you may not contact the Office of Financial Aid without going through me to schedule directly with Justin Jaramillo.

Your attendance at this conference is important. If you do not attend the conference I will review the written documentation and render a decision without your input. If you are unable to attend this conference due to a reasonable conflict, academic or otherwise, you must contact me at david.steward@ucdenver.edu or 303-315-7311 no later than twenty-four hours prior to your conference to request a new appointment.

I look forward to meeting with you to resolve this situation.

Sincerely,


David Steward
Director of Student Conduct and Community Standards

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 80 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-1    filed 08/02/23    USDC Colorado    pg 189
of 298



## General Notes/File History

8/9/2017 DKS called to let Chadwick know he had a letter in his CU Denver Account - Left voicemail

8/10/2017 DKS called to let Chadwick know he had an important letter in his CU Denver Email - Left Voicemail

8/11/2017 DKS called to to discuss the letter sent previously via email and get a meeting set. - Left Voicemail

8/14/2017 DKS called Chadwick to discuss the conduct case - Phone went right to voicemail and mailbox was full so could not leave a message.

8/16/2017 DKS called Chadwick to discuss the case - Phone again went right to voicemail and mailbox was full.

8/21/2017 DKS called Chadwick to discuss setting a meeting. Left a message. Chadwick called back later in the day and set up a meeting for that afternoon.

## Individual Notes
### Conduct Conference
David Steward - Monday August 21, 2017 at 1:00pm
Last edited Tuesday August 22, 2017 at 10:37am

Chadwick read his conduct conference letter because he had not read his letter via email.

He stated it was all lies and continued that he did not raise his voice at all and was just checking on what he had requested earlier.

DKS told Chadwick that the incident referenced in the letter was his first interaction at the Financial Aid Office and not the one where they called the police since he would not leave.
- DKS informed Chadwick the second incident is not a part of any conduct issue.

Chadwick stated he never got angry and was calm and quiet the whole time. He only reacted because the "kid" behind the table disrespected him.

DKS asked how the student behind the desk was disrespecting him.
- Chadwick stated that the person said "You people always act this way....."
- Chadwick continued by saying the "kid" was a racist.

DKS told Chadwick that he would notify the Office of Equity of the claims and the Ombuds office could provide assistance as well.

DKS referred to a pattern of behavior noticed when Chadwick does not get something he wants.
- A pattern of becoming confrontational and demanding with a raised voice appearing to be

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-1    filed 08/02/23    USDC Colorado    pg 190
pg 81 of 215
of 298

angry.

Chadwick stated he was not angry and was only reacting because he was disrespected.

DKS pointed out that several individuals in the office thought he was angry and had witnessed the raised voice.
- Chadwick stated they were lying and he never raised his voice.
- DKS stated he would email Justin J in the Financial Aid Office and confirm the details of the reports.
- Chadwick said he wanted me to check as well.

DKS did return to the pattern of behavior and state that if the follow-up with Justin confirmed the report that Chadwick would probably be suspended.
- Chadwick stated that the "only pattern is the university pattern of racism"
- DKS did refer to the ability to appeal if suspension was the determination and encouraged Chadwick to utilize the process.


Telephone Conversation with Justin Jaramillo (financial aid)
David Steward - Thursday August 3, 2017 at 9:41am
Have had several interactions with Chadwick over the past year and a half
- Financial Aid Hurdles
- Faculty issues (caused FA hiccup)
- Applied late this year (July while most applied December and January)
- Need based allocated early
- By July was already out of $
- Met earlier and walked through some discrepancies in application
- Took about a week and was awarded
- Chadwick has almost used all his eligibility
- Didn't get same amount as last year

Chadwick came to front desk asking for me
- Justin wasn't there.
- Became increasingly upset
- used terms
- Not fair
- Racest (why didn't get aid)
- Giving $ to illegal immigrants
- Leaned over counter
- Figitty and jumpy

Calmed down before left office

Justin is worried as he cannot mitigate if Chadwick comes in and escalates.

Case No. 1:19-cv-02660-RM-JPO   Document 168   filed 12/08/23   USDC Colorado
Case No. 1:19-cv-02660-RM-SKC   Document 148-21  5 filed 08/02/23   USDC Colorado   pg 193
of 298



University of Colorado **Denver**

**Student Conduct and Community Standards**
Student Affairs

Campus Box 196
P.O. Box 173364 | Denver, CO  80217-3364
o 303 556 3682 | f 877 556 7704
studentconduct@ucdenver.edu
ucdenver.edu/standards

August 22, 2017

Chadwick Jordan
Sent electronically to CHADWICK.JORDAN@UCDENVER.EDU

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2017000601

Dear Chadwick:

This is a follow-up to our conference on August 21, 2017 regarding alleged violations of the CU Denver Student Conduct Code, as outlined in your Conference Letter.

Chadwick, you stated you did not raise your voice and were simply reacting to the "kid" behind the front desk who disrespected you. I confirmed with the Office of Financial Aid that several individuals did heard you raised your voice and did not hear any disrespectful statements made toward you. This behavior is another incident where you confronted individuals in an office on campus as a result of hearing news you did not like or agree with.

Based on our meeting and the written documentation, and using a preponderance of the evidence standard, I have made the following determination regarding the alleged violations outlined in your original conference letter:

(6) Abusive Behavior -- Responsible
Verbal abuse, threats, intimidation, coercion, or other behavior which has caused a person substantial emotional distress and where the circumstances would cause a reasonable person to suffer substantial emotional distress. This policy should not be construed, and will not be enacted, to deny any student the right of free speech and expression.

(9) Interference, obstruction, or Disruption of University Activity -- Responsible
Materially and substantially interfering with, obstructing, or disrupting a university activity. a. University activities include, but are not limited to, all normal university activities, such as teaching, research, recreation, meetings, public events, and disciplinary proceedings. b. This prohibition includes, but is not limited to, the following: behavior disruptive of university functions; Behavior resulting in injury to persons or damage to property on the campus; and interference, obstruction, or disruption of the freedom of movement of students, or other members of the university community and their guests. Interference in any manner with the public or private rights of citizens, Behavior that threatens or endangers the health or safety of any person, and damage to property are prohibited.

You have been sanctioned as follows:
**Follow-up Meeting**
You are required to meet with me prior to your re-enrollment at CU Denver The purpose of this meeting is to check in regarding your progress as a student as well as to review any sanction items. It is your responsibility to schedule this meeting; you may do so by calling me at 303-315-7311 or emailing me at david.steward@ucdenver.edu.

CU193

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-1 pg 83 of 215 filed 08/02/23    USDC Colorado    pg 194
of 298

**Counseling**
You are required meet with a counselor of your choice for a minimum of four visits. The number of total meetings with the counselor will be determined by the counselor. These meetings are for discussions focused on your reactive and confrontation behavior when you presented with situations you don't like or agree with. You will complete any follow-up recommendations from the clinician. You will need to sign a release of information with this counselor so they can submit verification that you attended and participated in this appointment and can provide information on their ongoing recommendations. These sessions must be completed prior to your return from suspension.

**Disciplinary Suspension**
As a result of this incident you are being suspended from the University of Colorado Denver beginning August 18, 2017 and lasting through December 29, 2017. Suspension means that you are not eligible to enroll in any courses including online courses at any of the University of Colorado campuses. You will be eligible to return to the university upon completion of all other sanctions beginning January 2, 2018.

**Auraria Campus Exclusion**
As a result of this incident you have been suspended from the Auraria Campus beginning August 22, 2017 and ending December 29, 2017.

This means that you are not eligible to be anywhere on the Auraria Campus. A hold has been placed on your account. As a result of this suspension you are not eligible to enroll at any of the Auraria institutions including CU Denver, Metropolitan State University of Denver or the Community of College of Denver. If you are seen anywhere on the Auraria Campus during the period of your suspension, the police will be notified and you may be subject to additional Student Conduct or Criminal action.

Please understand that completion of these sanctions is your responsibility. Failure to complete these sanctions will result in further judicial action, specifically a hold being placed on your records and a stop on your registration.

If you have been given a sanction of probation with loss of good standing or higher, you have the right to appeal this decision. Such an appeal must be made in writing and submitted via the Student Conduct and Community Standards website, www.ucdenver.edu/standards. This appeal must be submitted no later than August 25, 2017. More information about the appeals process can be found on our webpage www.ucdenver.edu/csw.

Please note, failure to complete the above outcomes by the given deadlines may result in a hold on your student account and/or additional disciplinary actions. In addition, all written sanctions will be checked through Turnitin. If it is found that academic misconduct has occurred, you may be subject to further disciplinary action.

It is my hope that you will have a positive experience while a student here at the University of Colorado. The faculty and staff will continue to support your positive contributions to the university learning/living environment. If you have any questions, please do not hesitate to contact me.

Sincerely,

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 84 of 215
Case No. 1:19-cv-02660-RM-SKC   Document 143-1 filed 08/02/23   USDC Colorado   pg 195
of 298

David Steward
Director of Student Conduct and Community Standards

CU195

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 85 of 215
Case No. 1:19-cv-02660-RM-SKC   Document 143-1   filed 08/02/23   USDC Colorado   pg 196
of 298

From: Kushmider, Kristin
Sent: Wednesday, September 20, 2017 3:07 PM
To:   Chadwick Jordan; Jordan, Chadwick H
Cc:   Dewese, William; Montgomery, Omar
Subject:   Appeal Status

Hi Chadwick,

I hope you are well. Dr. Cardenas has completed his review of your
appeal, you must retrieve your letter
from your CU Denver email account. Please do so immediately as it
contains important information
about your campus ban and when you may be on campus, with permission.

Additionally, I wanted to let you know that I've made special
arrangements for you to be seen at the CU
Denver Student and Community Counseling Center while you are on
suspension. Typically, we do not
allow students to access that service while on disciplinary suspension,
but I do understand that making
appointments at the VA could take an extensive amount of time to schedule
so I wanted to provide you
with an alternative.  If you'd like, you can be seen by a faculty member
in the counseling center (you do
not have to but it would be free for you). Dr. Lisa Forbes has agreed to
see you as a client if you wish. I
think you will really enjoy working with her, I hope you take advantage
of this opportunity. If you would
like to set up appointments at the counseling center please contact the
Director, Dr. Franklin Kim, to
schedule this appointment. You can reach him via email:
FRANKLIN.KIM@UCDENVER.EDU or by phone
303-315-7277.

I've copied Mr. Dewese and Mr. Montgomery in this email and asked Dr.
Cardenas to include them as
recipients of your letter, as I know you are working closely with both of
them.

Please let me know if you have questions.

Best,

Kristin D. Kushmider, PhD
Dean of Students
University of Colorado Denver, Student Affairs

O 303-315-7310
E kristin.kushmider@ucdenver.edu

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 86 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-15    filed 08/02/23    USDC Colorado    pg 203
of 298

Exhibit AV

University of Colorado
Denver | Anschutz Medical Campus

CU Denver Student Conduct Appeal
Submitted on September 1, 2017 at 4:01:47 pm MDT

| | |
|---|---|
| Type: | **Appeal** |
| Urgency: | **Normal** |

| | |
|---|---|
| Incident Date: | **2017-09-01** |
| Incident Time: | |
| Incident Location: | **On Campus** |

Reported by

Name:
Title:
Email:
Phone:
Address:

**[UNAUTHENTICATED]**

Your Information

**Chadwick Jordan (830282211)**          cjllc@post.com          7202739741

Appeal Grounds & Rationale

Case Number
**2017000601**

As outlined in Section G.G. of the Code of Student Conduct;
A student may only appeal if they have received a sanction including probation with loss of good standing, housing termination, suspension, or expulsion.  A decision reached by a Conduct Officer may be appealed to an Appeal Officer by either the Respondent(s) or Complainant(s). For an appeal to be considered it must meet at least one of the criteria listed below.
Reason for Appeal:
**a. To determine whether the conference was conducted fairly in light of the charges and information presented, and in conformity with proscribed procedures giving both the Respondent and complaining parties the opportunity to prepare and present relevant information to be considered in the determination of an appropriate outcome. Minor deviations from designated procedures will not be a basis for sustaining an appeal unless there is a demonstrable adverse effect on the outcome of the conference., b. To determine whether the sanctions(s) imposed were appropriate for the violation of the Student Code of Conduct which the student was found to have committed., c. To consider new information, sufficient to alter the decision or other relevant facts not brought out in the original conference, because such information and/or facts were not known to the person appealing at the time of the original conference.  This does not include information that was known at the time of the conference but was not shared.**

The appeal process is a written process, you will not be granted an in person meeting with the Appeal Officer to further discuss this case or your appeal.  Please provide a rationale, details, and specifics for each "grounds" box checked above here.
**I had a meeting with Lorain a few times before I came in to the financial aid office this time concerning my financial aid audit.  They put a hold on my financial aid and requested information from me, and once again I came to the financial aid office looking for Lorain.  I approached the student and said may I speak with a supervisor concerning my aid.  He then said," about what".  I responded, "I believe there to be some discrepancies in the amount I received".  He looks at my aid and says, "that is the same amount everyone receives".  I then said that is not what I want to speak with them about.  He then says, "you people think your different from everybody else".  I could not believe his offensive comment, which is discriminatory.  I then said, "are you going to let me speak to a supervisor or sit here and keep disrespecting me".  A supervisor approached the desk, because she heard my request.  Before going to speak with a financial aid official in**

the back, where I also briefly discussed the student's inappropriate behavior with, I notified the staff adjacent to him of his disrespect towards me, saying "I don't appreciate his disrespect may I make a complaint". To me it was enough I spoke with his supervisor. The reason he filed this complaint against me with the student conduct is out of retaliation and his vindictive nature, from my complaints that day. I had a legitimate issue and students have a right to resolve their issues with the authorities. This student flipped me off before during a political march during the 2016 campaign around October. He was marching with the financial aid office, denote a vindictive person. This student's complaint is preposterous.

David Steward has been deliberately trying to paint me in a bad light. He has been biased and discriminatory from our very first in court, one in which I was exonerated completely. During this first incident, he called me a liar and said I did not deserve to be at the University of Colorado. Despite my honesty in the whole process, and being found truthful and honest by his superiors, he did not recant these statements ever. This is incredibly biased and discriminatory, and reflects his attitude towards me, to this day. This was a lost semester by the way, lost money, and time out of my life. I told Kristin Kusmider about my discomfort and discrimination of Dave regarding our first encounter. She reassured me to get to know him and it would be alright, and I did not think I was going to have to deal with him again. Unfortunately, I did see David again and in our second encounter I was exonerated as well, except for a charge David made up, he is the only one to accuse me of this conduct violation. one I could not appeal, conveniently, due to the small sanction. If I have the chance I will appeal the fact he did not interview any of my witnesses. And I have received a second opinion from will, the current Title IX office, who previously had David's position. And Will said he would not have filed this charge on me after I have been found not guilty. This was biased and discriminatory as well.

After reading the letter I never stated to Dave I raised my voice ever. He made this up. Rather than discriminate on the distinct sound of my voice, by asking the people in financial aid if he heard me, he should have asked if they always hear me. I did tell him I naturally had a loud voice all the time, and in the Marines, we had to yell at trees to deepen our voices, so we could be heard over the fog of war. He responds this not in the Marines, which is biased and discriminatory. I know you can tell I am black and Chadwick Jordan by the sound of my voice, I believe it to be distinct, so no way is this allegation fair. Also, while discussing this current case with David. I asked if he interviewed the accuser, and he said no. I then said, how could you know if he is telling the truth or not, and he responded, "now you're telling me how to do my job. Which is biased and discriminatory. And his comment also implied I was trying to tell the accuser how to do his job. This takes his biased and discriminatory statement to a new level. He made more biased and discriminatory statements in our last conversation, regarding the current issue. I said, I "have no reason to be mad I don't need financial aid," he said, "yeah you do." I did not argue with him he can believe what he wants. This is however a biased and discriminatory comment. I am retired and I use my military benefits to pay for school. That is how biased and discriminatory David Steward is, I do not need financial aid, therefore I have no reason to be mad. David then said when things don't go your way you get mad. This is another biased and discriminatory statement, fabricated out of the blue by David Steward. This was nothing more than a personal attack from David. David desperately wants me to be mad, enough to fabricate a false narrative. That was his reasoning for finding me guilty of disturbing the class in the 2nd false accusation. He made up some lie I was mad and made a subjective decision. I was found innocent, I had no reason to be mad. I could not even appeal his decision. As will stated in the first paragraph I shouldn't have even been charged in the second incident.

David exaggerates everything with me, lies, and is doing his best to destroy my education because he is racist. Racism is David's motive. David tried to say there was a pattern and the only pattern we came to, the office of Diversity and inclusion and Title IX, was minorities are in fact more falsely accused of conduct violations then others; or discriminated on and personally attacked. There is no other connection. I do not know why I was not placed on probation here. David's first response in every one of these incidents was to suspend first, despite the destruction to my life, and ask questions later. If you want to see me arrested just falsely accuse me of something. His use of force from day one has been excessive and as a result I am traumatized. He came and pulled me out of class and had me arrested and destroyed my semester, on every one of these incidents, to find me not guilty. He left no room for the punishment/or discipline of serious conduct violations. He treats me like I'm guilty of assault.

The conference was not conducted fairly in the light of the charges because, on 8/11/2017 was a day I returned to campus to have a meeting with Omar at 2PM. I swung by the financial aid office ask when the loan disbursement date was. The clerk told me I had to report to the student conduct office, she was the

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 88 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-1    filed 08/02/23    USDC Colorado    pg 206
of 298

From:  Jaramillo, Justin
Sent:  Tuesday, October 10, 2017 12:50 PM
To:    Steward, David K
Cc:    Puckett, Chris; Kushmider, Kristin
Subject:    RE: Fall 2017 Withdraw

Hi Dave,

We reached out and weren't able to touch base.  Jose from our office left a message after explaining the
process and invited him to call back if he had any questions.  I will let you all know if we get a call back.

Thanks,

Justin Jaramillo | Director
Financial Aid & Scholarships Office
303.315.1845 (office)

From: Steward, David K
Sent: Tuesday, October 10, 2017 8:41 AM
To: Jaramillo, Justin <JUSTIN.JARAMILLO@UCDENVER.EDU>
Cc: Puckett, Chris <Chris.Puckett@ucdenver.edu>; Kushmider, Kristin
<KRISTIN.KUSHMIDER@UCDENVER.EDU>
Subject: FW: Fall 2017 Withdraw

Justin,
I got this email Friday and wanted to check to see that Chadwick has been contacted and notified
regarding all the ramifications of this. We know he reacts to adverse news and that a direct conversation
is much better than an email. If you haven't reached out to Chadwick please do so to minimize any
surprise.
Thanks so much.
Dave

David Steward
Director Student Conduct and Community Standards
University of Colorado Denver
303-315-7311

From: Hamad, Erin B
Sent: Friday, October 06, 2017 4:22 PM
To: Steward, David K <DAVID.STEWARD@UCDENVER.EDU>
Subject: Fall 2017 Withdraw

Hello Davis,

As a courtesy, I was requested to inform you that Chadwick Jordan 830282211 has completely withdrew
from his fall courses. Based on his professor responses, the student did not engage in any academically
related activity. Per federal regulations, we were required to cancel all of the students' aid. This could
result in a balance on the student account.

Please let me know if you have any questions or concerns.

CU206

file:///FS02/...y%20of%20Colorado/Litigation/Jordan/Disclosures/CU%20Docs/2017000601/Appeal/RE%20Fall%202017%20Withdraw.txt[6/25/2021 10:20:31 AM]

clerk I in which this incident I told before going to the back to speak with a supervisor, "I don't appreciate his disrespect, I want to make a complaint". I went to the student conduct office and nobody was there. I had 30 min. until my appt. with Omar, unfortunately I was arrested at the Tivoli because they ran a background check on me when I went to the financial aid office. I did not know I had a ban as proof the email was not open. I had an outstanding traffic ticket/warrant I have taken care of without being charged. I spent that Friday in the county. And it was a rough weekend. The following Tuesday I was attacked be David. By attack I mean, being accused of preposterous things. I am in a much better state of mind now.

I am not guilty of the count (6) abusive behavior, because I did not abuse anyone. I did not verbally abuse threaten, coerce or cause anyone any substantial emotional distress or under these circumstances have I caused anyone emotional distress. I have the right to the financial aid office to seek assistance as my right to freedom of speech and expression, and the right to utilize these services as a student. Dave is trying to deny my rights to free speech and expression. If I was guilty of count 6 the student or someone would have called the police. The mentioned reasons denote why I am not guilty of count 6.

I am not guilty of count (9) either, interfering, obstructing or disturbing University Activity, because this was all related to their jobs, and I did not ask for anything special or out of the ordinary or act out of the ordinary. The financial aid offices functioned as usual as this incident occurred. Nobody was injured or any property damaged. I did not interfere with, disrupt, or obstruct student's movement, or anybody for that matter. I did not interfere with the rights of anybody, and I did not threaten the health or safety of any person or damage any property. If I was guilty of count 9 the student would of or someone else would have called the campus police. The mentioned reasons denote why I am not guilty of count 9.

<u>Attachments</u>

cjappeal.docx

*Pending IR #00001773*
*Submitted from 97.118.243.179 and routed to David Steward (Director of Student Conduct and Community Standards)*
*Copies to: kristin.kushmider@ucdenver.edu*

CU205

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15    filed 08/02/23    USDC Colorado    pg 207
pg 90 of 215
of 298

Thank you,



Erin Hamad|Financial Aid Advisor
University of Colorado Denver
Financial Aid Office | Campus Box 125
PO Box 173364, Denver, Colorado 80217-3364
303-315-1850|erin.hamad@ucdenver.edu | financialaid@ucdenver.edu

CU207

file:///FS02/...y%20of%20Colorado/Litigation/Jordan/Disclosures/CU%20Docs/2017000601/Appeal/RE%20Fall%202017%20Withdraw.txt[6/25/2021 10:20:31 AM]

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC   Document 143-15 filed 08/02/23   USDC Colorado   pg 208
of 298
pg 91 of 215

 University of Colorado **Denver**

Student Conduct and Community Standards
Student Affairs

Campus Box 196
P.O. Box 173364 | Denver, CO 80217-3364
o 303 556 3682 | f 877 556 7704
studentconduct@ucdenver.edu
ucdenver.edu/standards

September 20, 2017

Chadwick Jordan
Sent electronically to CHADWICK.JORDAN@UCDENVER.EDU

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2017008701

Dear Mr. Jordan,

I am in receipt of your letter appealing the decision of your hearing from August 21, 2017 with Mr. Steward. The Code of Student Conduct lists three reasons for which a student may appeal a decision:

1. To determine whether the conference was conducted fairly in light of the charges and information presented, and in conformity with proscribed procedures giving both the Respondent and complaining parties the opportunity to prepare and present relevant information to be considered in the determination of an appropriate outcome. Minor deviations from designated procedures will not be a basis for sustaining an appeal unless there is a demonstrable adverse effect on the outcome of the conference.

2. To determine whether the sanctions(s) imposed were appropriate for the violation of the Student Code of Conduct, which the student was found to have committed.

3. To consider new information, sufficient to alter the decision or other relevant facts not brought out in the original conference, because such information and/or facts were not known to the person appealing at the time of the original conference. This does not include information that was known at the time of the conference but was not shared.

I have reviewed both your letter of appeal and the information from your case and I find that your appeal does not meet any of the three grounds listed above.

Therefore, the decision made by Mr. Steward still stands. I have adjusted your campus ban as follows:

1) You must *request permission* to be on the Auraria Campus for your designated appointments with the Counseling Center and any appointments you have with the Office of Identity and Inclusion or the Office of Equity.

2) This request can be made either by contacting Mr. Steward or Dr. Kushmider (via email) at least one business day prior to your appointment. Be advised, last minute requests may not be approved so please prepare in advance.

3) Once you have received written approval via email from Mr. Steward or Dr. Kushmider, you will need to notify Auraria Police regarding the time and day you will be on campus so that you avoid being contacted for trespassing.

4) When you arrive on campus please check in at Tivoli suite 227 to be escorted to your appointments.

Please contact me at 303-315-2110 should you have any questions regarding this letter.

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC   Document 143-15   filed 08/02/23   USDC Colorado   pg 209
of 298
of 215

Sincerely,


Raul Cardenas, Jr., PhD

Vice Chancellor of Student Affairs

CC:   Other: Specify below
      Will Dewese, Deputy Title IX Coordinator | Associate Director, Office of Equity
      Kristin Kushmider, Dean of Students
      David Steward, Director, Office of Student Conduct and Community Standards

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15    filed 08/02/23    USDC Colorado    pg 210
pg 93 of 215
of 298



University of Colorado **Denver**

**Student Conduct and Community Standards**
Student Affairs

Campus Box 196
P.O. Box 173364 | Denver, CO 80217-3364
o 303 556 3682 | f 877 556 7704
studentconduct@ucdenver.edu
ucdenver.edu/standards

June 25, 2018

Chadwick Jordan
Sent electronically to CHADWICK.JORDAN@UCDENVER.EDU

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2017094401

CHADWICK.JORDAN@UCDENVER.EDU

Dear Chadwick:

On March 5, 2018 you and I met to discuss a conduct case based on threats you made toward another individual along with the possibility of you possessing illegal weapons. At this meeting I gave you a letter informing you of these allegations and requesting you attend a meeting in my office on Thursday, March 8, 2018, at 1:00 PM to discuss these alleged violations of the Code of Student Conduct (I am including a copy of this letter with this email). Shortly after our meeting I was informed you were arrested and found with weapons in the trunk of your car as well as illegal drugs and were placed in custody. As a result of this report from Denver PD I am adding another alleged violation to the original letter I gave to you on March 5, 2018.This alleged violation is:

**Drugs**: Possessing, using, providing, manufacturing, distributing, or selling drugs or drug paraphernalia in violation of law or university policies. Use or possession of marijuana, including medical marijuana used or possessed under Colorado Constitution Article 18, section 14, is strictly prohibited on campus. Any such use or possession is a violation of the student code of conduct.

1. Students may violate the student code of conduct if in the presence of prohibited behavior involving drugs. This includes students who knew, or reasonably should have known they were in the presence of drugs, or possessed, displayed, or was in the presence of drug paraphernalia.
2. Misuse of legal substances; use of general products as intoxicants or "means to get high"; and inhaling or ingesting a substance (including but not limited to nitrous oxide, glue, paint, gasoline, solvent, etc.) other than in connection with its intended purpose is also prohibited.
3. Driving while under the influence of drugs.
4. Use of a prescription drug other than by the person to whom the drug is prescribed and in accordance with the prescription is prohibited. This includes sharing drugs such as Ritalin or Adderall.Drugs: Possessing, using, providing, manufacturing, distributing, or selling drugs or drug paraphernalia in violation of law or university policies. Use or possession of marijuana, including medical marijuana used or possessed under Colorado Constitution Article 18, section 14, is strictly prohibited on campus. Any such use or possession is a violation of the student code of conduct.

1. Students may violate the student code of conduct if in the presence of prohibited behavior involving drugs. This includes students who knew, or reasonably should have known they were in the presence of drugs, or possessed, displayed, or was in the presence of drug paraphernalia.

CU210

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 155-1    filed 05/22/23    USDC Colorado    pg 36
of 36

4/24/23, 8:45 PM                                    Gmail - (no subject)                      

 Gmail                                    Denver Native <princeofwadesboro@gmail.com>

**(no subject)**
3 messages

---

**Denver Native** <princeofwadesboro@gmail.com>                    Fri, Nov 13, 2020 at 10:04 AM
To: WILLIAM.DEWESE@ucdenver.edu

Hi Will

I would like to know if title ix policues and procedures applies  to cases that are not sexual in nature.  I found statutes that
say they do. I would like to get your expert opinion and some reference  material.

Chadwick Jordan
720-276-5377

---

**Dewese, William** <WILLIAM.DEWESE@ucdenver.edu>                    Thu, Dec 17, 2020 at 9:26 AM
To: Denver Native <princeofwadesboro@gmail.com>

Hello Chadwick,

I apologize for the delay in getting back to you, below is what I am able to provide for
you.

Here is a link to our website which has some useful information about Title IX.

https://www1.ucdenver.edu/offices/equity


I would also encourage you to look at this website which outlines additional
information from the Department of Education about Title IX.

https://www2.ed.gov/policy/rights/guid/ocr/sex.html

Thank you,


Will Dewese

Director of Title IX & Title IX Coordinator

Office of Equity

303-315-0120

*Pronouns: he, him, his*

[Quoted text hidden]

---

**Denver Native** <princeofwadesboro@gmail.com>                    Sun, Apr 16, 2023 at 11:05 AM



Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC   Document 95 of 215   filed 05/22/23   USDC Colorado   pg 35
Case 1:19-cv-02660-RM-SKC   Document 80-3   Filed 09/08/20   USDC Colorado   Page 3 of 3

Wants some protections for minorities- a bunch of lip service.
Chadwick feels that the school and processes are designed to keep Chadwick back, and delay his education.

Feels that he is being targeted.

People say that his voice is loud, that is biased.

This student did a political rally marching with Financial Aid, democratic deal, Chadwick is a Trump supporter, he was wearing a trump hat, the student flipped him off. They were in front of the academic building.  He flipped Chadwick off. During the election, sometime around October 2016.

Dave was saying that Chadwick was being disrespectful, not clear about what he was saying. Told Chadwick that he used to yell at trees, Dave told him that he is not in the marines right now.
That was personally- Dave, feeling like the guy doesn't like Chadwick.

There were gaps in the communication. Screen was busted, was having a hard time getting messages.

Chadwick.jordan@ucdenver.edu

Omar did talk to Kristin, about how he isn't sure that someone could have the right frame of mind, to have the meeting with Dave after he was arrested.

Clarify with Kristin – term of probation after first incident.

Clarify with Dave about campus exclusion- Auraria Campus.

C6

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 88-3    filed 08/06/20    USDC Colorado    Page 2 of 3
of 36

one in the office, doors were open. He was then contacted by the police informing him that he was not supposed to be at Financial Aid (Friday). He was arrested due to an outstanding warrant. Chadwick got out of jail on Friday night, then the weekend.

Met with Dave on Monday, to find out what is going on. Dave told Chadwick that, "whenever you don't get your way you get mad" Dave told Chadwick that he was getting loud, Chadwick told him that he was being attacked. Chadwick said how did you know, you haven't interviewed that guy. Told Chadwick that he would get back to him after he spoke with financial aid.

Chadwick wanted to go to speak with Omar at 2:00pm, he got arrested at 1:30pm.

Chadwick's feelings about meeting with Dave.
First meeting with Dave, he thought he was part of the KKK plot against him.
Was talking about Chadwick's juvenile records,
Told Kristin Kushmider know.

Chadwick told Kristin that he wanted to check-in with them, let them know what is going on. Chadwick checked in with Kristin about the grade. Told her that he had a B average. Chadwick didn't like dealing with Dave. He get's accused, he lost money, time.

Was Chadwick's tuition refunded? When he was withdrawn from the spring semester

During the first incident, he began to question that there was discrimination going on from the school.

Next interaction with Dave- felt like all he did was accused Chadwick of stuff, he didn't listen to Chadwick when he told him that he had already disclosed his criminal history. Dave told him that "he is a liar" he doesn't belong at this school.

Other interactions how did you feel about that – they were all the same, he kept trying to find a reason to kick him out of school. Kristin told him to get to know him, come in and check in, he is not a bad guy. Dave told him about football, feels that he is protecting his students from Chadwick. Dave is trying to make him look like a bad guy, so that he can protect students from Chadwick. Chadwick was trying to convince him that he is not a bad guy.
Don't think that he likes black people.

2nd incident he tried to do his best, checking-in with Chadwick, told him that it would be good for him. Now he realizes that he is better to stay away.

How were your interactions with Kristin- they get along, she is great. Always requested to speak with Kristin. Kristin told him that he had to speak with Dave. Comments that he makes is that he is bigoted, called Chadwick a liar, told him that when he doesn't get his way that gets mad. Why is the burden on Chadwick to prove his innocence?

C5

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado    pg 33
Case No. 1:19-cv-02660-RM-SKC    Document 87-2    filed 05/4/20    USDC Colorado    pg 33
Case 1:19-cv-02660-RM-SKC    Document 80-2    filed 06/08/20    USDC Colorado    Page 1 of 3
of 38

Chadwick Jordan
8.30.17

Who were the people interviewed that Chadwick requested – [REDACTED].

Chadwick said that he didn't feel comfortable talking to Dave, said to Kristin on several instances.

2nd, he asked Dave if he interviewed the guy that accused him at Financial Aid, Dave said No, "are you trying to tell me how to do my job"

Chadwick feels that it is retaliation, Chadwick asked if he could talk to someone in the back, he knew about Chadwick's situation.

The guy asked him why?
The person from the back came and they talked-
Something happened in between, Chadwick told the supervisor that he was disrespectful (student Young white male) Dave was attacking him during the meeting.

Was looking for Loraine (she was managing Chadwick's audit) She was shorter heavy-set lady (white) no issues with this individual.

In line at desk, asked the student if he can speak to the director (he said he is not here) Chadwick then said, I will speak to anyone, wanted to know about the audit, wanted to clarify that everything correctly.  He asked Chadwick "What for" he told him, he started getting personal, "you think you are special" this is the same amount that everyone gets. Chadwick was offended by the questions and comments that he was making.  Chadwick feels that the student could have asked the individuals in the back.

Chadwick asked to speak to the director- said "who is the director" Chadwick said I don't know his name.  Feels that the statement was offensive to Chadwick,
Chadwick said that is not what he is here for, can I speak with someone in the back, he kept saying, "well I am telling you that this is the same thing that everyone else is going to get" then Chadwick said, are you going to keep disrespecting me, or are you going to ask someone, or are you going to keep disrespecting me. That is when the lady came out, Chadwick said, I hope you don't treat everyone like this.  Asked her if they could go in the back to talk to her, Chadwick told her about this individual's behavior, said that to the lady sitting to the side.
Discussed issues, wasn't thinking about the dude after he went back.
No additional issues with that person.

Chadwick didn't know that he had a ban on him. Chadwick showed up at financial aid about two weeks later.  Waited in line, asked to speak to director, to let him know that he didn't get his financial aid. And a worker told Chadwick that he wasn't allowed to be on the 5th floor.  They told him that he needed to report to the student conduct office. He went over there, and no

C4

Case No. 1:19-cv-02660-RM-JPO     Document 168     filed 12/08/23     USDC Colorado
Case No. 1:19-cv-02660-RM-SKC     Document 125-1     pg 98 of 215     filed 05/22/23     USDC Colorado     pg 32
Case 1:19-cv-02660-RM-SKC     Document 80-10336     Filed 08/06/20     USDC Colorado     Page 2 of 2

10/5/2020                                                    Gmail - S# 830282211/ Chadwick Jordan

**To:** "Dewese, William" <WILLIAM.DEWESE@UCDENVER.EDU>
**Subject:** S# 830282211/ Chadwick Jordan

Hi Steward

I need a signed affidavit stating that I addressed discrimination of David Steward.

Chadwick Jordan

Image removed by sender.   Virus-free. www.avg.com

Chadwick Jordan 8.31.17 .pdf
49K

C3

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado    pg 31
Case No. 1:19-cv-02660-RM-SKC    Document 80-10    filed 05/22/23    USDC Colorado    pg 31
pg 99 of 215

Case 1:19-cv-02660-RM-SKC    Document 80-10    Filed 08/08/20    USDC Colorado    Page 1 of 2

10/5/2020

Gmail - S# 830282211/ Chadwick Jordan

 Gmail                                    Denver Native <princeofwadesboro@gmail.com>

---

## S# 830282211/ Chadwick Jordan
2 messages

---

**Denver Native** <princeofwadesboro@gmail.com>                    Tue, Sep 29, 2020 at 10:45 AM
To: WILLIAM.DEWESE@ucdenver.edu

Hi Steward

I need a signed affidavit stating that I addressed discrimination of David Steward.

Chadwick Jordan

    Virus-free. www.avg.com

---

**Dewese, William** <WILLIAM.DEWESE@ucdenver.edu>                    Fri, Oct 2, 2020 at 2:31 PM
To: Denver Native <princeofwadesboro@gmail.com>

Hello Chadwick

Thank you for reaching out, I am writing to confirm that you did reach out to me to discuss concerns related to alleged discrimination on the part of David Steward. We met in the Office of Equity to discuss this concern on August 30, 2017. I have attached my notes from that conversation here to this email. I am out of the office today, but wanted to get you this information before the weekend. I can follow-up with a phone call next week when I return to the office. Let me know if you have questions or if you need anything else.

Sincerely,


Will Dewese

Director of Title IX & Title IX Coordinator

Office of Equity

303-315-0120

*Pronouns: he, him, his*

---

**From:** Denver Native <princeofwadesboro@gmail.com>
**Date:** Tuesday, September 29, 2020 at 10:45 AM

c2

*Attachment C*

 **Gmail**    **Gwendolyn Jordan <gwynratliff@gmail.com>**

# Fwd: S# 830282211/ Chadwick Jordan

**Denver Native <princeofwadesboro@gmail.com>**    Wed, Apr 12, 2023 at 9:49 AM

To: gwynratliff@gmail.com

---------- Forwarded message ----------
From: **Denver Native** <princeofwadesboro@gmail.com>
Date: Tue, Sep 29, 2020 at 10:45 AM
Subject: S# 830282211/ Chadwick Jordan
To: <WILLIAM.DEWESE@ucdenver.edu>

Hi Steward

I need a signed affidavit stating that I addressed discrimination of David Steward.

Chadwick Jordan

    Virus-free. www.avg.com

Cl

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado    pg 29
Case No. 1:19-cv-02660-RM-SKC    Document 101 of 215    filed 05/22/23    USDC Colorado    pg 29
Case 1:19-cv-02660-RM-SKC    Document 80-18    Filed 08/09/21    USDC Colorado    Page 558 of

JORDAN, CHADWICK HEATH                    **CONFIDENTIAL**

legal team would be meeting with him when he was called from his cell, but is equally pleased to speak with writer.

The veteran spends large portion of today's visit summarizing his legal issues.
He explains that in large part they are due to racism or bias on the part of the

University of Colorado and, in his view, the charges as presented are unconstitutional. He is pleased to have retained the assistance of a civil attorney (in addition to his defender for his criminal charges) who he hopes will be able to argue his case from his perspective.

Writer explains his primary purpose this morning in providing him the opportunity to sign a mutual rescission of lease of his VASH unit so that he will not become indebted to the public housing authority with continued incarceration. He agrees that entering a mutual rescission of lease is favorable

to him as it will prevent issues with Denver Housing Authority policies. He completes and signs a form supplied by Grace Management indicating his desire to

vacate his VASH unit located at 2246 Clarkson St, Apt A on the date of 2/11/19 (more than 30 days from today's date, as required). (Writer later returns the
form to his VASH case manager.) He understands a family member will collect his personal items before then; he also states his expectation that his mother will remit February's rent as she has for the last several months on his behalf.

"Then I'm all good."

The veteran verbalizes his understanding he may present to the VA Homeless Walk-In clinic when released from custody to be re-screened for housing assistance programs. He expresses appreciation for today's visit.

A: Legal Problems/Circumstances. Veteran presented as engaged and behaviorally appropriate with VJO staff; no endorsement of imminent SI/HI, safety concerns, or current crisis. Veteran is receptive to receiving VA information and relevant

services, as indicated. Pleasant, cooperative, and fully forward-directed in today's meeting. No evidence of thought disorder or AVH.

P: Staff will continue to offer VJO assistance, support, and resources to the Veteran as able. Alerting VASH CM for awareness only.

/es/ Paul A. Deutsch, LCSW
Veterans Justice Outreach Social Worker
Signed: 01/10/2019 14:46

Receipt Acknowledged By:
01/10/2019 16:59    /es/ Cailee J Cartner, LCSW
                HUD-VASH Social Worker

B12

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 102 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-1    filed 08/02/23    USDC Colorado    pg 255
of 298


Exhibit R

**General Notes/File History**
This Conduct case is closely tied to a CARE Team case - #2017094201

DKS called to set an appointment to deliver the interim suspension letter @ 10:57 AM
on 3/5/2018. Left a message.

Chadwick called DKS at 1:02 to see what DKS wanted. DKS stated they needed to meet
ASAP. Chadwick stated he would be right here.

6/5/2018 DKS placed a Registration Hold until the student can meet regarding his
interim suspension and conduct case.

6/25/2018 DKD send a second letter informing Chadwick of the addition of a drug
charge as well as to contact the office to schedule a conduct conference.

8/1/2018 Phone number current for Chadwick = 720-273-9741

**Individual Notes**
Notification
David Steward - Friday August 2, 2019 at 10:12am
Last edited Tuesday September 3, 2019 at 10:12am
Student was going to enter a plea agreement which could hold no jail time. Based on a
CARE Team recommendation DKS notified Auraria PD, the Writing Center, and the
Business School that the student was expelled and banned from campus. Offices were
to contact Auraria PD if the student was seen on campus.

Chadwick Arrest
David Steward - Monday August 13, 2018 at 1:15pm
Last edited Tuesday August 14, 2018 at 9:22am
During a court arraignment Chadwick was re-arrested. Bond was set at $75,000.

Conduct Conference (Phone)
David Steward - Tuesday July 31, 2018 at 11:00am
DKS refreshed Chadwick's memory regarding his charges (Threats, drugs, and
weapons) and stated we would discuss each individually.

Chadwick stated there was not much to talk about - was really simple.
- was a witch hunt (repeated numerous times throughout the call)
- racist based and discriminatory

Regarding the threats - Chadwick stated the charges were ludicrous.
- Was not found guilty.

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 103 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-1 filed 08/02/23    USDC Colorado    pg 256
of 298

- Wanted to know who gave CU Denver the reports and why the reports were given.
- Why the reports were requested.
- Chadwick was going on and on regarding racism and discrimination that DKS could not say much.
- Could not believe conduct did this for every student. Felt he was being singled out (witch hunt)
- Chadwick stated was not found guilty of anything and in fact his car got stolen and he got bloodied and his neighbors were concerned for him.
- Bloodied by falling to his knees.
- Does not know the names of his neighbors.
- Not a good relation with his neighbors - has several restraining orders against them.

Phone call ended at this point. DKS reestablished the call.

- Stated he and his lawyer worked things out and was never found guilty.
- Chadwick stated he would send documentation (after checking with his lawyer) regarding how he and his lawyer worked things out. (might take several weeks)

Regarding the drugs
- Chadwick stated there were no drugs in his car.
- Fruit of the poison tree
- Chadwick stated the officer lied on the report and was involved in a witch hunt (racist and discriminatory)
- Chadwick stated, "You should get better sources."
- Chadwick stated he had not been found guilty of anything. Only a judge can do that.

Regarding the weapons
- There were not weapons in the car and he does not know why anyone would tell me that.
- Has not been found guilty of anything.
- Officers are trying to get him convicted. (racist and discriminatory)

<u>Meeting to Give Interim Suspension Letter</u>
David Steward - Monday March 5, 2018 at 1:30pm
Last edited Monday March 5, 2018 at 2:04pm
DKS met with Chadwick at approximately 1:30 PM and explained the charges and gave Chadwick the Interim Suspension Letter.

Chadwick stated there was an altercation and he was charged but the case was dismissed. When DKS responded that the documents showed a Guilty Plea. Chadwick then stated he would not have plead guilty if he knew it would affect school.

DKS inquired about an AR-15 being purchased. Chadwick stated it was all legal and he

CU256

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15 filed 08/02/23    USDC Colorado    pg 257
of 298

bought it at a Tanner Gun show. Detective Verardi asked if he did indeed purchase an AR-15.
- Chadwick stated it was an incomplete Gun.
- He when on the explain it is called a 80/20 gun and can be bought without a background check.

DKS then stated he did not want to discuss the case unless Chadwick was ready to do so. The letter DKS gave to Chadwick indicated a Conduct Conference at 1:00 PM March 8, 2018.
DKS offered to meet Tuesday (had one time slot) or Wednesday (had one time slot) but Chadwick said to email him the time on March 8th and he would be there. DKS stated it was already in the letter and Chadwick stated he would be there.

Interim Suspension Decision
David Steward - Monday March 5, 2018 at 9:00am
Last edited Monday March 5, 2018 at 2:41pm
During an Ad Hoc CARE Team meeting on 3/5/2018 the decision was made to move forward with the conduct process in relation to the threats to a neighbor in August 2017 (Guilty Plea) and in relation to the veiled threat made to a counselor in the CU Denver Counseling Center regarding buying an AR-15 and the counselor being the only one he has told.

CU257

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 105 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-11 filed 08/02/23   USDC Colorado   pg 258
of 298



# Student Conduct & Community Standards

UNIVERSITY OF COLORADO **DENVER**

TO:    Public Distribution

FROM:   Student Conduct and Community Standards

DATE:   Tuesday, June 26, 2018

SUBJECT:   Campus Banned Student – Chadwick Jordan

 

Chadwick Jordan

The above photograph is of Chadwick Jordan.  He is restricted from the CU
Denver Campus and the Auraria Campus by the CU Denver office of
Student Conduct and Community Standards.

If Mr. Jordan is seen please contact ACPD at (303) 556-5000 or Text-A-Tip
at (720) 593-8477.

**THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION.
PLEASE DO NOT POST PUBLICALLY OR LEAVE IN AN UNSECURE
AREA.**

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 106 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-4  filed 08/02/23   USDC Colorado   pg 103
of 185

Exhibit S

**Appendix 4: Colorado Law Regarding Hazing**

*Section 18-9-124(2), C.R.S.* defines hazing as follows:

(2) As used in this section, unless otherwise requires:

    (a)   'Hazing' means any activity by which a person recklessly endangers the health or safety of or causes a risk of bodily injury to an individual for purposes of initiation or admission into or affiliation with any student organization; except that "hazing" does not include customary athletic events or other similar contests or competitions, or authorized training activities conducted by members of the armed forces of the state of Colorado or the United States.

        (b)   'Hazing' includes but is not limited to:

            (I)   Forced and prolonged physical activity;

            (II)   Forced consumption of any food, beverage, medication or controlled substance, whether or not prescribed, in excess of the usual amounts for human consumption or forced consumption of any substance not generally intended for human consumption;

            (III)   Prolonged deprivation of sleep, food, or drink.


*The University of Colorado Denver student code of conduct is adapted in part from the NCHERM Group Model Developmental Code of Student Conduct and is used here with permission.

CU401

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 107 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-41    filed 08/02/23    USDC Colorado    pg 104
of 185



# University of Colorado Denver

Student Code of Conduct
Effective Date 09/01/2017



CU402

Case No. 1:19-cv-02660-RM-JPO   Document 168   filed 12/08/23   USDC Colorado
Case No. 1:19-cv-02660-RM-SKC   Document 143-15 filed 08/02/23   USDC Colorado   pg 105
of 185

## Contents

A.  Introduction ...................................................................... 2

B.  Authority .......................................................................... 3

C.  Jurisdiction ...................................................................... 4

D.  Advisors ........................................................................... 4

E.  Prohibited Student Behavior ............................................. 4

F.  Definitions ........................................................................ 7

G.  Student Code of Conduct Procedures ............................... 8

H.  Additional Information ..................................................... 13

I.   Related Information .......................................................... 14

J.  Resources .......................................................................... 15

K.  Appendices ....................................................................... 16

## A.  Introduction

**Standards of Student Conduct**

The university strives to make the campus community a place of study, work and residence where people are treated, and treat one another, with respect and courtesy. The university views the student conduct process as a learning experience which can result in growth and personal understanding of one's responsibilities and privileges within both the university community and the greater community. Students who violate these standards may be subject to the actions described below. These procedures are designed to provide learning opportunities dedicated to fairness to all who are involved in the conduct process.

As members of the University of Colorado Denver (CU Denver) community, students are expected to uphold university standards, which include abiding by state, civil, and criminal laws and all university laws, policies and standards of conduct. These standards assist in promoting a safe and welcoming community; therefore all students must uphold and abide by them.

**Philosophy of Student Conduct**

As a community we strive to learn from one another in an educational environment that holds mutual respect for individuals and self-responsibility for behaviors impacting the campus and surrounding community in high regard. Students who engage in behavior that conflicts with established standards, laws, policies, and guidelines may be referred for conduct proceedings.

Every member of the student community must assume responsibility for knowing and understanding the various university and housing standards, laws, policies, and guidelines. It is against the basic nature of the university and greater community for anyone to demean or discriminate against another human being. A caring, educational community does not tolerate physical or psychological threats, harassment, intimidation, or violence directed against a person. Students engaging in such behavior are subject to the university conduct processes.

2

CU403

Case No. 1:19-cv-02660-RM-JPO     Document 168     filed 12/08/23     USDC Colorado
Case No. 1:19-cv-02660-RM-SKC     Document 104-3     filed 08/02/23     USDC Colorado     pg 106
of 185

**Diversity and Nondiscrimination Statement**
CU Denver is committed to a campus community where diversity is appreciated and valued, and where all individuals are treated with respect. The Office of Student Conduct and Community Standards (SCCS) encourages curiosity, open communication, continuous learning, and community service as ways to create a socially just environment. SCCS respects the right for individuals to disagree with ideas and philosophies different from their own. However, CU Denver does not permit any form of behavior that places anyone in dangerous, discriminatory, or harassing environments.  All community members are expected to work towards these same goals.

The university is committed to maintaining a positive learning, working and living environment. The university prohibits discrimination on the basis of race, color, national origin, pregnancy, sex, age, disability, creed, religion, sexual orientation, gender identity, gender expression, veteran status, political affiliation or political philosophy in admission and access to, and treatment and employment in, its educational programs and activities.  Additionally, the university prohibition against any act of sexual misconduct or related retaliation applies to all students, faculty, staff, contractors, patients, volunteers, affiliated entities, and other third parties, and applies to behavior that occurs on campus and off-campus, including on-line or electronic behavior as noted in the university policy. Violations of these policies may be subject to disciplinary action. The university will consider what appropriate potential actions should be taken in accordance with CU Denver procedures. For more information, please contact the Office of Equity.

**Learning Objectives**
Learning objectives identify what students will know, understand, and be able to do as a result of participating in the conduct process. Each learning objective represents a continuum and as a part of an institution of higher education the Office of Student Conduct and Community Standards strives to move students forward along the continuum as appropriate. Therefore, discussions and sanctions are based on these learning objectives. The student will:

- Increase Knowledge.
  - Increase understanding of how their behavior affects/impacts others.
  - Evaluate the level of administrator/community concern as a result of their behavior.
  - Understand the expectations for behavior as a member of the CU Denver community as described in the student code of conduct.
  - Engage with the institutional process by self-reflecting and asking questions.
- Personal Responsibility.
  - Accept personal responsibility for their behavior.
  - Acknowledge their responsibility to the CU Denver community.
  - Articulate their personal values.
- Consider Consequences.
  - Understand how their behavior could impact their academic career.
  - Understand how their behavior could impact their emotional well-being.
  - Understand the legal implications of their behavior.
  - Understand how their behavior can impact their physical safety as well as that of the community.
- Future Behavior.
  - Use their personal values in decision making before engaging in future behavior.
  - Learn, or more fully develop, one or more skills which could help them avoid being involved in similar behavior in the future.
  - Identify ways to move forward after the incident.

**B. Authority**
Article 7, Part B, of the Laws of the Regents requires each campus to develop a student code of conduct. The Dean of Students is authorized to establish and enforce the CU Denver student code of conduct. Any questions regarding interpretation of this student code of conduct or any of its provisions should be directed to the Dean of Students or their designee for final determination.

CU404

Case No. 1:19-cv-02660-RM-JPO     Document 168     filed 12/08/23     USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 140-15 filed 08/02/23   USDC Colorado   pg 107
of 185

The Dean of Students and/or their designee shall appoint student conduct educators and appeals officers. The Director of Student Conduct and Community Standards shall determine which student conduct educator shall be assigned to hear each matter.

1. The Dean of Students and/or their designee shall develop policies for the administration of the student conduct process and procedural rules.
2. Decisions made by a conduct educator shall be final, pending the appeals process.
3. Proceedings initiated under this policy are separate from civil or criminal proceedings that may relate to the same incident. Investigations or conduct proceedings by the university may not be postponed while criminal or civil proceedings are pending, unless otherwise determined by the conduct educator.

**C. Jurisdiction**

1. The student code of conduct shall apply to behavior which occurs on campus, at university-sponsored programs or activities, and to off-campus behavior which adversely affects the university community, poses a threat to the safety of persons or property, or damages the institution's reputation or relationship with the greater community. In addition, CU Denver may adjudicate student violations of laws and ordinances designed to protect civility and quality of life through the student conduct process.

**D. Advisors**

1. Students may be accompanied by an advisor during the conduct process. Advisors are intended to provide support, advice, and guidance to students during the conduct process. Advisors are not permitted to speak for or on behalf of the student during any phase of the conduct process, including conferences. However, with permission from the conduct educator, an advisor may make a statement and/or ask questions of the charged student to present relevant information that informs the conduct process.
   a. Advisors must be selected by the student; the Office of Student Conduct and Community Standards does not and will not recommend advisors.
   b. The student conduct educator reserves the right to remove the advisor from the disciplinary conference or any subsequent conversations should the advisor not adhere to the above guidelines or become a disruption to the process.
   c. If a student chooses to bring an advisor to the disciplinary conference, it is the student's obligation to select an advisor whose schedule allows attendance within the time frame designated in the student conduct conference notice. The conduct educator is not obligated to reschedule the disciplinary conference to accommodate advisors.
2. University Conduct Educators may also consult with University Counsel during the conduct process.

**E. Prohibited Student Behavior**

The following section is based in part on Regent Law 7.B.3. The behaviors listed below are prohibited, as are attempts to commit, aid, abet, or incite others to engage in behavior prohibited by the student code of conduct. All behaviors contained in this student code of conduct are subject to the conduct process.

1. Assaulting or physically abusing another person or being involved in brawling.
   a. In the case of a student who is found responsible via the conduct process to have caused severe injury or bodily harm, the minimum sanction shall be suspension.
      Severe injury and bodily harm includes but is not limited to the following: broken bones, concussions, lacerations, etc.

2. Threatening or endangering the mental and/or physical health or safety of a person.

3. Retaliatory Acts: Engaging in retaliatory acts against a person who reports an alleged violation of the student code of conduct or testifies, assists, or participates in a conduct proceeding or investigation.

4. Failure to Report a Known Violation: Being in the presence of another individual as they violate the student code of conduct and failing to report the behavior.
   a. To avoid being in violation for aiding and abetting, a student must leave the area and report the incident to the appropriate office in a timely manner.

CU405

Case No. 1:19-cv-02660-RM-JPO   Document 168   filed 12/08/23   USDC Colorado
pg 111 of 215
Case No. 1:19-cv-02660-RM-SKC   Document 147-2   filed 08/02/23   USDC Colorado   pg 108
of 185

5. Public Exposure: Public exposure includes deliberately and publicly exposing one's intimate body parts which includes but is not limited to public urination, defecation, mooning, and public sex acts, etc.

6. Non-Gender/Sex Based Stalking: Directly or indirectly through another person, repeatedly following, approaching, contacting, placing under surveillance or making any form of communication with another person, a member of that person's immediate family or someone with whom that person has or has had a continuing relationship, whether or not a conversation ensues, in a manner that would cause a reasonable person to (a) fear for their safety or the safety of others or; (b) suffer substantial emotional distress, including causing a person to respond by altering their activities.

7. Hazing: Any act which may produce, or is intended to produce, mental or physical discomfort, embarrassment, harassment, or ridicule, or any acts which are humiliating, intimidating, or demeaning, or that endanger the health and safety of another person. Such acts include, but are not limited to, paddling in any form, inducement of excessive fatigue, required exercise inconsistent with the mission of the organization, or physical or psychological shocks; personal servitude; engaging in public stunts, morally degrading or humiliating games and activities; forced or coerced consumption, drinking games, or other unorganized activities, late work sessions, and other obligations which interfere with scholastic purposes of the organization; and any other activity inconsistent with the purposes of the organization's constitution, by-laws, standing rules and policies, or university policy. (See Appendix 4)

8. Abusive Behavior: Behavior including verbal abuse, threats, intimidation, coercion, or other behavior which has caused a person substantial emotional distress and where the circumstances would cause a reasonable person to suffer substantial emotional distress.
   a. This policy should not be construed, and will not be enacted, to deny any student the right of free speech and expression.

9. Bullying: Severe aggressive behavior likely to intimidate or intentionally harm, control, or diminish another person, physically or mentally (that is not speech or behavior otherwise protected by the First Amendment)
   a. Cyber-Bullying occurs when an individual is tormented, threatened, harassed, humiliated, embarrassed, or otherwise targeted by another person using the internet, interactive and digital technologies or mobile phones.

10. Violating any federal, state, local, or university law, regulation, or policy.

11. Interference, Obstruction, or Disruption of University Activity: Materially and substantially interfering with, obstructing, or disrupting a university activity.
    a. University activities include, but are not limited to, all normal university activities, such as teaching, research, recreation, meetings, public events, and disciplinary proceedings.
    b. This prohibition includes, but is not limited to, the following: behavior disruptive of university functions; behavior resulting in injury to persons or damage to property on the campus; and interference, obstruction, or disruption of the freedom of movement of students, or other members of the university community and their guests. Interference in any manner with the public or private rights of citizens, behavior that threatens or endangers the health or safety of any person, and damage to property are prohibited.

12. Interfering with, Obstructing, or Disrupting Police or Fire Responses: This prohibition includes, but is not limited to:
    a. Making false statements.
    b. Interfering with the performance of policy or fire department duties.
    c. Resisting arrest.
    d. Failing to abide by the directions of a peace officer.
    e. Tampering with, impairing, disabling, or misusing fire protection systems such as smoke detectors, fire extinguishers, sprinklers, or alarms.
    f. Failing to evacuate during a fire alarm.
    g. Arson/setting fires.

CU406

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 112 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-4    filed 08/02/23    USDC Colorado    pg 109
of 185

13. Failure to Comply: Failing to comply with the direction of CU Denver, CU Denver Housing and Dining, and Auraria Higher Education Center employees who are performing their duties.

14. Knowingly Providing False Information to University Employees in Performance of their Duties: This section prohibits use of false identification or the identification of another person to gain entrance to a facility or business. This also includes forging, altering, falsifying or misusing documents or records, or knowingly using/possessing forged, altered or false documents or records.

15. Retaliation: Retaliating against or discouraging an individual from participating in a university process, or acting in any way that would improperly influence a university process.

16. Violating any policy or procedure listed in the CU Denver Housing and Dining Resident Handbook while in Campus Village: See a complete list of Campus Village policies and procedures by clicking here.

17. Unauthorized Presence: Unauthorized entry into, exit from, or presence in a university facility or on university property, including CU Housing and Dining, or property belonging to another.

18. Damaging Property: Damaging university property or property belonging to another.

19. Rioting: Engaging in, inciting, or arming someone for a riot or public disturbance (see Appendix 3).

20. Unauthorized Recording: Use of an electronic or other device to make an audio and/or visual recording of another person (including, but not limited to photographing, videotaping, filming, or audio recording) without the person's expressed permission when such recording causes the person to suffer substantial emotional distress and would cause a reasonable person to suffer substantial emotional distress. The storing, sharing, and/or distribution of such records by any means is also prohibited.

21. Weapon: Possessing firearms, explosives, fireworks, incendiary devices, ammunition, or other weapons on campus except as permitted by law. "Weapon" as used in this provision may be an instrument of offensive or defensive combat; anything used, or designed to be used, in destroying, defeating, or injuring a person; an instrumentality designed or likely to produce bodily harm. A weapon may include, but not be limited to, the following: any firearm, slingshot, cross-knuckles, knuckles of lead, brass or other metal, any bowie knife, dirk, dagger or similar knife, or any knife having the appearance of a pocket knife the blade of which can be opened by a flick of a button, pressure on the handle or other mechanical contrivance. A harmless instrument designed to look like a firearm, explosive, or dangerous weapon which is used by or is in the possession of a person with the intent to cause fear in or assault to another person is expressly included within the meaning of weapon. See **Regents Policy 14**
    *Note: Students, faculty, and staff possessing valid Concealed Handgun Permits are allowed to carry concealed handguns on campus in accordance with the law. CU Housing and Dining is an exception to the ability to possess legally concealed handguns.*

22. Theft: Including but not limited to, possessing property known to be stolen, or taking property of another without permission, even with an intent to return the property.

23. Drugs: Possessing, using, providing, manufacturing, distributing, or selling drugs or drug paraphernalia in violation of law or university policies. Use or possession of marijuana, including medical marijuana used or possessed under Colorado Constitution Article 18, section 14, is strictly prohibited on campus. Any such use or possession is a violation of the student code of conduct.

    In addition, the state constitutional amendment authorizing individuals over the age of 21 to recreationally use marijuana ("Amendment 64") does not change this prohibition or authorize a student to use marijuana. Federal law, including the Drug Free Schools Act, prohibits the presence or use of drugs, including marijuana. Thus marijuana use or possession, even if in compliance with Amendment 64, is prohibited on campus.

6

CU407

a. Students may violate the student code of conduct if in the presence of prohibited behavior involving drugs. This includes students who knew, or reasonably should have known they were in the presence of drugs, or possessed, displayed, or was in the presence of drug paraphernalia.

b. Misuse of legal substances; use of general products as intoxicants or "means to get high"; and inhaling or ingesting a substance (including but not limited to nitrous oxide, glue, paint, gasoline, solvent, etc.) other than in connection with its intended purpose is also prohibited.

c. Driving while under the influence of drugs.

d. Use of a prescription drug other than by the person to whom the drug is prescribed and in accordance with the prescription is prohibited. This includes sharing drugs such as Ritalin or Adderall.

e. Attending classes or university functions under the influence of drugs shall also be considered a violation of this student code of conduct. This includes disruptive behavior while under the influence of alcohol at official university functions.

24. Alcohol: Possessing, using, providing, manufacturing, distributing, or selling alcoholic beverages in violation of law or university policies.

    a. If an underage student is at CU Housing and Dining, this prohibition includes a student who knew, or reasonably should have known they were in the presence of alcoholic beverages, or possessed, displayed, or was in the presence of alcohol containers.

    b. Attending classes or university functions under the influence of alcohol shall also be considered a violation of this student code of conduct. This includes disruptive behavior while under the influence of alcohol at official university functions where alcohol is served.

    c. Driving while under the influence of alcohol.

25. Disruption: Disruption of a university learning environment. Behavior a reasonable individual would view as interfering with normal academic functions.

*The health and safety of members of the University of Colorado Denver are the primary concerns of the University. The University is committed to ensuring that students obtain timely medical assistance for themselves and for their peers. To this end, we have instituted a "Good Samaritan" provision for drug, alcohol, and intimate partner violence related incidents. For more information about this provision please see Appendix 2.*

**F. Definitions**

1. **Acceptance of Responsibility.** The charged student agrees that their behavior constitutes a violation of the student code of conduct, as outlined in the conference notice.

2. **Aggravating Factor.** Any circumstances accompanying the violation that add to its seriousness. Examples may include the use of violence or force, serious injury, violation of a trust or duty, premeditation of an incident, the existence of a previous conduct violation, and elements of hate or bias.

3. **Appeal Officer.** Any individual appointed by the university to process student conduct appeals.

4. **Behavior.** The way in which one acts or conducts oneself, usually a conscious choice to respond to a particular situation or stimulus, including but not limited to those actions listed in Section D of this student code of conduct.

5. **Campus.** The Auraria Campus in Denver, Colorado and all buildings associated with CU Denver on and/or adjacent to that campus including but not limited to: Campus Village Apartments, the CU Building, Lawrence Street Center, and The Business School Building.

6. **Complainant.** Any person who submits a report, orally or in writing, alleging that a student violated this student code of conduct.

7. **Conduct Educator.** Any individual appointed by the Director of Student Conduct and Community Standards to process student conduct matters.

8. **Conduct Process.** Any process outlined in this student code of conduct policies and procedures.

9. **Conference Notice.** Notification sent to a student containing information about an alleged violation of the student code of conduct.

CU408

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 114-15    filed 08/02/23    USDC Colorado    pg 111
of 185

10. **CU Denver Housing and Dining**: On campus residence hall, also referred to as Campus Village.
11. **Designation.** A Student's classification; i.e., graduate, undergraduate, continuing education, degree seeking, or non-degree-seeking.
12. **Disciplinary Conference.** A meeting between the respondent and the conduct educator to determine whether violations of the student code of conduct occurred.
13. **Faculty Member.** Any person hired by the university to facilitate classroom or teaching activities or who is otherwise considered by the university to be an employee.
14. **Force.** The use of physical violence and/or imposing on someone physically. Force also includes, threats, intimidation, (implied threats), and coercion that overcomes resistance or produces consent.
15. **Interim Suspension.** An intervening suspension of a student on a provisional basis pending final disposition of the case.
16. **Member of the University and Campus Community**. Includes any person who is a student, faculty member, university official or any other person employed by the university. This term also applies to students, faculty members, and university officials of the other institutions on the Auraria Campus, including but not limited to: the Metropolitan State University of Denver (MSU Denver), the Community College of Denver (CCD), and the Auraria Higher Education Center (AHEC). A person's status in a particular situation shall be determined by the Director of Student Conduct and Community Standards.
17. **Mitigating Factor.** Extenuating circumstances that may be taken into account to reduce a sanction. They do not constitute a justification or excuse for the offense in question.
18. **Parent.** A student's parent or legal guardian.
19. **Peace Officer.** A person designated by the University of Colorado, its agents, or the state or federal government with the responsibility of enforcing laws or policies. C.R.S. 16-2.5-101.
20. **Policy.** The written regulations of the university as found in, but not limited to, the student code of conduct, Laws and Policies of the Board of Regents, policies of CU Denver, Campus Village Resident Handbook, the university web page and computer use policy, and graduate/undergraduate catalogs.
21. **Preponderance of Evidence.** This shall be the standard of proof used in all conduct proceedings under this student code of conduct. Meaning what happened more likely than not.
22. **Respondent.** Any student accused of violating this student code of conduct.
23. **Student.** The term student includes all persons taking courses at the university, either full time or part time, active in a program, pursuing undergraduate, graduate, or professional studies, as well as non-degree Students and concurrently enrolled high school Students.
This also includes individuals admitted or in the process of being admitted, those attending orientation sessions, and those that were enrolled at the date of an alleged incident. Persons who withdraw after allegedly violating the student code of conduct are considered "students."
24. **University.** The University of Colorado Denver.
25. **University Employee.** A university employee working in the performance of their duly authorized duties. University employees may be full or part time, or may be student staff members. Also includes employees of CU Denver Housing and Dining.
26. **Witness.** Any individual who may have information relating to a conduct case.
27. **Working Day.** Any Monday through Friday, except for official university holidays.

**G. Student Code of Conduct Procedures**
The following procedures will be used for student conduct proceedings, except as noted below.

**For cases involving allegations of sexual misconduct (including sexual assault, sexual harassment, intimate partner violence, and gender/sex-based stalking), and/or nondiscrimination, accompanied by other alleged violations of the student code of conduct, the Office of Equity and Office of Student Conduct and Community Standards will determine the most appropriate way to address incidents of these type. For more information about the University's Sexual Misconduct and Nondiscrimination process and procedures visit the Office of Equity website at equity.ucdenver.edu.**

**1. Commencement of a Conduct Process**
   1. The discipline process can be initiated by, but not limited to, police reports, CU Housing and Dining incident reports, or a report from any university employee, student, or other member of the university or campus community. This process is initiated through the submission of a written or oral account of the incident to the Office of Student Conduct and Community Standards.

CU409

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 115 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-2    filed 08/02/23    USDC Colorado    pg 112
of 185

2. Upon the receipt of a report, the Director of Student Conduct and Community Standards (Director) or their designee will determine if the behavior alleged, if true, may rise to the level of a violation of the student code of conduct.

    a. If the behavior would violate the student code of conduct the Director (or their designee) will initiate conduct process.

    b. If it is determined that the facts of the complaint or report, even if true, would not constitute a violation of the student code of conduct or applicable university policy, the Director (or their designee) will notify the reporter and close the case.

    c. In some cases, a third option of alternative dispute resolution such as restorative justice or mediation may be offered by mutual agreement of the parties involved, and on a basis acceptable to the conduct educator. Upon successful completion of this process, a written summary of these agreements is provided to all parties. At any point in this process, either party may decide that they wish to end the alternative dispute resolution process, and the situation may be returned to be adjudicated through conduct process for resolution.

**B. Conference Notice**

1. All allegations shall be presented to the respondent by the conduct educator in electronic form via the student's official CU Denver email account. This notification will provide the respondent with information on how to obtain or review the initiating reports, and set a time for the disciplinary conference. The notification shall also include:

    a. A description of the alleged misconduct and violation.
    b. The student code of conduct provisions that are alleged to have been violated.
    c. Instructions on how to request copies of records obtained from outside agencies.
    d. An explanation of the student conduct process.

2. Disciplinary conferences are scheduled not less than three (3) working days nor typically more than fifteen (15) working days after the student has been notified of the allegations. If less than the three day minimum is necessary, such an instance would require mutual agreement between the student and the conduct educator.

    a. Expedited Process – When the conduct educator determines that a prompt review is essential (e.g., end of the semester, the student is graduating, or there is substantial concern for the health, safety, or welfare of a member of the university community), the conduct educator may require that the disciplinary conference occur within a much shorter period of time.

3. The conference notice may contain specific requirements or restrictions, pending the resolution of the matter through the conduct process, as needed to protect the interests of involved students or the university. These requirements could include but are not limited to: temporary relocation in student housing, restriction from specific campus locations, or orders prohibiting contact with complainants or witnesses. *The conference notice will be sent to the student's official university e-mail address.*

**C. Disciplinary Conferences**

Disciplinary conferences shall be facilitated by university conduct educators according to the following guidelines:

1. The purpose of the disciplinary conference is focused on a delicate balance between student success and the safety of the campus community. The student and the conduct educator will have a face-to-face discussion. The student will be expected to discuss goals they have set, their progress toward achieving those goals, the incident as it relates to those goals, the student's motivation behind their behavior, and the potential harm to the campus community. When a violation is present the discussion will concentrate on determination of responsibility as well as the identification of appropriate sanctions.

2. A student alleged to be in violation of the student code of conduct and an alleged victim, if applicable, may be accompanied by an advisor during their respective parts of conduct process. (See section D of this document for more information about advisors).

9

CU410

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 104-15    filed 08/02/23    USDC Colorado    pg 113
of 185

3. If the disciplinary conference involves more than one respondent, the conduct educator, in their discretion, and upon agreement between all the parties, may permit the disciplinary conferences concerning each student to be conducted either jointly or separately.

4. Disciplinary conferences, investigative meetings, and administrative meetings are considered private, educational interactions between the student(s) and the university. The complainant, respondent, and their advisors, if any, shall be allowed to attend the disciplinary conference. Inclusion of any other person in the disciplinary conference shall be at the discretion of the conduct educator and all parties will be notified, in advance, of additional participants. Deliberations between university officials are closed.

5. Pertinent records, exhibits, and written statements, including personal impact statements, may be accepted as information for consideration. The complainant and the respondent shall be allowed to present their own version of the incident. The complainant and respondent shall be allowed to review and respond to any reports or statements the conduct educator will consider in making a decision.
   a. Reports may be redacted in order to protect the privacy of educational records of all parties involved.

6. If a respondent does not appear for the scheduled disciplinary conference, a decision may be made in their absence taking into consideration the totality of the information related to the alleged violations available at the time of the decision.

7. If information presented in the disciplinary conference creates additional need for clarification or investigation the conduct educator may schedule additional conferences and or meetings.

8. The conduct educator may accommodate availability and/or remote location of respondent, complainant or witnesses through conference phone calls or other alternate means. Accommodations may also be made related to concerns for the personal safety, well-being, and/or fears of confrontation of the complainant, respondent, and/or or other witness during the disciplinary conference. Accommodations may also be requested for any disability documented with the Office of Disability Resources and Services (DRS), and, when applicable, the conduct educator will work with DRS to determine appropriate and reasonable accommodations.

9. Formal rules of process, procedure, or evidence as established and applied in the civil or criminal justice system do not apply to this process.

**D. Decisions**

After the disciplinary conference concludes, the conduct educator will review all pertinent information and make a determination related to each of the allegations specified from the student code of conduct. The determination is based on the preponderance of evidence standard, *whether it is more likely than not* that the respondent violated the student code of conduct. The respondent and an alleged victim may provide an impact statement or character references for consideration during the sanction process.

Written notice of the conduct educator's decision will generally be sent to the student within fifteen (15) working days of the disciplinary conference. The notification shall consist of the determination of responsibility, level of discipline imposed, and a complete description of any sanctions or requirements. If the respondent is found responsible for the charges, the notification will also include a summary of the basis for the determination.

Conduct educators may communicate conduct outcomes with appropriate campus offices when relevant to academic, financial, student involvement, or safety issues.

**F. Sanctions**

Sanctions imposed for misconduct will be based upon a consideration of all of the circumstances in a particular case including the individual student's prior conduct history. Mitigating and aggravating circumstances will be considered. Repeated violations are likely to result in progressively severe sanctions. One or more of the sanctions below may be imposed. In all cases, the conduct educator reserves the right to use their discretion in determining the appropriate sanction(s) for a case. All decisions regarding responsibility and appropriate sanctions will be given to a student in writing via the student's official university email address.

CU411

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 117 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-2    filed 08/02/23    USDC Colorado    pg 114
of 185

Conduct educators have the authority to determine the appropriate level of disciplinary action taking into consideration the severity of the violation, impact on individuals or the community, and the past record of discipline. In addition to the sanctions listed below, the conduct educator in consultation with CU Housing and Dining may require relocation within or removal from the CU Housing and Dining, limit a student's access to all or part of campus, and or alter the student's academic schedule, monetary restitution, community service, and/or specify participation in educational programs or interventions.

The following sanctions may be applied when appropriate to individual students. More than one of the sanctions listed below may be imposed for any single violation. Failure to complete disciplinary sanctions within required deadlines will result in a hold being placed on the student's registration status. These sanctions may include but are not limited to:

1. **Disciplinary Warning**. A student may be given an oral or written warning.

2. **General Disciplinary Probation**. Probation is for a designated period of time during which the student is required to show appropriate changes in attitude and behavior. Specific terms may be imposed as a part of this sanction but do not result in loss of good standing with the university. A violation of the terms of general disciplinary probation, or subsequent misconduct after discipline, is grounds for further disciplinary action, including loss of good standing, suspension, or expulsion. Disciplinary probation is separate from academic probation.

3. **Disciplinary Probation/Loss of Good Conduct Standing**. Probation is for a designated period of time in which appropriate changes in attitude and behavior are expected to occur. Specific terms may be imposed as a part of this probation. A student on this disciplinary probation is not in good standing with the university. Good standing, at a minimum, is a requirement for eligibility to represent the university, to serve on a university committee, to participate in club sports or student organizations, and for recognition by the university including any office held in a student organization, among other things. A violation of the terms of disciplinary probation, or subsequent misconduct, is grounds for further disciplinary action, including suspension, or expulsion. Disciplinary probation is separate from academic probation.

4. **Discretionary/Educational Sanctions**. Educational programs or assignments, restorative justice, mediation, community service, individual assessment, counseling evaluations, substance abuse education, intervention or treatment, testing, or other related discretionary sanctions may be offered or required.

5. **Residential Reassignment**. A student may be reassigned to another student housing room when disruption has occurred CU Housing and Dining or in order to separate persons on a temporary or permanent basis. The student will be responsible for all costs and fees associated with relocation as a result of this sanction.

6. **Residential Termination/Eviction**. Permanent separation of the student from CU Housing and Dining. The university expects students who live in student housing to manage their behavior and comply with all policies. If a student is evicted or removed from the CU Housing and Dining, the Student Conduct and Community Standards office will determine if the student may be allowed to continue as a student.

7. **Restitution.** Compensation may be required if a student damages university property or engages in behavior that causes financial damage or loss to the university.

8. **Disciplinary Suspension**. Suspension for a distinct period of time and/or the specification that a student must fulfill certain requirements before re-enrollment or re-admission will be considered. A disciplinary suspension is in effect in regards to any University of Colorado campus including CU Boulder, CU Denver, CU Anschutz, and CU Colorado Springs. While suspended, the student is not entitled to attend classes, use university facilities, participate in university activities, or be employed by the university. Special conditions may be stipulated for reinstatement at the conclusion of the period of suspension. The student is not in good standing with the university during the term of the suspension.

9. **Disciplinary Expulsion**. Expulsion is permanent removal from the University with no opportunity to return to any University of Colorado Campus. All CU Denver expulsions will include an Auraria Campus exclusion as well,

CU412

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC   Document 143-15  filed 08/02/23   USDC Colorado   pg 115
of 185

10. **Guardian Notification.** Parents may be notified of disciplinary decisions when a student under the age of 21 is found responsible for engaging in an infraction(s) involving alcohol, drugs, or the threat or use of violence. Letters are sent to the primary parent address provided to the university.

11. **Exclusion.** The Student is denied access to all or a portion of campus. Unless otherwise noted, exclusion includes all buildings and property on the Auraria Campus and any building owned or operated by CU Denver | Anschutz Medical Campus. When a student is excluded from campus that student may be permitted onto campus for limited periods and specific activities with the permission of the Director of Student Conduct and Community Standards or their designee. Should the student enter campus without permission, action may be taken by the student conduct office and/or police for trespass, including arrest.

## G. Appeal of a Disciplinary Decision

A Student may only appeal if they have received a sanction including probation with loss of good standing, residential termination/eviction, suspension, or expulsion. A decision reached by a conduct educator may be appealed to an appeal officer by either the respondent(s) or complainant(s) based on their perceptions of the conduct process as well as sanctions assigned (too severe, not severe enough, or additional specific sanctions needed). For an appeal to be considered it must meet at least one of the criteria listed below.

The appellant shall submit a written request for an appeal through the Student Conduct and Community Standards website. The appeal must be specific and clearly state the reasons for the request. The appeal request must be submitted within three (3) business days of the date the appellant is notified of the decision rendered by the conduct educator. Failure to submit a request for appeal within the specified time will render the decision of the conduct educator final and conclusive. An extension may be granted upon written request at the discretion of the appeal officer.

1. Except as necessary to explain the basis of new information, an appeal shall generally be limited to a review of the record of the disciplinary conference and supporting documents for one or more of the following reasons:
   a. To determine whether the **disciplinary conference was conducted fairly** in light of the charges and information presented, and in conformity with proscribed procedures giving both the respondent and complaining parties the opportunity to prepare and present relevant information to be considered in the determination of an appropriate outcome. Minor deviations from designated procedures will not be a basis for sustaining an appeal unless there is a demonstrable adverse effect on the outcome of the disciplinary conference.
   b. To determine whether the **sanctions(s) imposed were appropriate** for the violation of the student code of conduct which the student was found to have committed.
   c. To consider **new information**, sufficient to alter the decision or other relevant facts not brought out in the original disciplinary conference, because such information and/or facts were not known to the person appealing at the time of the original disciplinary conference. This does not include information that was known at the time of the disciplinary conference but was not shared.

2. The appeal officer will review the written request for appeal to determine if the acceptable grounds for the appeal are met. After review of the appellant's request, which may include but is not limited to review of the record, the appeals officer shall take one of the following actions:
   a. If the appeal does not meet one or more of the stated criteria, the appeal will be denied.
   b. Affirm the decision: the appeals officer agrees that the information before him or her supports the decision reached by the conduct educator.
   c. Return the case to the original conduct educator, or another conduct educator for further consideration.
   d. Overturn the decision or adjust the sanctions assigned by the original conduct educator.

3. If an appeal is returned to a conduct educator to consider new information, the general process outlined under Section D (Decisions) will be used.

4. The appeals officer will communicate their decision in writing generally within fifteen (15) working days unless circumstances exist that require additional time for the decision to be made. If an extension is necessary, the parties will be notified accordingly. The matter shall be considered final and binding upon all involved unless the matter is returned for further consideration.

CU413

**H. Additional Information**

1. Student Organizations.
   a. Student organizations may be charged with violations of the student code of conduct to the same extent as students.
   b. Student organizations, as well as their members and other students, may also be held collectively and/or individually responsible for violations of the student code of conduct on-campus as well as off-campus.
   c. The student organization officers, leaders, or individuals currently listed in an official position in CU Denver Student Organization records may be held collectively and/or individually responsible when such violations are committed by persons associated with the organization when have received consent or encouragement from the organization officers or leaders if those officers or leaders knew or reasonably should have known that such violations were being or would be committed.
   d. The officers or leaders of a student organization may be directed to take action designed to prevent or end such violations by the organization or by any persons associated with the organization. Failure to comply with a directive may be considered a violation of the student code of conduct, both by the officers or leaders of the organization, and by the organization.

2. Student disciplinary records will be maintained in accordance with the Federal Family Educational Rights and Privacy Act of 1974 (FERPA) and subsequent amendments and the guidelines for implementation. The record of disciplinary actions will be kept by the Student Conduct and Community Standards office. Disciplinary records are actively maintained for a minimum period of seven years from the date that the conduct case is concluded. Expulsion and suspension records will be kept indefinitely. Expulsion is a permanent notation on the official transcript. Information regarding a Student's disciplinary record is available to persons or offices internal to the university or at institutions where a Student seeks to enroll who have a "demonstrated educational need to know." Disclosure of disciplinary records outside of the above listed entities generally requires a written release from the student. This may also include notifying guardians and releasing written documentation relating to the process.

3. Every Student may review, upon request, the contents of their conduct file, to the extent permitted by law. Parts of the file may be redacted if the record contains information related to other students which is protected under FERPA. Students may submit a Request to Inspect Records form by downloading the form here and submitting it to the Office of Student Conduct and Community Standards.
   The Student Conduct and Community Standards office will comply with a request to review records for access within a reasonable time frame, not to exceed 45 days.

4. Release of Conduct information
   a. FERPA governs access to a Student's educational record, which includes their academic transcript and conduct file. The Student and/or those university officials who demonstrate a legitimate educational need for disciplinary information may have access to the Student's conduct file. Guardians who provide proof that a Student is a dependent as defined in Section 152 of the Internal Revenue Code of 1954, i.e., a copy of the last Federal income tax return listing the Student as a dependent, can have access to the student's conduct file without written Consent of the Student. In this case, Parents may also have access to a conduct file even if the Student has requested otherwise.
   b. In addition, Guardians may be notified if a Student under 21 years of age is found responsible for a violation involving alcohol or other drugs. All other inquiries, including, but not limited to, inquiries from employers, government agencies, news media, family, friends, or police agencies, require a written release from the Student before access to university conduct files is granted. Information may be released pursuant to a lawfully issued subpoena and as provided by the Campus Security Act as amended by the Higher Education Amendments of 1992.
   c. FERPA also allows reporting of educational records when a student chooses to transfer to other institutions of higher education. CU Denver will provide conduct records when requested for students seeking admittance to other schools and will not report said requests.

13

CU414

      d.   The Campus Security Act permits higher education institutions to disclose to alleged victims of any crime of violence (murder, robbery, sexual assault, assault, burglary, motor vehicle theft, arson) the results of the conduct proceedings conducted by the institution against an alleged perpetrator with respect to such crime.

4.   Registration Holds and Transcript Notations
      a.   Holds will be placed if students do not complete the conduct process as required and in the case of students who are not currently enrolled at the time of the incident.
           i.   The student must adequately address the conduct issue before they can reenroll.
      b.   Notations of disciplinary action on the Student's transcript will only be made to note specific disciplinary sanctions.
           i.   Disciplinary expulsion will be permanently noted on the academic transcript.
           ii.   Disciplinary suspensions will be noted on the transcript during the period of suspension.

5.   Pending Discipline Hold
      a.   While conduct proceedings are pending, the university may place a hold on the Student's records. The disciplinary hold is honored by the University of Colorado System, including CU Boulder, CU Colorado Springs, CU Online, and Extended Studies. This hold prohibits the Student from registering for classes until the Conduct Process, including sanctions, been completed.
      b.   A disciplinary suspension hold shall be placed on a Student's record if they are suspended as the outcome of the conduct proceedings. A conduct hold is honored by all University of Colorado campuses and prohibits a Student from being admitted to any of the campuses and from registering for classes until the suspension period is over and all sanctions have been completed.

6.   Refund Policy After Disciplinary Action
      a.   If a Student is suspended or expelled from the university, assessment or refund of tuition and fees are made in the same way as when a Student voluntarily withdraws. The date used for determining the amount due will be the first day of the suspension or expulsion, as decided upon by the Conduct Educator.

7.   **Interim Suspension**. The Director of Student Conduct through the Chancellor, Provost, Vice Chancellor for Student Affairs, and the Dean of Students have the authority to suspend any student on a provisional basis, pending final disposition of the case, when, in the opinion of these officials, such a suspension is necessary to:
      a.   Maintain order on the campus;
      b.   Preserve the orderly functioning of the university;
      c.   Stop interference in any manner with the public or private rights of others on campus;
      d.   Stop actions or potential actions that threaten the health or safety of any person; or
      e.   Stop actions or potential actions that destroy or damage property of the university, its students, faculty, staff, or guests.

Interim suspension will also include excluding the Student from campus pending a final outcome. This exclusion begins immediately upon notice from the appropriate university employee, without a disciplinary conference with a conduct educator. A disciplinary conference with a conduct educator is then scheduled as soon as possible (usually within 10 calendar days) to determine how the case will continue and to begin the conduct process. In extreme matters, an interim suspension may be put in place until a student receives a final disposition in a court process after having been charged with a serious crime.

## I. Related Information

Office of Equity
Cases involving sexual misconduct (including sexual assault, sexual harassment, intimate partner violence, and gender/sex based stalking), discrimination based on a protected characteristic, and any related retaliation are subject to the Office of Equity Process and Procedures equity.ucdenver.edu. For more information regarding Sexual Misconduct, or Discrimination, contact the Office of Equity at 303-315-2567 or http://equity.ucdenver.edu

CU415

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 121 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-41   filed 08/02/23   USDC Colorado   pg 118
of 185

**J. Resources**

**Student and Community Counseling Center**
Tivoli 454 (4th floor)
303-315-7270
http://www.ucdenver.edu/counselingcenter
Offers counseling, programs and activities for all members of the university. All contacts are confidential.

**CU Housing and Dining**
318 Walnut Street, Denver, CO 80204
303-573-5272
http://www.ucdenver.edu/life/services/housing
On campus housing with associated dining hall.

**Ombuds Office**
303-315-0046
http://www.ucdenver.edu/ombuds
Assists Students, faculty, and staff in resolving complaints or disputes with other individuals, offices, or departments within the university. Does not maintain records and is independent of any department or office. All contacts are confidential.

**Phoenix Center at Auraria**
Tivoli Student Union, suite 259
303-556-6011
http://www.thepca.org
The Phoenix Center at Auraria (PCA) serves CU Denver, MSU Denver, and CCD communities. The Center provides **free and confidential** resources and assistance to survivors of interpersonal violence and their friends and families. The PCA provides victim advocacy and support that includes academic advocacy, assistance reporting to your school and/or police, safety planning, court/hospital/police accompaniment, and a listening ear.

**Health Center at Auraria**
Plaza Building, Suite 150
303-556-2525
http://www.mscd.edu/healthcenter

**Auraria Police Department**
Administration Building, Suite 110
303-556-5000
http://www.ahec.edu/police.htm

**Office of Identity and Inclusion**
Academic Building 1, 2007
303-315-1880
http://www.ucenver.edu/eop

**Gay, Lesbian, Bisexual, Transgender Student Services**
Tivoli Student Union, Suite 213
303-556-6333
http://www.msudenver.edu/glbtss

**Disability Resources and Services**
Academic Building 1, Suite 2116
303-315-3510
**www.ucdenver.edu/disabilityresrouces**

CU416

Case No. 1:19-cv-02660-RM-JPO   Document 168   filed 12/08/23   USDC Colorado
pg 122 of 215
Case No. 1:19-cv-02660-RM-SKC   Document 148-4   filed 08/02/23   USDC Colorado   pg 119
of 185

**Veteran and Military Student Services**
>Tivoli Suite 124
>303-315-7300
>http://www.ucdenver.edu/life/services/Veteran

**Title IX Coordinator**
>Callie Rennison
>Lawrence Street Center 14th Floor
>1-844-CU Title (288 4853)
>titleix.ucdenver.edu

**CARE Team**
>303-315-7306
>http://www.ucdenver.edu/life/services/CARE/Pages/default.aspx

**Case Management**
>Brooke Farley
>Tivoli Student Union, Room 227
>303-315-7306

**K.   Appendices**

CU417

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 123 of 215
Case No. 1:19-cv-02660-RM-SKC   Document 143-4   filed 08/02/23   USDC Colorado   pg 120
of 185

**APPENDIX 1: Parent/Guardian Contact Policy Resulting from FERPA
Amendments Related to Section 952:**

If a Parent or guardian contacts the University seeking information regarding a Student's alcohol or drug-related conduct record, and the Student is under 21 years of age, information may be shared by an informed, full-time staff member in the Office of Student Conduct and Community Standards or their designee.

The designated staff member will share information regarding any alcohol or drug-related infraction in which a Student, afforded due process through the conduct procedures, has been found responsible for the infraction. Parents seeking information regarding behaviors, for which charges are pending or in process, must have their Student's written consent to the disclosure. The Release of information form can be downloaded from the Student Conduct and Community Standards Office, and is available on the Information for Students section by clicking on the "Forms" link.

When the University is aware of an alcohol or drug overdose requiring hospitalization, and the Student is personally unable to make contact with family, an informed University staff member may notify the Parents or guardians, regardless of whether or not an infraction occurred.

Further, notification to Parents/guardians is allowed when:
- The violation involved was of sufficient severity or related to a pattern of drug or alcohol related infractions which warrant a drug or alcohol evaluation; or
- The violation involved was of sufficient severity or related to a pattern of drug or alcohol related infractions which, should a further infraction occur, would likely result in suspension or expulsion from the University; or
- The violation involved harm or threat of harm to self or another person; or
- There was a significant risk to the health or safety of the Student as a result of consumption of alcohol or use of drugs.

Any Student may request that information not be disclosed to Parent/guardians, if the nondisclosure request is related to personal safety or other serious family circumstances. The request must be made in writing to the Conduct Educator, prior to the disposition of the case. The Conduct Educator may, at their discretion, honor the non-disclosure request.

In order to best facilitate communication with Parents/guardians, Conduct Educators should encourage Students to speak first to their Parents/guardians regarding conduct issues.

CU418

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 148-215 filed 08/02/23    USDC Colorado    pg 121
of 185

### Appendix 2: Good Samaritan Provision

The health and safety of members of the University of Colorado Denver are of high concern to the University. The University is committed to ensuring that Students obtain timely medical assistance for themselves and for their peers. To this end, we have instituted a "Good Samaritan" Provision.

The Auraria Campus Police Department will assist those individuals whose judgment or health is severely affected due to alcohol consumption by facilitating transport to a local detox center or hospital, or by taking other protective measures. Students are encouraged to inform local or state police, Student housing staff, or security when assistance is needed.

Whenever a Student assists an intoxicated individual in obtaining the assistance of local or state police, security, residence life staff, or other medical professionals, neither the intoxicated individual, nor the individual who assists will be subject to formal University disciplinary action (such as probation, suspension in abeyance, suspension or expulsion) with respect to the alcohol incident. (This provision does not preclude disciplinary action regarding other violations of University standards, such as theft, sexual harassment/assault, vandalism, harassment, etc.).

This provision offers a health related response to the incident rather than a disciplinary consequence **and does not excuse or protect those individuals or organizations that deliberately or repeatedly violate the University's Alcohol Policy.**

In order for this Policy to apply, the intoxicated Student(s) must agree to a timely discussion focused on the level of concern for Student health and safety to identify avenues of support and necessary resources. Serious or repeated incidents will prompt a higher degree of medical concern. Failure to complete recommended follow-up may result in disciplinary action and could prompt the imposition of a medical withdrawal. Likewise, organizations involved in an incident must agree to take recommended steps to address concerns.

This provision only governs the application of the University's Student Code of Conduct and has no status in other jurisdictions such as local or state courts. It should also be noted that this provision may only be invoked by a Student at the time when his or her case is being heard or investigated by a Conduct Educator or investigator. Based on the totality of the incident, the Conduct Educator will make the final determination as to the applicability of this provision and reserves the right to reduce sanctions or dismiss charges.

The Good Samaritan provision does not limit the authority of law enforcement personnel or University staff to act as required at the time of an alleged violation of University standards or state or local laws.

CU419

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 148-215 filed 08/02/23    USDC Colorado    pg 122
of 185

## Appendix 3: Colorado Law Regarding Riots

*Section 18-9-101(2), Colorado Revised Statutes* states:
"**Riot** means a public disturbance involving an assemblage of three or more persons which by tumultuous and violent conduct creates grave danger of damage, destruction or death."

*Section 18-9-102, C.R.S.* states:
"**Inciting riot.**
1. A person commits inciting riot if he:
   a. Incites or urges a group of five or more persons to engage in a current or impending riot; or
   b. Gives commands, instructions, or signals to a group of five or more persons in furtherance of a riot.
2. A person may be convicted under sections 18-2-101, 18-2-201, or 18-2-301 of attempt, conspiracy, or solicitation to incite a riot only if he engages in the prohibited conduct with respect to a current or impending riot.
3. Inciting riot is a class 1 misdemeanor, but, if injury to a person or damage to property results therefrom, it is a class 5 felony."

*Section 18-9-103, C.R.S.* states:
"**Arming rioters.**
1. A person commits arming rioters if he:
   a. Knowingly supplies a deadly weapon or destructive device for use in a riot; or
   b. Teaches another to prepare or use a deadly weapon or destructive device with intent that any such thing be used in a riot.
2. Arming rioters is a class 4 felony."

*Section 18-9-104, C.R.S.* states:
"**Engaging in a riot.**
1. A person commits an offense if he or she engages in a riot. The offense is a class 4 felony if in the course of rioting the actor employs a deadly weapon, a destructive device, or any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon, or if in the course of rioting the actor represents verbally or otherwise that he or she is armed with a deadly weapon; otherwise, it is a class 2 misdemeanor.
2. The provisions of section 18-9-102 (2) are applicable to attempt, solicitation, and conspiracy to commit an offense under this section."

*Section 23-5-124, C.R.S.* states:
"**Student enrollment - prohibition - public peace and order convictions.**
1. No person who is convicted of a riot offense shall be enrolled in a state-supported institution of higher education for a period of twelve months following the date of conviction.
2. A student who is enrolled in a state-supported institution of higher education and who is convicted of a riot offense shall be immediately suspended from the institution upon the institution's notification of such conviction for a period of twelve months following the date of conviction; except that if a student has been suspended prior to the date of conviction by the state-supported institution of higher education for the same riot activity, the twelve month suspension shall run from the start of the suspension imposed by the institution.
3. Nothing in this section shall be construed to prohibit a state-supported institution of higher education from implementing its own policies and procedures or disciplinary actions, in addition to the suspension in subsection (2) of this section, regarding students involved in riots.
4. The court in each judicial district shall report to the Colorado commission on higher education the name of any person who is convicted in the judicial district of a riot offense.
   a. The Colorado commission on higher education shall make the conviction reports received pursuant to paragraph (a) of this subsection (4) available to all state-supported institutions of higher education with the notification that the persons included in the conviction reports are subject to the provisions of this section and that the state-supported institution of higher education in which any of such persons are enrolled shall consider appropriate disciplinary action against the

CU420

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 126 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-4    filed 08/02/23    USDC Colorado    pg 123
of 185

student.

5.  Each state-supported institution of higher education shall notify its students and prospective students of the requirements of this section. The governing board of each state-supported institution of higher education shall prescribe the manner in which this information shall be disseminated.

6.  For purposes of this section, unless the context otherwise requires:

    a.  Convicted' means having received a verdict of guilty, pleaded guilty or nolo contendere, or having received a deferred judgment and sentence.

    b.  'Riot offense' means:

        i.    Inciting riot, as described in section 18-9-102, C.R.S.;

        ii.   Arming rioters, as described in section 18-9-103, C.R.S.;

        iii.  Engaging in a riot, as described in section 18-9-104, C.R.S."

CU421

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 127 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-4    filed 08/02/23    USDC Colorado    pg 124
of 185

**Appendix 4: Colorado Law Regarding Hazing**

*Section 18-9-124(2), C.R.S.* defines hazing as follows:

(2) As used in this section, unless otherwise requires:

    (a)   'Hazing' means any activity by which a person recklessly endangers the health or safety of or causes a risk of bodily injury to an individual for purposes of initiation or admission into or affiliation with any student organization; except that "hazing" does not include customary athletic events or other similar contests or competitions, or authorized training activities conducted by members of the armed forces of the state of Colorado or the United States.

    (b)   'Hazing' includes but is not limited to:

        (I)        Forced and prolonged physical activity;

        (II)       Forced consumption of any food, beverage, medication or controlled substance, whether or not prescribed, in excess of the usual amounts for human consumption or forced consumption of any substance not generally intended for human consumption;

        (III)      Prolonged deprivation of sleep, food, or drink.

\*The University of Colorado Denver student code of conduct is adapted in part from the NCHERM Group Model Developmental Code of Student Conduct and is used here with permission.

CU422

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 128 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-15 filed 08/02/23    USDC Colorado    pg 143
of 298



University of Colorado **Denver**

**Student Conduct and Community Standards**
Student Affairs

Campus Box 196
P.O. Box 173364 | Denver, CO  80217-3364
o 303 556 3682 |  f 877 556 7704
studentconduct@ucdenver.edu
ucdenver.edu/standards

August 22, 2017

Chadwick Jordan
Sent electronically to CHADWICK.JORDAN@UCDENVER.EDU

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2017000601

Dear Chadwick:

This is a follow-up to our conference on August 21, 2017 regarding alleged violations of the CU Denver Student Conduct Code, as outlined in your Conference Letter.

Chadwick, you stated you did not raise your voice and were simply reacting to the "kid" behind the front desk who disrespected you. I confirmed with the Office of Financial Aid that several individuals did heard you raised your voice and did not hear any disrespectful statements made toward you. This behavior is another incident where you confronted individuals in an office on campus as a result of hearing news you did not like or agree with.

Based on our meeting and the written documentation, and using a preponderance of the evidence standard, I have made the following determination regarding the alleged violations outlined in your original conference letter:

(6) Abusive Behavior -- Responsible
Verbal abuse, threats, intimidation, coercion, or other behavior which has caused a person substantial emotional distress and where the circumstances would cause a reasonable person to suffer substantial emotional distress. This policy should not be construed, and will not be enacted, to deny any student the right of free speech and expression.

(9) Interference, obstruction, or Disruption of University Activity -- Responsible
Materially and substantially interfering with, obstructing, or disrupting a university activity. a. University activities include, but are not limited to, all normal university activities, such as teaching, research, recreation, meetings, public events, and disciplinary proceedings. b. This prohibition includes, but is not limited to, the following: behavior disruptive of university functions; Behavior resulting in injury to persons or damage to property on the campus; and interference, obstruction, or disruption of the freedom of movement of students, or other members of the university community and their guests. Interference in any manner with the public or private rights of citizens, Behavior that threatens or endangers the health or safety of any person, and damage to property are prohibited.

You have been sanctioned as follows:
**Follow-up Meeting**
You are required to meet with me prior to your re-enrollment at CU Denver The purpose of this meeting is to check in regarding your progress as a student as well as to review any sanction items. It is your responsibility to schedule this meeting; you may do so by calling me at 303-315-7311 or emailing me at david.steward@ucdenver.edu.

CU JORDAN_0143

**Counseling**
You are required meet with a counselor of your choice for a minimum of four visits. The number of total meetings with the counselor will be determined by the counselor. These meetings are for discussions focused on your reactive and confrontation behavior when you presented with situations you don't like or agree with. You will complete any follow-up recommendations from the clinician. You will need to sign a release of information with this counselor so they can submit verification that you attended and participated in this appointment and can provide information on their ongoing recommendations. These sessions must be completed prior to your return from suspension.

**Disciplinary Suspension**
As a result of this incident you are being suspended from the University of Colorado Denver beginning August 18, 2017 and lasting through December 29, 2017. Suspension means that you are not eligible to enroll in any courses including online courses at any of the University of Colorado campuses. You will be eligible to return to the university upon completion of all other sanctions beginning January 2, 2018.

**Auraria Campus Exclusion**
As a result of this incident you have been suspended from the Auraria Campus beginning August 22, 2017 and ending December 29, 2017.

This means that you are not eligible to be anywhere on the Auraria Campus. A hold has been placed on your account. As a result of this suspension you are not eligible to enroll at any of the Auraria institutions including CU Denver, Metropolitan State University of Denver or the Community of College of Denver. If you are seen anywhere on the Auraria Campus during the period of your suspension, the police will be notified and you may be subject to additional Student Conduct or Criminal action.

Please understand that completion of these sanctions is your responsibility. Failure to complete these sanctions will result in further judicial action, specifically a hold being placed on your records and a stop on your registration.

If you have been given a sanction of probation with loss of good standing or higher, you have the right to appeal this decision. Such an appeal must be made in writing and submitted via the Student Conduct and Community Standards website, www.ucdenver.edu/standards. This appeal must be submitted no later than August 25, 2017. More information about the appeals process can be found on our webpage www.ucdenver.edu/csw.

Please note, failure to complete the above outcomes by the given deadlines may result in a hold on your student account and/or additional disciplinary actions. In addition, all written sanctions will be checked through Turnitin. If it is found that academic misconduct has occurred, you may be subject to further disciplinary action.

It is my hope that you will have a positive experience while a student here at the University of Colorado. The faculty and staff will continue to support your positive contributions to the university learning/living environment. If you have any questions, please do not hesitate to contact me.

Sincerely,

CU JORDAN_0144

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 130 of 215
Case No. 1:19-cv-02660-RM-SKC   Document 143-1   filed 08/02/23   USDC Colorado   pg 145
of 298

David Steward
Director of Student Conduct and Community Standards

CU JORDAN_0145

Case No. 1:19-cv-02660-RM-JPO     Document 168     filed 12/08/23     USDC Colorado
pg 131 of 215
Case No. 1:19-cv-02660-RM-SKC   Document 143-1   filed 08/02/23   USDC Colorado   pg 146
of 298

Exhibit T

DKS called to set an appointment to deliver the interim suspension letter @ 10:57 AM on 3/5/2018. Left a message.

Chadwick called DKS at 1:02 to see what DKS wanted. DKS stated they needed to meet ASAP. Chadwick stated he would be right here.

6/5/2018 DKS placed a Registration Hold until the student can meet regarding his interim suspension and conduct case.


Meeting to Give Interim Suspension Letter Uncategorized

David Steward - Monday March 5, 2018 at 1:30pm
Last edited Monday March 5, 2018 at 2:04pm

DKS met with Chadwick at approximately 1:30 PM and explained the charges and gave Chadwick the Interim Suspension Letter.

Chadwick stated there was an altercation and he was charged but the case was dismissed. When DKS responded that the documents showed a Guilty Plea. Chadwick then stated he would not have plead guilty if he knew it would affect school.

DKS inquired about an AR-15 being purchased. Chadwick stated it was all legal and he bought it at a Tanner Gun show. Detective Verardi asked if he did indeed purchase an AR-15.
- Chadwick stated it was an incomplete Gun.
- He when on the explain it is called a 80/20 gun and can be bought without a background check.

DKS then stated he did not want to discuss the case unless Chadwick was ready to do so. The letter DKS gave to Chadwick indicated a Conduct Conference at 1:00 PM March 8, 2018. DKS offered to meet Tuesday (had one time slot) or Wednesday (had one time slot) but Chadwick said to email him the time on March 8th and he would be there. DKS stated it was already in the letter and Chadwick stated he would be there.

Interim Suspension Decision Uncategorized

David Steward - Monday March 5, 2018 at 9:00am
Last edited Monday March 5, 2018 at 2:41pm

# DENVER POLICE DEPARTMENT

## GENERAL OFFENSE HARDCOPY
### ELECTRONIC SUBMISSION
### (DRUG - COCAINE SELL)

*Exhibit U*

**Related Text Page(s)**

*Attachment A, or*
*Exhibit 8 of Doc #80*

| | |
|---|---|
| **Document** | OFFICER STATEMENT |
| **Author** | P05100 - ALDRIDGE, ETHAN P |
| **Subject** | STATEMENT-ALDRIDGE |
| **Related Date/Time** | MAR-06-2018 (TUE.) 1420 |

On March 5th, 2018, while working as a Detective assigned to the Denver Police Department's Intelligence Unit, I was asked to attend a meeting on the Auraria Campus. The meeting was with Case Management Program Manager Brooke Farley, who runs the University of Colorado Denver CARE Team, and several other staff members from the University. The topic of the meeting was safety concerns regarding Chadwick Jordan (06/05/82), a current student at the University, and comments that he made to his counselor, identified as Lisa Forbes. Jordan, during a counseling session that occurred on Monday, February 19th, 2018, made a comment that he "recently purchased an AR-15" and also made comments about how he supported mass destruction and killing by the military. Jordan had a history of school conduct violations and had made several staff members "uncomfortable" due to his behavior. At the conclusion of the meeting it was determined that Jordan would be given a 3 day interim suspension barring him from the campus. David Steward, the Director of Student Conduct and Community Standards, planned to draft the required documentation and then call Jordan requesting that he respond to the Tivoli Student Union for a meeting.

The Denver Police Department determined that in order to ensure the safety of the staff and students on the campus, surveillance would be conducted on Jordan. I checked the Criminal History of Jordan and found that he was a multi-state offender assigned FBI #394910PB9 and had multiple felony convictions. Jordan served a 4 year sentence in the Colorado Department of Corrections for a Felony Dangerous Drugs conviction. On February 7th, 2018, Jordan was sentenced to 1 yr of Supervised Probation for Threats to Injure, case #17GS010059.  Members of the Denver Police Department's Marijuana Unit established surveillance at Jordan's residence, 2246 Clarkson St. Unit A, and on his vehicle, a 2015 BMW bearing Colorado Passenger Plate OJZ-765, which was parked on the street nearby. Jordan was observed leaving his apartment, getting into his vehicle, and then driving to the Auraria Campus. I was on foot in the Auraria Campus Tivoli Student Union and at approximately 1330 hrs I observed Jordan walk into the Student Affairs office for his meeting with David Steward. A short time later, Jordan was observed exiting the Student Affairs Office, followed by Auraria Police Det. Justin Verardi. I exited the building and myself and several other Detectives continued to watch Jordan until he got back into his vehicle and leave the campus.

A traffic stop was conducted on Jordan by Officers assigned to the Gang Unit. Jordan's license was suspended and during an inventory search of the vehicle prior to impounding, suspected cocaine was located. Additionally, various parts needed to assemble an AR-15 were discovered. Jordan was arrested for the cocaine possession and his vehicle was impounded.

Det. Chris Shotts with the Denver Police Department's Marijuana Unit drafted a Search Warrant for Jordan's residence, 2246 N Clarkson St. Unit A, and at approximately 2045 hrs the warrant was signed and approved. I responded to 2246 N Clarkson St and assisted with the execution of the search warrant but did not locate any items of evidentiary value.

Case No. 1:19-cv-02660-RM-JPO   Document 168   filed 12/08/23   USDC Colorado
Case 1:19-cv-02660-RM-SKC   Document 32-9   filed 10/06/20   USDC Colorado   Page 2 of 4
GO# 2018-9518073
OPEN

# DENVER POLICE DEPARTMENT

## GENERAL OFFENSE HARDCOPY
### ELECTRONIC SUBMISSION
### (DRUG - COCAINE SELL)

## Related Text Page(s)

| | |
|---|---|
| **Document** | OFFICER STATEMENT |
| **Author** | P00086 - TIMMERMAN, MICHAEL J. |
| **Related Date/Time** | MAR-06-2018 (TUE.) 1449 |

On 03/05/18 I, Detective Michael Timmerman #00086, was advised that Auraria Campus Police had provided information regarding a current student, Chadwick Heath Jordan (06/05/82). According to this information, Mr. Jordan had made concerning statements to a school counselor. Mr. Jordan had told the counselor (sic) that he supported mass killing by the military. He also told the counselor that he had recently purchased an AR-15. I was told that Mr. Jordan is a previously convicted felon who is prohibited from possessing firearms. Mr. Jordan was scheduled to meet with school officials 03/05/18 at the Tivoli Student Union, room #227. During this meeting, school officials were going to advise Mr. Jordan that he was no longer allowed on Auraria Campus.

I was requested to conduct surveillance on Mr. Jordan along with other Denver Police Detectives to ensure that no obvious weapons were brought to the meeting at the Tivoli Student Union. At approximately 1330hrs I observed Mr. Jordan on foot, on the second floor, inside of the Tivoli Student Union. Mr. Jordan was carrying a cup in his right hand that he threw into a garbage can just before I observed him enter room #227. Several minutes later I observed Mr. Jordan leave room #227. Mr. Jordan was being escorted from the building by Auraria Campus Police. I observed Mr. Jordan exit the building. After exiting the building, Mr. Jordan was raising his fists in the air and yelling at the Auraria Campus Officer as he was walking. I could not make out what he was yelling. Mr. Jordan got into a black BMW sedan and drove away.

I was told that Mr. Jordan was contacted on a traffic stop and taken into custody. I was also told that an amount of suspected narcotics as well as AR-15 parts were recovered in Mr. Jordan's vehicle.

At approximately 2045hrs I was requested to assist with the execution of a search warrant at Mr. Jordan's residence (2246 Clarkson St, Unit A). I responded to the location to assist. I did not recover any items of evidence during the execution of the search warrant.

Case No. 1:19-cv-02660-RM-JPO   Document 168   filed 12/08/23   USDC Colorado
1:19-cv-02660-RM-SKC   Document 52-9   Filed 10/06/20   USDC Colorado   Page 3 of 4
GO# 2018-9518073
OPEN

# DENVER POLICE DEPARTMENT

## GENERAL OFFENSE HARDCOPY
### ELECTRONIC SUBMISSION
### (DRUG - COCAINE SELL)

**Follow Up Report #   7 - NOT COMPLETED**

## Related Text Page(s)

| | |
|---|---|
| **Narrative Text #** | 1 |
| **Document** | SUPPLEMENTARY REPORT |
| **Author** | P92014 - SHOTTS, CHRISTOPHER A. |
| **Subject** | (ARRESTEE #1) JORDAN, CHADWICK H (DOB: JUN-05-198 |
| **Related Date/Time** | MAR-06-2018  (TUE.) 1734 |

On 03/05/2018 Detective Shotts Badge #92014 and additional members of the Vice/Narcotics Unit were contacted by the Denver Police Department Intelligence Unit. Sergeant Anthony Parisi and Detective Ethan Aldridge Badge #05100 related that they had obtained information through the Auraria Campus Police Department that a current student identified as Chadwick Heath Jordan DOB 06/05/1982 had made concerning comments to a Campus Counselor who was identified as Lisa Forbes.  Detective Aldridge related that on 03/02/2018 a representative from the Behavioral Intervention Team at the University of Colorado Denver Campus identified as Brooke Farley called the Denver Police Department and reported that Chadwick made several concerning statements which included general homicidal ideations. Chadwick reportedly stated that he supported "mass destruction" and killings by the military. Chadwick also stated that he recently purchased an AR-15 and other non-specific firearms. Detective Shotts learned through a conversation with Auraria Campus Police Officer Justin Verardi that the initial comments from Chadwick to Forbes were made on Monday February 19th, 2018 at 3:00 pm. Additionally Detective Shotts learned from ATF Detective James Anderson that Chadwick had attempted to purchase a firearm at the "Tanner" gun show but was declined the sale on Sunday February 18th, 2018. Detective Shotts also learned that Chadwick has a former military background with the United States Marine Corp. served time in Iraq, and may be diagnosed with PTSD. Detective Aldridge further stated that Chadwick has a lengthy criminal history, and is a multi-state offender to include convictions and a 4-year sentence for Dangerous Drugs, a conviction for Assault on a Police Officer, and an 18-month conviction for Felony Menacing.

Detective Shotts and members of the Vice/ Narcotics Unit were requested to assist the Intelligence Unit and conduct surveillance on Chadwick, and were advised by the school that Chadwick lived at 2246 Clarkson Street, Apartment #A, in Denver. Detective Aldridge advised that on 3/5/18, Chadwick was going to be told he was no longer allowed on the Auraria Campus, and his student status was going to be suspended. Detective Aldridge related that they had been working with campus police and were advised that Chadwick was going to be called to the campus for this notification. At approximately 1:07 pm. Detective Rick Spence Badge #94031 observed Chadwick exit his apartment #A and walk directly to his 2015 Black BMW 320 sedan Co# OJZ-765. Chadwick then started his car and was followed by surveillance detectives directly to The University of Colorado Denver Campus. Surveillance observed Chadwick park his car near the south west corner of 11th Street and Walnut. Chadwick exited his vehicle and was followed by surveillance detectives until he entered the behavioral health center at 12th and Larimar Street. Chadwick got a cup of coffee and was the then followed to the Tivoli Center Building. Chadwick was then followed to the 2nd floor room #227 where he met with staff and security personnel. Detective Shotts learned that Chadwick was dismissed from the campus and after a short meeting he was observed being escorted back to his vehicle by Officer Verardi.

# DENVER POLICE DEPARTMENT

GO# 2018-9518073

OPEN

## GENERAL OFFENSE HARDCOPY
### ELECTRONIC SUBMISSION
### (DRUG - COCAINE SELL)

Follow Up Report #   8 - NOT COMPLETED

| | |
|---|---|
| Officer Joshua Catlett #13078<br>Denver Police Department<br>Gang Unit<br>2205 Colorado Blvd.<br>Denver, Co.<br>(303) 331-4081 | Conducted traffic stop, arresting officer |
| Brooke Farley<br>Case Management Program Manager<br>Auraria Campus<br>900 Auraria Pkwy.<br>Denver, Co (303) 315-7306 | Reported incident to DPD |
| Lisa Forbes<br>Chadwick's Counselor<br>Auraria Campus<br>900 Auraria Pkwy.<br>Denver, Co (303) 315-7306 | Reported incident to program manager |
| Officer Justin Verardi<br>Auraria Police Department<br>1201 5th Street<br>Denver, Co<br>(303) 556-5000 | Escorted Chadwick off campus |

Case No. 1:19-cv-02660-RM-JPO   Document 168   filed 12/08/23   USDC Colorado
pg 136 of 215
Case 1:19-cv-02660-RM-SKC   Document 38-2   Filed 08/09/20   USDC Colorado   Page 1 of 1

| Name: Chadwick Heath Jordan | ID: 830282211/20545/20545 |
|---|---|
| Type: DAP Progress Note | |
| Counselor: Lisa Forbes | Date and time: 02/19/2018 03:00 PM |

**Narrative:**

Please see the attached DAP Note data form.



## DAP Note (UCD)

**Description:** (Subjective information such as problems, needs and strengths reported by client through contextual lens, themes, counselor interventions and objective data. Review of any extra-therapeutic work)

Client's CCAPS scores reduced from the last time he was seen (depression, hostility, and alcohol use of concern last session and all reduced). However, client still has a score of a 2 on "I have thoughts of hurting others" so counselor asked client his thoughts about the score and how that plays out in his life. Client denied current, specific thoughts of hurting anyone, rather, the thoughts are a broad, general viewpoint that "life is war." Client discussed a recent business deal he obtained and how he desires control and power. Counselor and client discussed how our pain can become our passion - client was able to identify many times in his life he felt out of control or a lack of power so he believed that could contribute to his career goals. Client hesitantly disclosed that he recently bought an AR-15. Counselor asked "what are your intentions with that gun?" To which client replied: "It is a toy. I will take it to the shooting range to play around." Counselor asked client about his hesitancy in disclosing his recent gun purchase and client responded that lately there has been some negative views on guns, specifically AR-15s - client brought up the example of the recent school shooting in Florida. Counselor directly asked client: "Are you capable of doing a shooting similar to what happened in Florida?" To which the client responded: "oh, gosh, no. That is a coward way of killing people." Client went on to talk about if someone wanted to kill people they should sign up for the military and do it legally. Client provided an example that he would never hurt a woman or child or innocent person. Counselor again asked: "So, would you see yourself killing someone in your personal life?" To which client again responded: "oh, gosh, no." Client again confirmed a statement he made in the last session about his thoughts of dominance and mass destruction align more with the military values and global belief than an action he would take. When transitioning out of session, counselor discussed RRT as well as psych testing options (client had indicated some interest in previous sessions). Client indicated he would be interested in psych testing because he is interested in understanding why he is the way he is. Client reported he has Kaiser and VA insurance so counselor will provide client with referrals for psych testing. After session, counselor consulted with the clinic director regarding counselor's concern about client's AR-15 purchase. Clinic director believes counselor did a thorough assessment and believes that since the client denied specific plans, counslor can provide client with psych testing options for further testing and continue seeing client.

**Assessment:** (Evaluation by counselor of current status and/or progress toward meeting treatment goals, therapeutic alliance, perceived client insights. Counselor's current hypothesis)

Client appears to desire power and control because he lacked both throughout his life. The therapeutic relationship seems strong as evidenced by the client disclosing his gun purchase as well as indicating that the counselor is the only one he can tell certain things to because there is a level of trust.

**Plan:** (Next session date and time, preliminary plan for next session and/or extra-therapeutic work. Document any referrals)

Next session is Feb 26th @3pm. Will assess intent to hurt others, check in about scheduling a psych test, continue discussing coping skills.

## Signatures:

Lisa Forbes 02/19/2018 4:37 PM

Brittany Bouffard 02/20/2018 10:20 AM

Chadwick Heath Jordan 20545/830282211/20545
Case notes for all dates

**C.     JURISDICTION**

28 U.S.C. § 1331

42 U.S.C. § 1983

U.S.C.A. Const. Amend. V, VI, XIV

**D.     STATEMENT OF CLAIMS**

**CLAIM ONE:**

David Steward:

*Substantive Due Process Violation,*
*Procedural Due Process Violation,*
*Deliberate Indifference,*
*And Erroneous Outcome.*

*David Steward, as the Director of Student Conduct and Community standards of the University of Colo. – Denver, has final decision making authority for this University. This entails final decisions as to what Due Process students receive. The fact David chose to initiate, investigate and prosecute the Plaintiffs cases and all cases, is unfair and unequal treatment compared to the University of Colorado – Boulder, which separates these duties. This is Deliberate Indifference. These duties are separated to ensure impartiality. David chose to initiate, investigate and prosecute these cases knowing this was not impartial. Res Ipsa Loquitur.*

**CLAIM TWO:**

**Kristin Kushmider:**

***Res Ipsa Loquitur,*** **Kristin was Respondent Superior to David Steward's:**

- *Substantive Due Process Violation,*
- *Procedural Due Process Violation,*

The Exhibits are locate in the Initial Disclosure

---

Tivoli Student Union, Suite 309
DENVER, CO 80217-3364
(303) 315-7311
david.steward@ucdenver.edu

KRISTEN KUSHMIDER
Tivoli Student Union, Suite 309
DENVER, CO 80217
(303) 315-7310
kristin.kushmider@ucdenver.edu

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 139 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-1    filed 08/02/23    USDC Colorado    pg 241
of 298

# STATEMENT OF PROBABLE CAUSE

Exhibit W

| GO# 2018-9518073 | AB# 2018-10034 | Page 1 of 1 |
|---|---|---|

| **DEFENDANT** | | | | | |
|---|---|---|---|---|---|
| Last Name JORDAN | First Name CHADWICK | Middle HEATH | DOB 06/05/1982 | Arrest Date 03/05/2018 | Arrest Time 1:50 pm |
| Armed with UNARMED | | | | | |
| Location of Arrest 17TH ST/LARIMER ST | | | | | |

| **OFFICER MAKING STATEMENT** | |
|---|---|
| Name INGERSOLL, LEE A. | Serial No. P06110 |

| **COMPLETE THIS SECTION FOR ORIGINAL PROBABLE CAUSE STATEMENTS AND ALL AFFIDAVITS FOR ARREST WARRANT** |
|---|
| I am a police officer for the City and County of Denver, Colorado, and have knowledge regarding the arrest/incident of the above named party for the below listed offense, which offense occurred on or about the date of 03/05/2018 at 1:50 pm at or near the location of 17TH ST/LARIMER ST in the City and County of Denver, State of Colorado. |

| VIOLATIONS(S) | DESCRIPTION |
|---|---|
| 18-18-405 | INV HOLD-SCH 1 OR 2 MANU/DIST CTRL SUBST 14-225 GRAMS [027916] |

The probable cause of the arrest of the above-named individual is as follows:
[On 03/05/18 at approximately 1345 hours a black BMW sedan bearing Colorado license plate OJZ-765 was headed inbound on Market St. from Speer Blvd. R/O initiated a traffic stop of the vehicle for failing to signal for a right-turn onto 17th St. from Market St.

The vehicle came to a stop near 17th St./Larimer St. R/O contacted the driver and sole occupant, positively identified as JORDAN, Chadwick 06/05/82. Chadwick, who initially provided his information verbally, was unable to produce a valid registration or valid proof of insurance.

An NCIC/CCIC clearance, along with DMV information, indicated that Chadwick was currently driving under suspension-SUSPENDED - INSURANCE TERMINATED.

R/O returned to vehicle and informed Chadwick of his driving status.

Inventory search of the vehicle prior to impoundment revealed two plastic baggies containing a significant amount of suspected cocaine. Also located were several glass vials also containing an amount of suspected cocaine. The manner in which the suspected narcotics were packaged, coupled with the amount, led R/O to believe that the suspect is involved with the distribution of illegal narcotics.]

Paper Documents sent for Scanning:
Advisement [ ] Victim Statement(s)[ ] How many? [ ]
Witness Statement(s) [ ] How Many? [ ]
Request for Presumptive Screening[Yes ]
Miscellaneous
[ ]

DOMV Additional Required Information:
Medical Release (HIPPA)/Victim Diagram (from DOMV Case Summary)[ ]
ID of Suspect (Photo of w/victim signature on back) [ ]
I affirm this information to be true and correct.

Officer: INGERSOLL, LEE A.    Serial No: P06110

CU241

3/5/2018                                    Search » Denver County CourtDenver County Court

## Search by Name

Search for cases by name. This will only display payable cases.

## Case Number: 17GS010059

| Pay Fines/Costs |

## Case Information

| Status | Case Type | Violation Date | Date Filed | Courtroom |
|---|---|---|---|---|
| SENTENCED | THREATS | 08/11/2017 | 08/11/2017 5:50 PM | 4A |
| Pay Amount: | $0.00 | | | |
| Location: | 2250 N CLARKSON ST DENVER | | | |
| AB Number: | 201735973 | GO Number: | 2017533672 | |

## Party Information

| Party Type | Last Name | First Name | MI | Suffix | DOB | Party Status |
|---|---|---|---|---|---|---|
| DEFENDANT | JORDAN | CHADWICK | H | | 06/05/1982 | |
| Race | Hair | Weight | Height | Eyes | Eyeglasses | |
| BLACK | BLACK | 201 | 510 | BROWN | | |
| | Attorney Number | Attorney Name | | | | |
| | 99999 | PUBLIC DEFENDERS OFFICE | | | | |

## Violation Information

| Violations | Description | Points | Disposition | Class Code |
|---|---|---|---|---|
| 38-89 | DISTURBING THE PEACE | 0 | DISMISSED | UC |
| 38-92 | THREATS TO INJURE PERSON/PROPERTY | 0 | GUILTY | UC |

## Sentence Information

| Date | | Description | Value | Units | Due Date | Status |
|---|---|---|---|---|---|---|
| 02/07/2018 | | SUPERVISED PROBATION | 1 | YEARS | 02/07/2019 | |
| | 2 | ANGER MANAGEMENT | 0 | | | |
| | 8 | COMMENT | 0 | | | |
| | 1 | ALCOHOL/DRUG EVALUATION | 0 | | | |
| | 6 | PAY FINES, FEES, COURT COST | 0 | | | |
| | 5 | NOTIFY FOR CHANGE OF ADDRESS | 0 | | | |
| | 7 | TERMS DECIDED BY PROBATION | 0 | | | |
| | 3 | MONITORED SOBRIETY | 0 | | | |
| | 4 | NO FURTHER VIOLATIONS | 1 | Y | | |
| 02/07/2018 | | COMM SERV ORDERED | 24 | HOURS | 02/07/2019 | |
| | 1 | COMMUNITY SERVICE FEE WAIVED | 75 | A | | |

## Fines and Costs Information

| Description | Imposed | Suspended | CCWP/CTS | Paid | Due |
|---|---|---|---|---|---|
| SUPERVISION FEE | 600.00 | 0.00 | 0.00 | 0.00 | 600.00 |
| FINE GENERAL SESSIONS | 50.00 | 50.00 | 0.00 | 0.00 | 0.00 |
| USEFUL PUBLIC SERVICE | 75.00 | 75.00 | 0.00 | 0.00 | 0.00 |
| STATE PUBLIC DEFENDER FEE | 25.00 | 0.00 | 0.00 | 0.00 | 25.00 |
| Totals: | $750.00 | $125.00 | $0.00 | $0.00 | $625.00 |

## Action Information

https://www.denvercountycourt.org/search                                         CU242    1/2

3/5/2018                          Search » Denver County CourtDenver County Court

| Date | Action | Judicial Officer | Crtrm | Dispo | Amount |
|------|--------|------------------|-------|-------|--------|
| 02/06/2019 1:00 AM | PROTECTION ORDER REVIEW HRG. | | 4A | | |
| 03/09/2018 1:00 AM | COLLECTION REVIEW | | 160Z | | |
| 02/13/2018 8:01 AM | COLLECTION LETTER SENT | | 160Z | | |
| 02/08/2018 8:21 AM | COLLECTION PHONE CALL | | 160Z | | |
| 02/07/2018 9:14 AM | PROBATION REFERRAL RECEIVED | | PROB | | |
| 02/07/2018 8:00 AM | FINE/COSTS TOTAL | | 4A | FINES DUE | |
| 02/07/2018 8:00 AM | REFER TO PROB IMMEDIATE SENT | | 4A | PROBATION SEEN | |
| 02/07/2018 8:00 AM | JURY TRIAL | BARAJAS | 4A | GUILTY PLEA IMMEDIATE SENTENCE | |
| 01/31/2018 8:15 AM | JURY TRIAL | BARAJAS | 4A | CONTINUED BY DEFENDANT | |
| 01/05/2018 12:48 PM | MISC. CORRESPONDENCE | | | | |
| 12/04/2017 8:15 AM | JURY TRIAL | ESPINOSA | 3G | CONTINUED BY DEFENDANT | |
| 12/04/2017 12:00 AM | SPEEDY TRIAL STARTS | | | | |
| 10/10/2017 10:05 AM | JURY FEE WAIVED | | 4A | | |
| 10/10/2017 10:05 AM | JURY TRIAL MOTION | | 4A | | |
| 10/10/2017 10:05 AM | PUBLIC DEFENDER APPOINTED | | 4A | | |
| 10/10/2017 9:30 AM | DISPOSITION/RESET DATE | ZOBEL | 4A | NOT GUILTY PLEA SET NEW DATE | |
| 09/26/2017 9:30 AM | DISPOSITION/RESET DATE | ZOBEL | 4A | CONTINUED BY DEFENDANT | |
| 09/11/2017 8:00 AM | PROTECTION ORDER | | 4A | PROTECTION ORDER ISSUED | |
| 09/11/2017 8:00 AM | ARRAIGNMENT | CALLUM | 4A | DEFENDANT ADVISED | |
| 09/11/2017 8:00 AM | PUBLIC DEFENDER REQUESTED | | 4A | | |
| 08/11/2017 5:50 PM | CASE ENTERED | | | | |

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 141 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-1    filed 08/02/23    USDC Colorado    pg 244
of 298

3/5/2018                                    Search » Denver County CourtDenver County Court

## Search by Name

Search for cases by name. This will only display payable cases.

## Case Number: 17GS010059

[ Pay Fines/Costs ]

## Case Information

| Status | Case Type | Violation Date | Date Filed | Courtroom |
|---|---|---|---|---|
| SENTENCED | THREATS | 08/11/2017 | 08/11/2017 5:50 PM | 4A |
| Pay Amount: | $0.00 | | | |
| Location: | 2250 N CLARKSON ST DENVER | | | |
| AB Number: | 201735973 | GO Number: | 2017533672 | |

## Party Information

| Party Type | Last Name | First Name | MI | Suffix | DOB | Party Status |
|---|---|---|---|---|---|---|
| DEFENDANT | JORDAN | CHADWICK | H | | 06/05/1982 | |
| **Race** | **Hair** | **Weight** | **Height** | **Eyes** | **Eyeglasses** | |
| BLACK | BLACK | 201 | 510 | BROWN | | |
| | **Attorney Number** | **Attorney Name** | | | | |
| | 99999 | PUBLIC DEFENDERS OFFICE | | | | |

## Violation Information

| Violations | Description | Points | Disposition | Class Code |
|---|---|---|---|---|
| 38-89 | DISTURBING THE PEACE | 0 | DISMISSED | UC |
| 38-92 | THREATS TO INJURE PERSON/PROPERTY | 0 | GUILTY | UC |

## Sentence Information

| Date | Description | | Value | Units | Due Date | Status |
|---|---|---|---|---|---|---|
| 02/07/2018 | SUPERVISED PROBATION | | 1 | YEARS | 02/07/2019 | |
| | 2 | ANGER MANAGEMENT | 0 | | | |
| | 8 | COMMENT | 0 | | | |
| | 1 | ALCOHOL/DRUG EVALUATION | 0 | | | |
| | 6 | PAY FINES, FEES, COURT COST | 0 | | | |
| | 5 | NOTIFY FOR CHANGE OF ADDRESS | 0 | | | |
| | 7 | TERMS DECIDED BY PROBATION | 0 | | | |
| | 3 | MONITORED SOBRIETY | 0 | | | |
| | 4 | NO FURTHER VIOLATIONS | 1 | Y | | |
| 02/07/2018 | COMM SERV ORDERED | | 24 | HOURS | 02/07/2019 | |
| | 1 | COMMUNITY SERVICE FEE WAIVED | 75 | A | | |

## Fines and Costs Information

| Description | Imposed | Suspended | CCWP/CTS | Paid | Due |
|---|---|---|---|---|---|
| SUPERVISION FEE | 600.00 | 0.00 | 0.00 | 0.00 | 600.00 |
| FINE GENERAL SESSIONS | 50.00 | 50.00 | 0.00 | 0.00 | 0.00 |
| USEFUL PUBLIC SERVICE | 75.00 | 75.00 | 0.00 | 0.00 | 0.00 |
| STATE PUBLIC DEFENDER FEE | 25.00 | 0.00 | 0.00 | 0.00 | 25.00 |
| Totals: | $750.00 | $125.00 | $0.00 | $0.00 | $625.00 |

## Action Information

https://www.denvercountycourt.org/search

CU244

Case No. 1:19-cv-02660-RM-JPO   Document 168   filed 12/08/23   USDC Colorado
pg 142 of 215
Case No. 1:19-cv-02660-RM-SKC   Document 143-1   filed 08/02/23   USDC Colorado   pg 215
of 298

# Table of Contents

Related Event GO#  2017-533672 ........................................................................ 1

Offense(s) ........................................................................................................ 1

Related Event(s) .............................................................................................. 2

Related Person(s) ............................................................................................ 2

   1. VICTIM # 1 - LOFTIS, JAMES WENDELL ........................................................ 2

   2. ARRESTEE # 1 - JORDAN, CHADWICK HEATH ............................................. 4

   3. WITNESS # 1 - SCHIWART, STEVEN ROGER ............................................... 6

   4. WITNESS # 2 - TILLMA, MAZUB W ............................................................... 7

Related Narrative(s) ......................................................................................... 9

   1. INITIAL REPORT/NARRATIVE - NARRATIVE ................................................. 9

   2. OFFICER STATEMENT - OFF NEBLOCK STATEMENT ................................. 10

   3. SYSTEM GENERATED - OFFICER'S ORIGINAL REPORT ............................ 11

Related Clearance Information ....................................................................... 17

Related Arrest(s) ............................................................................................ 18

   1. Related Arrest Report AB# 2017-35973 ....................................................... 18

Related Attachment(s) ................................................................................... 20

   1. SCANNED CASE/SUSPECT DOCUMENTS - ............................................... 20

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 143 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-1 filed 08/02/23    USDC Colorado    pg 216

| | |
|---|---|
| **DENVER POLICE DEPARTMENT** | GO #2017-533672 |
| **GENERAL OFFENSE HARDCOPY** | ARREST/CITATION - NOT |
| (1316-0 THREATS TO INJURE) | PRESENTED/REFUSED |
| | BY DA |

## General Offense Information

| | |
|---|---|
| Operational Status | ARREST/CITATION - NOT PRESENTED/REFUSED BY DA |
| Reported On | AUG-11-2017  (FRI.) 1554 |
| Occurred On | AUG-11-2017  (FRI.) 1430 |
| Approved On | AUG-11-2017  (FRI.) |
| Approved By | P95013  -  GARDNER, LANCE E. |
| Report Submitted By | P01052  -  QUINTANA, ERNEST G. |
| Org Unit | DISTRICT 6 |
| Accompanied By | P16060  -  NEBLOCK, JEFFREY |
| Address | 2250 N CLARKSON ST |
| Municipality | DENVER |
| County | DENVER |
| | **District** 6 **Beat** 621 |
| Felony/ Misdemeanor | MISDEMEANOR |
| Gang Involvement | NOT GANG RELATED |
| Family Violence | NO |
| Cargo Theft | NO |

## Offenses (Completed/Attempted)

| | |
|---|---|
| Offense # | 1   1316-0   THREATS TO INJURE  -  COMPLETED |
| Location | OTHER/UNKNOWN |
| Suspected Of Using | NOT APPLICABLE |
| Bias | NONE (NO BIAS) |
| | |
| Offense # | 2   5312-0   DISTURBING THE PEACE  -  COMPLETED |
| Location | OTHER/UNKNOWN |
| Suspected Of Using | NOT APPLICABLE |
| Bias | NONE (NO BIAS) |

CU216

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 144 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-15    filed 08/02/23    USDC Colorado    pg 217

# DENVER POLICE DEPARTMENT

### GENERAL OFFENSE HARDCOPY

(1316-0 THREATS TO INJURE)

GO# 2017-533672
ARREST/CITATION - NOT
PRESENTED/REFUSED
BY DA

---

## Related Event(s)

1. AB  2017-35973

## Related Person(s)

1. **VICTIM # 1 - LOFTIS, JAMES WENDELL**

   **PERSON PHOTO**

   **MUGSHOT**

   **CD# 304952**

   

---

### CASE SPECIFIC INFORMATION

| | |
|---|---|
| **Sex** | MALE |
| **Race** | BLACK |
| **Date Of Birth** | SEP█-1956 |
| **Address** | 2250 N CLARKSON ST          **Apartment**  A |
| **Municipality** | DENVER |
| **State** | COLORADO |
| **ZIP Code** | 80205 |
| | **District** 6 **Beat** 621 |
| **HOME** | █████████ |
| **CELLULAR** | █████████ |

---

### PERSON PARTICULARS

| | |
|---|---|
| **Place Of Birth** | COLORADO |
| **Occupation** | NONE |
| **Citizenship** | AMERICAN |
| **Marital Status** | DIVORCED |
| **Ethnicity** | NON-HISPANIC |
| **Language(s) Spoken** | ENGLISH |
| **Height** | 5'10          **Weight**  160 LBS. |
| **Build** | MEDIUM |
| **Handed** | RIGHT HANDED |
| **Eye Color** | BROWN |

CU217



# DENVER POLICE DEPARTMENT

### GENERAL OFFENSE HARDCOPY

(1316-0 THREATS TO INJURE)

GO# 2017-533672
ARREST/CITATION - NOT
PRESENTED/REFUSED
BY DA

|  |  |  |  |
|---|---|---|---|
| **Hair Color** | BLACK | **Hair Style** | BALD |
| **Facial Hair Color** | BLACK | **Facial Hair Type** | UNSHAVEN (STUBBLE) |
| **Additional Remarks** | DPD #304952 |  |  |

---

## MASTER NAME INDEX REFERENCE

|  |  |  |  |
|---|---|---|---|
| **Name** | LOFTIS , JAMES  WENDELL |  |  |
| **Sex** | MALE |  |  |
| **Race** | BLACK |  |  |
| **Date Of Birth** | SEP-17-1956 |  |  |
| **Ethnicity** | NON-HISPANIC |  |  |
| **Address** | 2250 N CLARKSON ST | **Apartment** | A |
| **Municipality** | DENVER |  |  |
| **State** | COLORADO |  |  |
| **County** | DENVER |  |  |
| **ZIP Code** | 80205 |  |  |
| **District** | 6 **Beat** 621 |  |  |

### PHONE NUMBERS

| **CELLULAR** | ████████ |
|---|---|
| **HOME** | ████████ |

---

## ALIAS(ES)

| Name | Address | Sex | DOB |
|---|---|---|---|
| LOFTIS, JAMES WENDELL |  | M | SEP-19-1956 |

---

## LINKAGE FACTORS

|  |  |
|---|---|
| **Resident Status** | RESIDENT |
| **Age Range** | 50-64 YEARS |
| **Access To Firearm** | NO |
| **Victim Of** | 1316- 0  THREATS TO INJURE -  COMPLETED |

### RELATIONSHIP(S) BETWEEN VICTIM TO OFFENDER(S)

|  |  |  |  |
|---|---|---|---|
| **Relationship** | VICTIM WAS NEIGHBOR |  |  |
| **Offender's Name** | JORDAN, CHADWICK H (DOB: JUN-05-1982) | **Offender's Role** | ARRESTEE #1 |

CU218

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 146 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-15  filed 08/02/23    USDC Colorado    pg 219

# DENVER POLICE DEPARTMENT

### GENERAL OFFENSE HARDCOPY

### (1316-0 THREATS TO INJURE)

GO# 2017-533672
ARREST/CITATION - NOT
PRESENTED/REFUSED
BY DA

---

## 2. ARRESTEE # 1 - JORDAN, CHADWICK HEATH

### PERSON PHOTO



**MUGSHOT**

**CD# 671906**

---

### CASE SPECIFIC INFORMATION

| | |
|---|---|
| **Sex** | MALE |
| **Race** | BLACK |
| **Date Of Birth** | JUN-05-1982 |
| **Address** | 2246 N CLARKSON ST          **Apartment**  A |
| **Municipality** | DENVER |
| **State** | COLORADO |
| **ZIP Code** | 80205 |
| | **District** 6 **Beat** 621 |

**CELLULAR** ▮▮▮▮▮▮▮
**HOME** ▮▮▮▮▮▮▮

---

### PERSON PARTICULARS

| | |
|---|---|
| **Place Of Birth** | NORTH CAROLINA |
| **Ethnicity** | NON-HISPANIC |
| **Language(s) Spoken** | ENGLISH |
| **Height** | 5'10          **Weight**  201 LBS. |
| **Eye Color** | BROWN |
| **Hair Color** | BLACK |
| **Additional Remarks** | UPSET W/EX LANDLORD FOR KEEPING PART OF DEPOSIT CK |

---

### MASTER NAME INDEX REFERENCE

| | |
|---|---|
| **Name** | JORDAN , CHADWICK  HEATH |
| **Sex** | MALE |
| **Race** | BLACK |
| **Date Of Birth** | JUN-05-1982 |
| **Ethnicity** | NON-HISPANIC |
| **Address** | 2246 N CLARKSON ST          **Apartment**  A101 |
| **Municipality** | DENVER |

CU219

---

# DENVER POLICE DEPARTMENT

GDPA2017-533672

## GENERAL OFFENSE HARDCOPY

### (1316-0 THREATS TO INJURE)

ARREST/CITATION - NOT
PRESENTED/REFUSED
BY DA

| | |
|---|---|
| **State** | COLORADO |
| **County** | DENVER |
| **ZIP Code** | 80205 |
| **District** 6 **Beat** 621 | |

### *PHONE NUMBERS*

| | |
|---|---|
| **HOME** | ███████ |
| **CELLULAR** | ███████ |

## ALIAS(ES)

| Name | Address | Sex | DOB |
|---|---|---|---|
| JORDAN, CHAD HEATH | DENVER CO | M | JUN-05-1982 |

## CHARGE SUMMARY

### *CHARGE # 1*

| | |
|---|---|
| **Offense Date** | AUG-11-2017  (FRI.) 1430 |
| **Offense** | DISTURBING THE PEACE [025313]  - COMPLETED |
| **Charge Statute** | M  38-89 |
| **Charge Severity** | UNCLASSIFIED |
| **Domestic Violence** | NO |
| **Court Date** | SEP-11-2017  (MON.) 0800 |

### *CHARGE # 2*

| | |
|---|---|
| **Offense Date** | AUG-11-2017  (FRI.) 1430 |
| **Offense** | THREATS TO INJURE PERSON/PROPERTY [025319]  - COMPLETED |
| **Charge Statute** | M  38-92 |
| **Charge Severity** | UNCLASSIFIED |
| **Domestic Violence** | NO |
| **Court Date** | SEP-11-2017  (MON.) 0800 |

## LINKAGE FACTORS

| | |
|---|---|
| **Resident Status** | RESIDENT |
| **Age Range** | 30-49 YEARS |
| **Armed With** | UNARMED |
| **Offense** | 1316- 0  THREATS TO INJURE  - COMPLETED |
| **Arrest Date** | AUG-11-2017  (FRI.) |
| **Arrest Type** | SUMMONED/CITED AND IMMEDIATELY RELEASED (NOT JAILED) |

CU220

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 49-15    filed 08/02/23    USDC Colorado    pg 221
pg 148 of 215

# DENVER POLICE DEPARTMENT

GO# 2017-533672

## GENERAL OFFENSE HARDCOPY

ARREST/CITATION - NOT
PRESENTED/REFUSED
BY DA

(1316-0 THREATS TO INJURE)

---

### 3. WITNESS # 1 - SCHIWART, STEVEN ROGER

**PERSON PHOTO**

MUGSHOT

CD# 846254

---

### CASE SPECIFIC INFORMATION

| | |
|---|---|
| Sex | MALE |
| Race | WHITE |
| Date Of Birth | APR-██-1968 |
| Address | 2250 N CLARKSON ST    Apartment E |
| Municipality | DENVER |
| State | COLORADO |
| ZIP Code | 80205 |
| | **District** 6 **Beat** 621 |
| HOME | (██████████ |

---

### PERSON PARTICULARS

| | |
|---|---|
| Ethnicity | UNKNOWN |
| Language(s) Spoken | ENGLISH |
| Height | 5'09    **Weight** 150 LBS. |
| Eye Color | GREEN |
| Hair Color | BROWN |

---

### MASTER NAME INDEX REFERENCE

| | |
|---|---|
| Name | SCHIWART , STEVEN ROGER |
| Sex | MALE |
| Race | WHITE |
| Date Of Birth | APR-██-1968 |
| Ethnicity | UNKNOWN |
| Address | 2250 N CLARKSON ST    Apartment E |
| Municipality | DENVER |
| State | COLORADO |
| County | DENVER |
| ZIP Code | 80205 |
| | **District** 6 **Beat** 621 |

CU221

# DENVER POLICE DEPARTMENT

## GENERAL OFFENSE HARDCOPY

### (1316-0 THREATS TO INJURE)

GO# 2017533672

ARREST/CITATION - NOT
PRESENTED/REFUSED
BY DA

---

**PHONE NUMBERS**

HOME ▮▮▮▮▮▮

---

**LINKAGE FACTORS**

Resident Status    RESIDENT
Age Range    30-49 YEARS
Access To Firearm    NO

---

## 4. WITNESS # 2 - TILLMA, MAZUB W

### CASE SPECIFIC INFORMATION

| | |
|---|---|
| Sex | MALE |
| Race | BLACK |
| Date Of Birth | MAY ▮▮-1972 |
| Address | 2250 N CLARKSON ST    Apartment  D |
| Municipality | DENVER |
| State | COLORADO |
| ZIP Code | 80205 |
| | District 6 Beat 621 |
| HOME | ▮▮▮▮▮▮ |

### PERSON PARTICULARS

| | |
|---|---|
| Ethnicity | NON-HISPANIC |
| Language(s) Spoken | ENGLISH |
| Height | 6'00    Weight  225 LBS. |
| Eye Color | BROWN |
| Hair Color | UNK OR COMPLETELY BALD |

### MASTER NAME INDEX REFERENCE

| | |
|---|---|
| Name | TILLMA , MAZUB  W |
| Sex | MALE |
| Race | BLACK |
| Date Of Birth | MAY ▮▮-1972 |
| Ethnicity | NON-HISPANIC |
| Address | 2250 N CLARKSON ST    Apartment  D |
| Municipality | DENVER |
| State | COLORADO |
| County | DENVER |
| ZIP Code | 80205 |
| | District 6 Beat 621 |

CU222

---

# DENVER POLICE DEPARTMENT

## GENERAL OFFENSE HARDCOPY

### (1316-0 THREATS TO INJURE)

GO# 2017-533672

ARREST/CITATION - NOT
PRESENTED/REFUSED
BY DA

---

**PHONE NUMBERS**

**HOME** (███████████

---

## LINKAGE FACTORS

| | |
|---|---|
| **Resident Status** | RESIDENT |
| **Age Range** | 30-49 YEARS |
| **Access To Firearm** | NO |

CU223

# DENVER POLICE DEPARTMENT

### GENERAL OFFENSE HARDCOPY

**(1316-0 THREATS TO INJURE)**

GO# 2017-533672

ARREST/CITATION - NOT
PRESENTED/REFUSED
BY DA

## Related Text Page(s)

| | |
|---|---|
| **Document** | INITIAL REPORT/NARRATIVE |
| **Author** | P01052 - QUINTANA, ERNEST G. |
| **Subject** | NARRATIVE |
| **Related Date/Time** | AUG-11-2017  (FRI.) 1601 |

```
Investigation revealed that at the listed date and time, the listed
arrestee threatened to kill the listed victim at the listed location. This
caused the victim's peace to be disturbed.

The arrestee was taken into custody without incident and ordered in.
```

CU224

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 152 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-15    filed 08/02/23    USDC Colorado    pg 225

# DENVER POLICE DEPARTMENT

### GENERAL OFFENSE HARDCOPY

#### (1316-0 THREATS TO INJURE)

GO#2017-333672

ARREST/CITATION - NOT
PRESENTED/REFUSED
BY DA

## Related Text Page(s)

| | |
|---|---|
| **Document** | OFFICER STATEMENT |
| **Author** | P01052 - QUINTANA, ERNEST G. |
| **Subject** | OFF NEBLOCK STATEMENT |
| **Related Date/Time** | AUG-11-2017  (FRI.) 1602 |

*BWC Activated*

On 08-11-2017, while working car 642S with training officer Corporal
Quintana, I resonded to 2250 N. Clarkson St Apt. #A on a report of threats
in progress.

Upon arrival on scene, I contacted the listed victim (Loftis) who stated
that his neighbor, arrested party (Chadwick Jordan) had threatened to kill
him stating that he would shoot him. The victim pointed officers to the
location of the arrestee, who was on the north side of the building at the
listed location.

The arrestee was taken into custody without incident.

The victim and the two listed witnesses stated that the arrestee had
threatened to kill the victim.

After taking the arrestee into custody, ROs noticed several cuts and
scrapes on the arrestee's legs and knees. DHMC Amb. #11 (Bolin) responded
at 1530 hours and transported the arrestee to St. Joeseph's hospital.

The arrestee was issed an O/I and released.

Witness statements submitted to records for scanning.

CU225

# DENVER POLICE DEPARTMENT

## GENERAL OFFENSE HARDCOPY

### (1316-0 THREATS TO INJURE)

GO# 2017-533672
ARREST/CITATION - NOT
PRESENTED/REFUSED
BY DA

---

## Related Text Page(s)

| | |
|---|---|
| **Document** | SYSTEM GENERATED |
| **Author** | P01052 - QUINTANA, ERNEST G. |
| **Subject** | OFFICER'S ORIGINAL REPORT |
| **Related Date/Time** | AUG-11-2017 (FRI.) 1629 |

```
Textual representation of the officer's MRE report

REPORT INFORMATION
=======================================================================
Offense # : 533672
Offense year : 2017
Date occurred : 08-11-2017
Time reported : 1430
Status : T (ARREST/CITATION - NOT PRESENTED/REFUSED
BY DA)
Family Violence : N
Submitted by : P01052 (QUINTANA, ERNEST G. (P01052))
Date reported : 08-11-2017
Time reported : 1554
Org Unit : D6 (DISTRICT 6)
2nd off : P16060 (NEBLOCK, JEFFREY)
Location : 2250 N CLARKSON ST
Municipality : 31 (DENVER)
County : 3 (DENVER)
Bias : 88 (NONE (NO BIAS))
Gang involved : N (NOT GANG RELATED)

IBR OFFENSE
=======================================================================
Offense code : 1316
Offense extension : 0
C/A : C
Offender suspected of using co: N (NOT APPLICABLE)
Location type codes : 25 (OTHER/UNKNOWN)

IBR OFFENSE
=======================================================================
Offense code : 5312
Offense extension : 0
C/A : C
Offender suspected of using co: N (NOT APPLICABLE)
Location type codes : 25 (OTHER/UNKNOWN)

NARRATIVE TEXT
```

CU226

Case No. 1:19-cv-02660-RM-JPO   Document 168   filed 12/08/23   USDC Colorado
pg 154 of 215
Case No. 1:19-cv-02660-RM-SKC   Document 143-21   filed 08/02/23   USDC Colorado   pg 227

**DENVER POLICE DEPARTMENT**

**GENERAL OFFENSE HARDCOPY**

**(1316-0 THREATS TO INJURE)**

GO# 2017-533672
ARREST/CITATION - NOT
PRESENTED/REFUSED
BY DA

```
===========================================================================
Subject : NARRATIVE
Type of text : NA (INITIAL REPORT/NARRATIVE)
Author : P01052 (QUINTANA, ERNEST G.)
Related Date : 08-11-2017
Time : 1601
Investigation revealed that at the listed date and time, the listed
arrestee threatened to kill the listed victim at the listed location. This
caused the victim's peace to be disturbed.


The arrestee was taken into custody without incident and ordered in.


NARRATIVE TEXT
===========================================================================
Subject : OFF NEBLOCK STATEMENT
Type of text : OS (OFFICER STATEMENT)
Author : P01052 (QUINTANA, ERNEST G.)
Related Date : 08-11-2017
Time : 1602
*BWC Activated*


On 08-11-2017, while working car 642S with training officer Corporal
Quintana, I resonded to 2250 N. Clarkson St Apt. #A on a report of threats
in progress.


Upon arrival on scene, I contacted the listed victim (Loftis) who stated
that his neighbor, arrested party (Chadwick Jordan) had threatened to kill
him stating that he would shoot him. The victim pointed officers to the
location of the arrestee, who was on the north side of the building at the
listed location.


The arrestee was taken into custody without incident.


The victim and the two listed witnesses stated that the arrestee had
threatened to kill the victim.


After taking the arrestee into custody, ROs noticed several cuts and
scrapes on the arrestee's legs and knees. DHMC Amb. #11 (Bolin) responded
at 1530 hours and transported the arrestee to St. Joeseph's hospital.


The arrestee was issed an O/I and released.


Witness statements submitted to records for scanning.


CLEARANCE BLOCK
===========================================================================
Clearance Agency : D (DENVER P.D.)
IBR Cleared Exceptionally Stat: N (NOT APPLICABLE)
Cleared Date : 08-11-2017
Clearance officer 1 : P01052 (QUINTANA, ERNEST G.)
```

CU227

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 155 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-15    filed 08/02/23    USDC Colorado    pg 228

DENVER POLICE DEPARTMENT

GENERAL OFFENSE HARDCOPY

(1316-0 THREATS TO INJURE)

GO#2017-533672
ARREST/CITATION - NOT
PRESENTED/REFUSED
BY DA

```
Clearance officer 2 : P16060 (NEBLOCK, JEFFREY)
Org unit : D6 (DISTRICT 6)
Internal Status : T (ARREST/CITATION - NOT PRESENTED/REFUSED
BY DA)
Was Complainant/Victim notifie: N
Clearance Status : C (CLEARED BY ARREST)
Location : 2250 N CLARKSON ST
Municipality : 31
County : 3
X-coordinate : 3147123
Y-coordinate : 1698649
Longitude : -104.97676
Latitude : 39.7504333
Latitude-Degrees : 39
Latitude-Minutes : 45
Latitude-Seconds : 01.56
Latitude-Hemisphere : N
Longitude-Degrees : 104
Longitude-Minutes : 58
Longitude-Seconds : 36.35
Longitude-Hemisphere : W


PERSON
=======================================================================
Role : 3 (ARRESTEE)
No : 1
Surname : JORDAN
First : CHADWICK
Middle : HEATH
Sex : M
Address : 2246 N CLARKSON ST
Apartment Number : A
City : DENVER
State : CO (CO)
Zip : 80205
DOB : 06███-1982
App. age : 35
Race : B (BLACK)
Home phone (area code) : 720
Home phone : ██████
Cell phone (area code) : 720
Cell phone : ██████
Driver's license : ██████
SOI : CO (CO)
SSN : ██████
POB : NC (NC)
Caution : V (VIOLENT)
Language : E (ENGLISH)
Ethnicity : N (N)
Height : 5'10
```

CU228

Case No. 1:19-cv-02660-RM-JPO   Document 168   filed 12/08/23   USDC Colorado
pg 156 of 215
Case No. 1:19-cv-02660-RM-SKC   Document 143-1   filed 08/02/23   USDC Colorado   pg 229

**DENVER POLICE DEPARTMENT**

**GENERAL OFFENSE HARDCOPY**

**(1316-0 THREATS TO INJURE)**

GO# 2017-533672

ARREST/CITATION - NOT
PRESENTED/REFUSED
BY DA

```
SSN :  ██████████
Language : E (ENGLISH)
Ethnicity : U (U)
Height : 5'09
Weight : 150
Hair color : BRO (BROWN)
Eye color : GRN (GREEN)


PERSON LINKAGE
=======================================================================
Resident status : R (RESIDENT)
Age range : K (30-49 YEARS)
Access to firearms : N


PERSON
=======================================================================
Role : 7 (WITNESS)
No : 2
Surname : TILLMA
First : MAZUB
Middle : W
Sex : M
Address : 2250 N CLARKSON ST
Apartment Number : D
City : DENVER
State : CO (CO)
DOB : 05-██-1972
App. age : 45
Race : B (BLACK)
Home phone (area code) : 720
Home phone :  ██████████
Driver's license :  ██████████
SOI : CO (CO)
Class : ID (IDENTIFICATION)
SSN :  ██████████
Language : E (ENGLISH)
Ethnicity : N (N)
Height : 6'00
Weight : 225
Hair color : XXX (UNK OR COMPLETELY BALD)
Eye color : BRO (BROWN)


PERSON LINKAGE
=======================================================================
Resident status : R (RESIDENT)
Age range : K (30-49 YEARS)
Access to firearms : N
```

CU229

**DENVER POLICE DEPARTMENT**

**GENERAL OFFENSE HARDCOPY**

(1316-0 THREATS TO INJURE)

GO#2017-533672

ARREST/CITATION - NOT
PRESENTED/REFUSED
BY DA

## Clearance Information

| | |
|---|---|
| **Agency** | DENVER P.D. |
| **Cleared Status** | CLEARED BY ARREST  - NOT APPLICABLE |
| **Cleared On** | AUG-11-2017  (FRI.) |
| **Cleared By Officer 1** | P01052 -  QUINTANA, ERNEST G. |
| **Org Unit** | D6 -  DISTRICT 6 |
| **Cleared By Officer 2** | P16060 -  NEBLOCK, JEFFREY |
| **Complainant/Victim Notified** | NO |

CU230

# DENVER POLICE DEPARTMENT

### GENERAL OFFENSE HARDCOPY

(1316-0 THREATS TO INJURE)

GO# 2017-533672
ARREST/CITATION - NOT
PRESENTED/REFUSED
BY DA

## Related Arrest Report AB# 2017-35973

| | |
|---|---|
| Arrestee | JORDAN, CHADWICK HEATH |
| Date Of Birth | JUN-05-1982 |
| Related CD# | 671906 |

## Arrest Information

| | |
|---|---|
| Status | CRIMINAL CITATION ISSUED - NOT JAILED |
| Type Of Arrest | SUMMONED/CITED AND IMMEDIATELY RELEASED (NOT JAILED) |
| Reason For Arrest | ORIGINAL ARREST/CHARGE RECORD |
| Arrest Date | AUG-11-2017  (FRI.) 1540 |
| Rush File Required | NO |
| Booked Into Cell | NO |
| Arresting Officer(s) | P01052 -  QUINTANA, ERNEST G. |
| Summary Of Facts | THREATS / DISTURBANCE OF THE PEACE |

### ARREST LOCATION

| | |
|---|---|
| Address | 2250 N CLARKSON ST |
| Municipality | DENVER |
| County | DENVER |
| | District 6 Beat 621 |
| SODA Zone | NO |

Drug Free Zone  NO

### ADDITIONAL ARREST INFORMATION

| | |
|---|---|
| Case Screened | NO |
| Notify Victim On Release | NO |
| Juvenile | NO |
| Armed With | UNARMED |
| Diversion Recommended | NO |
| Interpreter Needed | NO |
| Rights Given | NO |
| Mental Exam Required | NO |
| Statement Taken | NO |
| Fingerprinted | NO |
| CD Updated | NO |
| Family Notified | NO |
| Family Notified | NO |
| Lawyer Called | NO |
| Meal Given | NO |

Photo Taken  NO

Coffee Given  NO

CU231

# DENVER POLICE DEPARTMENT

## GENERAL OFFENSE HARDCOPY

### (1316-0 THREATS TO INJURE)

**Detained** NO

CU232

Case No. 1:19-cv-02660-RM-JPO   Document 168   filed 12/08/23   USDC Colorado
pg 160 of 215
Case No. 1:19-cv-02660-RM-SKC   Document 143-15   filed 08/02/23   USDC Colorado   pg 233

# DENVER POLICE DEPARTMENT

## GENERAL OFFENSE HARDCOPY

### (1316-0 THREATS TO INJURE)

GO#2017-533672
ARREST/CITATION - NOT
PRESENTED/REFUSED
BY DA

---

## Related Attachment - SCANNED CASE/SUSPECT DOCUMENTS

| Description |
|---|
| Reference Number |

Page _1_ of _1_ Pages                              GO/CAD No _17 533672_

**Denver Police Department   Departamento de Policía de Denver**
**STATEMENT   DECLARACIÓN**

Name (Last, First, Middle Initial)
Nombre (apellido paterno, nombre, inicial de segundo nombre)
**Loftis James W**

Person Making Statement Is
☐ Officer  Serial Number
☒ Witness ☐ Person Advised

Residence Street Address
Domicilio del lugar donde vive
**2250 Clarkson st #A**

City Ciudad **Denver**

County Condado **Colorado**

State Estado **Co**

Zip Code Código postal **80205**

Residence Phone
Teléfono del lugar donde reside

Business Phone
Teléfono del trabajo/empresa
( ) **N A**

Date of Birth
Fecha de nacimiento No. de Serie
**09- 1956**

Zip Code
Código postal

Domicilio del trabajo/empresa
**N/A**

City Ciudad

County Condado

State Estado

Zip Code
Código postal

Officer Taking Statement
**R. Mills**

Serial No. **15025**

Date **8/11/17**

Time **1500** Hours

Concerning an Incident occurring at
En referencia a un incidente que ocurrió en
**Clarkson Apts 2250 N. Clarkson St**

Location Where Statement was Taken
Lugar donde se tomó la declaración
**SAME**

Summary of Statement
Resumen de la Declaración

My neighbor chad threaten to kill me and cause bodily harm I call the management and police. my neighbors steve & zoo were witness I don't really know this guy but I can't afford to be threaten because I baby sit my grand kids, He wore black wife beater tee shirt and green shorts and has dread lock after try to ~~figl~~ fight me he went up front and threaten to shoot me with a gun he told me he was going to beat me up.

---

*I have read the foregoing statement and the facts contained therein are true to the best of my knowledge and belief. I do not maintain that it contains all of the facts or details of the incident, but only those facts about which I have been asked. He leído la declaración anterior, los hechos allí contenidos son verdaderos, según mi leal saber y entender. No sostengo que contiene todos los hechos o detalles sobre el incidente, sino sólo aquellos hechos que me han sido preguntados*

Date **Aug 11 20 17**

Time Statement Completed **3:22** ☐ a.m. ☒ p.m.

Signature of Person Making Statement
Firma de la persona que hace la declaración
**James W Loftis**

DPD 366 (Rev. 01/17)

CU233

Case No. 1:19-cv-02660-RM-JPO   Document 168   filed 12/08/23   USDC Colorado
pg 161 of 215
Case No. 1:19-cv-02660-RM-SKC   Document 143-21   filed 08/02/23   USDC Colorado   pg 234

# DENVER POLICE DEPARTMENT

### GENERAL OFFENSE HARDCOPY

#### (1316-0 THREATS TO INJURE)

Page _____ of _____ Pages

GO/CAD No. _____

**Summary of Statement** (Continued)
Resumen de la declaración (Continuación)

_I have read the foregoing statement and the facts contained therein are true to the best of my knowledge and belief. I do not maintain that it contains all of the facts or details of the incident, but only those facts about which I have been asked  He leído la declaración anterior; los hechos allí contenidos son verdaderos, según mi leal saber y entender  No sostengo que contiene todos los hechos o detalle sobre el incidente, sino sólo aquellos hechos que me han sido preguntados_

_____ / _____ / 20_____
Date

☐ a.m. ☐ p.m
Time Statement Completed

Signature of Person Making Statement
Firma de la persona que hace la declaración

DPD 366 (Rev. 01/17)

CU234

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 162 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-1    filed 08/02/23    USDC Colorado    pg 235

GO# 2017-533672

ARREST/CITATION - NOT
PRESENTED/REFUSED
BY DA

# DENVER POLICE DEPARTMENT

## GENERAL OFFENSE HARDCOPY

### (1316-0 THREATS TO INJURE)

Page __1__ of __1__ Pages                    GO/CAD No __17 533672__

**Denver Police Department  Departamento de Policía de Denver**
## STATEMENT  DECLARACIÓN

| Name (Last: First: Middle Initial) Nombre (apellido paterno, nombre, inicia, de segundo nombre) | Person Making Statement Is |
|---|---|
| ILMA MAZUB, W | ☐ Officer  Serial Number ☒ Witness  ☐ Person Advised |

| Residence Street Address Domicilio de lugar donde vive | City Ciudad | County Condado | State Estado | Zip Code Código postal |
|---|---|---|---|---|
| 2250 CLARKSON ST "UNIT "D" | DENVER | | | |

| Residence Phone Teléfono de lugar donde reside | Business Phone Teléfono del trabajo/empresa ( ) | Date of Birth Fecha de nacimiento No. de Seri |
|---|---|---|
| ███████ | | 5/██/1972 |

| Domicilio del trabajo/empresa | City Ciudad | County Condado | State Estado | Zip Code Código postal |
|---|---|---|---|---|
| | | | | |

| Officer Taking Statement | Serial No | Date | Time |
|---|---|---|---|
| R. Miller | 15015 | 8/11/17 | 1500 Hours |

| Concerning an Incident occurring at En referencia a un incidente que ocurrió en | Location Where Statement was Taken Lugar donde se tomó la declaración |
|---|---|
| 2250 N Clarkson St | Same |

**Summary of Statement
Resumen de la Declaración**

I heard a loud slamming of the back gate. I heard someone cursing and using all kind slander. My friend James was in verball confrontation I saw this and decide to go the back gate. The other guy named "Chad", started threatning James, by saying "N-WORD" I will kill you!! As James called the police, Chad left the premise as I saw this. AT this point DPD had arrived - He is about 6'0 and black with dreads. About 220Lbs

*I have read the foregoing statement and the facts contained therein are true to the best of my knowledge and belief. I do not maintain that it contains all of the facts or details of the incident, but only those facts about which I have been asked. He leído la declaración anterior, los hechos allí contenidos son verdaderos, según mi lea' saber y entender. No sostengo que contiene todos los hechos o detalles sobre el incidente, sino sólo aquellos hechos que me han sido preguntados.*

__8__ / __11__ / 20__17__
Date

__3:30__    ☐ a.m. ☒ p.m.
Time Statement Completed

_Megula W. Tillman_
Signature of Person Making Statement
Firma de la persona que hace la declaración

DPD 366 (Rev. 01/17)

CU235

**DENVER POLICE DEPARTMENT**

GO# 2017-533672

**GENERAL OFFENSE HARDCOPY**

ARREST/CITATION - NOT
PRESENTED/REFUSED
BY DA

(1316-0 THREATS TO INJURE)

Page _____ of _____ Pages                         GO/CAD No. _____

**Summary of Statement** (Continued)
Resumen de la declaración (Continuación) _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

*I have read the foregoing statement and the facts contained therein are true to the best of my knowledge and belief. I do not maintain that it contains all of the facts or details of the incident, but only those facts about which I have been asked. He leído la declaración anterior; los hechos allí contenidos son verdaderos, según mi leal saber y entender. No sostengo que contiene todos los hechos o detalles sobre el incidente, sino sólo aquellos hechos que me han sido preguntados*

_____/_____/ 20_____
        Date

_____ _____ ☐ a.m ☐ p.m          _____
Time Statement Completed                        Signature of Person Making Statement
                                                Firma de la persona que hace la declaración

DPD 366 (Rev. 01/17)

CU236

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado    pg 237
Case No. 1:19-cv-02660-RM-SKC    Document 143-1    filed 08/02/23    USDC Colorado    pg 237
of 164 of 215

# DENVER POLICE DEPARTMENT

## GENERAL OFFENSE HARDCOPY

### (1316-0 THREATS TO INJURE)

GO#2017-533672
ARREST/CITATION - NOT
PRESENTED/REFUSED
BY DA

Page __1__ of __1__ Pages                GO/CAD No. __17-533672__

**Denver Police Department  Departamento de Policía de Denver**

## STATEMENT  DECLARACIÓN

| Name (Last, First, Middle Initial)<br>Nombre (apellido paterno, nombre, inicial de segundo nombre) | | | Person Making Statement Is<br>☐ Officer  Serial Number<br>☑ Witness  ☐ Person Advised |
|---|---|---|---|
| SCHINABI ROGER STEVEN | | | |

| Residence Street Address<br>Domicilio del lugar donde vive | City<br>Ciudad | County<br>Condado | State<br>Estado | Zip Code<br>Código postal |
|---|---|---|---|---|
| 2250 CLARKSON ST. APT E | DENVER | DENVER CO | | 80205 |

| Residence Phone<br>Teléfono del lugar donde reside | Business Phone<br>Teléfono del trabajo/empresa | Date of Birth<br>Fecha de nacimiento  No. de Serie |
|---|---|---|
| ████████ | ( ) | 04/__/1968 ████ |

| Business Street Address<br>Domicilio del trabajo/empresa | City<br>Ciudad | County<br>Condado | State<br>Estado | Zip Code<br>Código postal |
|---|---|---|---|---|
| | | | | |

| Officer Taking Statement | Serial No. | Date | Time |
|---|---|---|---|
| K. Mueller | 15025 | 8/11/17 | 1500 Hours |

| Concerning an incident occurring at<br>En referencia a un incidente que ocurrió en | Location Where Statement was Taken<br>Lugar donde se tomó la declaración |
|---|---|
| 2250 N Clarkson St | Same |

**Summary of Statement**
**Resumen de la Declaración**

I SAW AND HEERD CHAD TO HELA
HURT JAMES AND ICKE HIM AND HE ALSO THREAT
THERESO ME AND MY NEIDER MARSHA THERDED TO
KILL US AND HE WAS WEARING A TANK TOP AND
SHORTS HE WAS ABOUT 6" FOOT WITH LONG HAIR AND
HE IS VERY UNSTABLE AND HE WANTED TO FIGHT ALL
OF US

*I have read the foregoing statement and the facts contained therein are true to the best of my knowledge and belief. I do not maintain that it contains all of the facts or details of the incident, but only those facts about which I have been asked  He leído la declaración anterior, los hechos allí contenidos son verdaderos, según mi leal saber y entender. No sostengo que contiene todos los hechos o detalles sobre el incidente, sino sólo aquellos hechos que me han sido preguntados.*

| 87  11  20 17 | |
|---|---|
| Date | |
| 3:00  ☐ a.m.  ☑ p.m. | |
| Time Statement Completed | Signature of Person Making Statement<br>Firma de la persona que hace la declaración |

DPD 366 (Rev  01/17)

CU237

# DENVER POLICE DEPARTMENT

## GENERAL OFFENSE HARDCOPY

### (1316-0 THREATS TO INJURE)

Page _____ of _____ Pages                          GO/CAD No _____

**Summary of Statement** (Continued)
Resumen de la declaración (Continuación) _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

*I have read the foregoing statement and the facts contained therein are true to the best of my knowledge and belief. I do not maintain that it contains all of the facts or details of the incident, but only those facts about which I have been asked. He leído la declaración anterior; los hechos allí contenidos son verdaderos, según mi leal saber y entender. No sostengo que contiene todos los hechos o detalles sobre el incidente, sino sólo aquellos hechos que me han sido preguntados.*

_____ / _____ / 20 _____
            Date

_____ ☐ a.m. ☐ p.m          _____
Time Statement Completed                    Signature of Person Making Statement
                                            Firma de la persona que hace la declaración

DPD 366 (Rev. 01/17)

CU238

# DENVER POLICE DEPARTMENT

## GENERAL OFFENSE HARDCOPY

### (1316-0 THREATS TO INJURE)

GO# 2017-533672

**ARREST/CITATION - NOT
PRESENTED/REFUSED
BY DA**

**\*\*\* END OF HARDCOPY \*\*\***

CU239

# Denver Police Department Booking Slip

**AB# 2018-10034**                                                                    Page 1 of 1

| ARREST INFORMATION |
| --- |

| Arresting Officer #1 |
| --- |
| INGERSOLL, LEE A. |

| Arresting Officer #2 |
| --- |
|  |

| Location of Arrest | | Arrest Date | Arrest Time |
| --- | --- | --- | --- |
| 17TH ST/LARIMER ST | | 03/05/2018 | 1:50 pm |
| Armed with | | | |
| UNARMED | | | |

| DEFENDANT | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| Last Name | First Name | | Middle | | DOB | |
| JORDAN | CHADWICK | | HEATH | | 06/05/1982 | |
| Height | Weight | Race | | Sex | Ethnicity | Hair | Eyes |
| 5'10 | 175 | BLACK | | M | N | BRO | BRO |
| Home Address | | | | | | |
| 2246 N CLARKSON ST, Apt# A | | | | | | |
| City | | State | Zip | Phone | | Business Phone |
| DENVER | | CO | 80205 | | | () |
| Employer | | Occupation | | | | |
| Caution | | | | | | |

| CHARGE INFORMATION |
| --- |
| **GO#:** 2018-9518073 |

| VIOLATION | DESCRIPTION | SEVERITY | INV HOLD | DOMV |
| --- | --- | --- | --- | --- |
| 18-18-405 | INV HOLD-SCH 1 OR 2 MANU/DIST CTRL SUBST 14-225 GRAMS [027916] | DF | YES | NO |

| WARRANT INFORMATION | | |
| --- | --- | --- |
| GO # | WARRANT # | JURISDICTION |

| ARREST NOTES |
| --- |

Officer's arrest notes:
Injury or hospitalization information
[n/a ]

Cleared for jail by ambulance number (include ambulance company)
[n/a ]
Separations
[n/a ]

Other comments including officer safety information
[homicidal ideations. ]

DPD Use of Force Report [ ]
Prisoner Personal Property
[X ]Drivers License/ID [X ]Keys [ ]Purse [ ]Wallet [ ]Phone
[ ]Electronics (iPod, tablet etc.)[ ]
[ ]Jewelry [ ]
[ ]Money [ ]
[ ]Medications [ ]
[X ]Other (document below)
Property Documented by: [ ]BWC [ ]Station video [ ]Other (document below)
[leather gloves, belt, Visa bank card ]

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 168 of 215
Case No. 1:19-cv-02660-RM-SKC   Document 143-1  filed 08/02/23   USDC Colorado   pg 252
of 298



| University of Colorado **Denver** | Student Conduct and Community Standards<br>Student Affairs<br><br>Campus Box 196<br>P.O. Box 173364 | Denver, CO  80217-3364<br>o 303 556 3682 | f 877 556 7704<br>studentconduct@ucdenver.edu<br>ucdenver.edu/standards | **Exhibit X** |

March 5, 2018

Chadwick Jordan
2246 Clarkson St., Apt. A, 80205
Denver, CO 80203
USA

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2017094401

Dear Mr. Jordan,

I have received a report, dated February 19, 2018 which indicates you may have violated the CU Denver Student Code of Conduct. Based on the severity of the report in addition to your pattern of behavior as exhibited by you past conduct history, I am **summarily suspending you from the University of Colorado Denver and excluding you from the Auraria Campus.**

This suspension includes an **immediate exclusion from the University of Colorado Denver Campus** and Campus Village Apartments. You are not to be on campus, including attending any scheduled classes, other than to attend your scheduled meeting with our office to discuss these allegations. Violation of these restrictions may result in additional student conduct action and/or arrest. This suspension will remain in effect until such a time as your case is heard by the Office of Student Conduct and Community Standards.

According to the information I have received, you allegedly got into a verbal altercation outside of your home in August of 2017 and during this you threatened to shoot the individual and then in a different incident within the past several weeks told a different individual that you had recently purchased an AR-15 after acknowledging you should not be talking about this. This alleged behavior may be in violation of the following standards.

**Threats**
Threatening or endangering the mental and/or physical health or safety of a person.

**Violation of Local, State, or Federal Law**
Violating the established local, state, or federal laws.

Admission to the University carries with it the assumption that students will be responsible members of our community. When you chose to enroll at the University of Colorado Denver, you assumed the responsibility to uphold standards of conduct appropriate to the academic and community goals set by the University.

I have scheduled a conference for you on **Thursday, March 8, 2018, at 1:00 PM**. The conference will take place in the **Tivoli Student Union, Room 227**. The purpose of this conference is to discuss your responsibility for this incident and to determine the next steps in the student conduct process. At the time of the conference you may bring written accounts from any witnesses present during the alleged incident, as well as your own account. You may also

CU252

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 169 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-1  filed 08/02/23    USDC Colorado   pg 251
of 298

   2. Attending classes or university functions under the influence of drugs shall
      also be considered a violation of this student code of conduct. This includes
      disruptive behavior while under the influence of alcohol at official university
      functions.

Due to your arrest you were unable to appear for the Thursday, March 8, 2018 meeting or reschedule it. I
am requesting that you **contact my office** at 303-315-7311 or david.steward@ucdenver.edu before 4:00
p.m. on June 29, 2018 to **re-schedule this meeting**. This new meeting will be held via phone call as you
are still excluded from the Auraria Campus. Your input in this process is valuable as it helps me to
understand your perspective in the situation. If you fail to do so, I will proceed with this case according to
the provisions in the Code of Student Conduct, which allow me to make a decision in this case without
your involvement which could result in a hold being placed on your account.

As a reminder please use this LINK to access a document titled "What to Expect in Your Conduct
Meeting" and read the document before you come to your conduct meeting.

Thank you for your prompt attention to this matter.

Sincerely,

David Steward
Director of Student Conduct and Community Standards



**Student Conduct and Community Standards**
Student Affairs

Campus Box 196
P.O. Box 173364 | Denver, CO  80217-3364
o 303 556 3682 | f 877 556 7704
studentconduct@ucdenver.edu
ucdenver.edu/standards

June 25, 2018

Chadwick Jordan
Sent electronically to CHADWICK.JORDAN@UCDENVER.EDU

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2017094401

CHADWICK.JORDAN@UCDENVER.EDU

Dear Chadwick:

On March 5, 2018 you and I met to discuss a conduct case based on threats you made toward another individual along with the possibility of you possessing illegal weapons. At this meeting I gave you a letter informing you of these allegations and requesting you attend a meeting in my office on Thursday, March 8, 2018, at 1:00 PM to discuss these alleged violations of the Code of Student Conduct (I am including a copy of this letter with this email). Shortly after our meeting I was informed you were arrested and found with weapons in the trunk of your car as well as illegal drugs and were placed in custody. As a result of this report from Denver PD I am adding another alleged violation to the original letter I gave to you on March 5, 2018.This alleged violation is:

**Drugs:** Possessing, using, providing, manufacturing, distributing, or selling drugs or drug paraphernalia in violation of law or university policies. Use or possession of marijuana, including medical marijuana used or possessed under Colorado Constitution Article 18, section 14, is strictly prohibited on campus. Any such use or possession is a violation of the student code of conduct.

1. Students may violate the student code of conduct if in the presence of prohibited behavior involving drugs. This includes students who knew, or reasonably should have known they were in the presence of drugs, or possessed, displayed, or was in the presence of drug paraphernalia.
2. Misuse of legal substances; use of general products as intoxicants or "means to get high"; and inhaling or ingesting a substance (including but not limited to nitrous oxide, glue, paint, gasoline, solvent, etc.) other than in connection with its intended purpose is also prohibited.
3. Driving while under the influence of drugs.
4. Use of a prescription drug other than by the person to whom the drug is prescribed and in accordance with the prescription is prohibited. This includes sharing drugs such as Ritalin or Adderall.Drugs: Possessing, using, providing, manufacturing, distributing, or selling drugs or drug paraphernalia in violation of law or university policies. Use or possession of marijuana, including medical marijuana used or possessed under Colorado Constitution Article 18, section 14, is strictly prohibited on campus. Any such use or possession is a violation of the student code of conduct.

    1. Students may violate the student code of conduct if in the presence of prohibited behavior involving drugs. This includes students who knew, or reasonably should have known they were in the presence of drugs, or possessed, displayed, or was in the presence of drug paraphernalia.

CU250

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 171 of 215
Case No. 1:19-cv-02660-RM-SKC   Document 143-1  filed 08/02/23   USDC Colorado   pg 249
of 298

bring an advisor with you if you wish. I suggest that you refer to the Student Conduct Polices and Procedures at http://www.ucdenver.edu/standards for more information about your rights and responsibilities. Since you are banned from campus you will need to contact the Auraria Police Department at 303-556-5000 and request an escort to my office in the Tivoli Student Union.

Your attendance at this conference is important. If you do not attend the conference I will review the written documentation and render a decision without your input. If you are unable to attend this conference due to a reasonable conflict, academic or otherwise, you must contact me no later than twenty-four hours prior to your conference to request a new appointment.

Please remember that until the time of our meeting you are not allowed on the campus. If you have any questions please do not hesitate to contact our office at 303-556-3682. I look forward to meeting with you to resolve this situation.

Sincerely,


David Steward
Director of Student Conduct and Community Standards

CU249

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-1    filed 08/02/23    USDC Colorado    pg 248
of 215    of 298



University of Colorado **Denver**

**Student Conduct and Community Standards**
Student Affairs

Campus Box 196
P.O. Box 173364 | Denver, CO 80217-3364
o 303 556 3682 | f 877 556 7704
studentconduct@ucdenver.edu
ucdenver.edu/standards

March 5, 2018

Chadwick Jordan
2246 Clarkson St., Apt. A, 80205
Denver, CO 80203
USA

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2017094401

Dear Mr. Jordan,

I have received a report, dated February 19, 2018 which indicates you may have violated the CU Denver Student Code of Conduct. Based on the severity of the report in addition to your pattern of behavior as exhibited by you past conduct history, I am **summarily suspending you from the University of Colorado Denver and excluding you from the Auraria Campus.**

This suspension includes an **immediate exclusion from the University of Colorado Denver Campus** and Campus Village Apartments. You are not to be on campus, including attending any scheduled classes, other than to attend your scheduled meeting with our office to discuss these allegations. Violation of these restrictions may result in additional student conduct action and/or arrest. This suspension will remain in effect until such a time as your case is heard by the Office of Student Conduct and Community Standards.

According to the information I have received, you allegedly got into a verbal altercation outside of your home in August of 2017 and during this you threatened to shoot the individual and then in a different incident within the past several weeks told a different individual that you had recently purchased an AR-15 after acknowledging you should not be talking about this. This alleged behavior may be in violation of the following standards.

**Threats**
Threatening or endangering the mental and/or physical health or safety of a person.

**Violation of Local, State, or Federal Law**
Violating the established local, state, or federal laws.

Admission to the University carries with it the assumption that students will be responsible members of our community. When you chose to enroll at the University of Colorado Denver, you assumed the responsibility to uphold standards of conduct appropriate to the academic and community goals set by the University.

I have scheduled a conference for you on **Thursday, March 8, 2018, at 1:00 PM**. The conference will take place in the **Tivoli Student Union, Room 227**. The purpose of this conference is to discuss your responsibility for this incident and to determine the next steps in the student conduct process. At the time of the conference you may bring written accounts from any witnesses present during the alleged incident, as well as your own account. You may also

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 173 of 215
Case No. 1:19-cv-02660-RM-SKC   Document 143-1   filed 08/02/23   USDC Colorado   pg 247
of 298

I am looking forward to your reply.

David Steward
Director of Student Conduct and Community Standards

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15    filed 08/02/23    USDC Colorado    pg 246
of 298

July 26, 2018

Chadwick Jordan
Sent electronically to CHADWICK.JORDAN@UCDENVER.EDU & cjllc@post.com

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2017094401


Dear Chadwick:

This letter serves as notice that you allegedly violated the CU Denver Student Code of Conduct, I have attached the most recent letter sent to you on Monday, July 9, 2018 as well as the initial letter given to you during our meeting on March 5, 2018 for your reference.

Specifically, the alleged conduct code violations are:

**Threats:** Threatening or endangering the mental and/or physical health or safety of a person.

**Violation of Local, State, or Federal Law:** Violating the established local, state, or federal laws. Admission to the University carries with it the assumption that students will be responsible members of our community. When you chose to enroll at the University of Colorado Denver, you assumed the responsibility to uphold standards of conduct appropriate to the academic and community goals set by the University.

**Drugs:** Possessing, using, providing, manufacturing, distributing, or selling drugs or drug paraphernalia in violation of law or university policies. Use or possession of marijuana, including medical marijuana used or possessed under Colorado Constitution Article 18, section 14, is strictly prohibited on campus. Any such use or possession is a violation of the student code of conduct.

I understand you are facing significant criminal charges and I understand the potential impact these charges may have on your ability to participate in the conduct process. As I do need to move forward in reviewing your conduct case, I would like to provide you with two options based on the current circumstances. Please review the below options and let me know which works best for you:

1. Immediately engage in the student conduct process, schedule and complete your conduct meeting as soon as possible so a decision can be rendered in a timely manner. This conference would be via phone or Zoom video conference; or,

2. Pause the conduct process for a period of time so that you may focus on your criminal proceedings. This is something we would revisit by exploring options on a monthly basis. The current interim suspension and associated campus exclusions will remain in effect until you have scheduled and completed your conduct meeting. Ultimately, after any agreed upon timeline, the University would need to consider whether it would be willing to continue this delay or move forward sooner with the conduct process.

Please email me no later than Friday, July 27, 2018 with your decision regarding how you wish to move forward and address the above stated conduct charges.

CU246

Case No. 1:19-cv-02660-RM-JPO   Document 168   filed 12/08/23   USDC Colorado   pg 245
Case No. 1:19-cv-02660-RM-SKC   Document 143-1   filed 08/02/23   USDC Colorado   pg 245
of 298

3/5/2018

Search » Denver County CourtDenver County Court

| Date | Action | Judicial Officer | Crtrm | Dispo | Amount |
|------|--------|------------------|-------|-------|--------|
| 02/06/2019 1:00 AM | PROTECTION ORDER REVIEW HRG. | | 4A | | |
| 03/09/2018 1:00 AM | COLLECTION REVIEW | | 160Z | | |
| 02/13/2018 8:01 AM | COLLECTION LETTER SENT | | 160Z | | |
| 02/08/2018 8:21 AM | COLLECTION PHONE CALL | | 160Z | | |
| 02/07/2018 9:14 AM | PROBATION REFERRAL RECEIVED | | PROB | | |
| 02/07/2018 8:00 AM | FINE/COSTS TOTAL | | 4A | FINES DUE | |
| 02/07/2018 8:00 AM | REFER TO PROB IMMEDIATE SENT | | 4A | PROBATION SEEN | |
| 02/07/2018 8:00 AM | JURY TRIAL | BARAJAS | 4A | GUILTY PLEA IMMEDIATE SENTENCE | |
| 01/31/2018 8:15 AM | JURY TRIAL | BARAJAS | 4A | CONTINUED BY DEFENDANT | |
| 01/05/2018 12:48 PM | MISC. CORRESPONDENCE | | | | |
| 12/04/2017 8:15 AM | JURY TRIAL | ESPINOSA | 3G | CONTINUED BY DEFENDANT | |
| 12/04/2017 12:00 AM | SPEEDY TRIAL STARTS | | | | |
| 10/10/2017 10:05 AM | JURY FEE WAIVED | | 4A | | |
| 10/10/2017 10:05 AM | JURY TRIAL MOTION | | 4A | | |
| 10/10/2017 10:05 AM | PUBLIC DEFENDER APPOINTED | | 4A | | |
| 10/10/2017 9:30 AM | DISPOSITION/RESET DATE | ZOBEL | 4A | NOT GUILTY PLEA SET NEW DATE | |
| 09/26/2017 9:30 AM | DISPOSITION/RESET DATE | ZOBEL | 4A | CONTINUED BY DEFENDANT | |
| 09/11/2017 8:00 AM | PROTECTION ORDER | | 4A | PROTECTION ORDER ISSUED | |
| 09/11/2017 8:00 AM | ARRAIGNMENT | CALLUM | 4A | DEFENDANT ADVISED | |
| 09/11/2017 8:00 AM | PUBLIC DEFENDER REQUESTED | | 4A | | |
| 08/11/2017 5:50 PM | CASE ENTERED | | | | |

# Search by Case Number

Search cases by case number or AB number.

## Case Number: 18CR01675

This case is not payable online because not every charge has a disposition.

## Case Information

| Status | Case Type | Violation Date | Date Filed | Courtroom |
|---|---|---|---|---|
| OPEN | DRUG OFFENSES | 03/05/2018 | 03/08/2018 11:11 AM | 5H |
| Pay Amount: | $0.00 | | | |
| Location: | DENVER, CO | | | |
| AB Number: | 201810034 | GO Number: | 20189518073 | |

## Party Information

| Party Type | Last Name | First Name | MI | Suffix | DOB | |
|---|---|---|---|---|---|---|
| DEFENDANT | JORDAN | CHADWICK | H | | 06/05/1982 | |
| Race | Hair | Weight | Height | Eyes | Eyeglasses | |
| BLACK | BROWN | 175 | 510 | BROWN | | |
| | Attorney Number | Attorney Name | | | | Party Status |
| | | | | | | JAIL |

## Violation Information

| Violations | Description | Points | Disposition | Class Code |
|---|---|---|---|---|
| 18-18-407(1)(d)(II) | CONTROLLED SUBS-SPECIAL OFF-FIREARM | | | DF1 |
| 18-18-405(1),(2)(b)(I)(A) | CONTROLLED SUB-POSS WI-SCH 1/2 14-225G | | | DF2 |
| 18-18-403.5(1),(2)(a) | CONTROLLED SUB-POSS SCH 1/2/FLKT/CT | | | DF4 |
| 18-12-108(1),(2)(c) | WEAPON-POSS/PREV OFFENDER-BURG/ARSON/FOR | 0 | | F5 |
| 18-12-108(1) | WEAPON-POSS/PREVIOUS OFFEND-ANY PRIOR FE | 0 | | F6 |
| 18-12-108(1) | WEAPON-POSS/PREVIOUS OFFEND-ANY PRIOR FE | 0 | | F6 |
| 18-12-108(3) | WEAPON-POSS/PREV JUV OFFEND-ANY PRIOR FE | 0 | | F6 |
| 18-12-102(4) | ILLEGAL WEAPON-POSSESSION | 0 | | M1 |
| 18-1.3-801 | HABITUAL CRIMINAL | 0 | | SE |
| 18-1.3-801 | HABITUAL CRIMINAL | 0 | | SE |
| 18-1.3-801 | HABITUAL CRIMINAL | 0 | | SE |

Exhibit 2

CU259

## Sentence Information

| Date | Description | Value | Units | Due Date | Status |
|------|-------------|-------|-------|----------|--------|
| 03/06/2018 | SHERIFF SPECIAL INSTRUCTIONS | | | | |
| | COMMENT | 1 | | | |
| 03/06/2018 | PTS MAXIMUM SUPERVISION | | | | |
| | COMMENT | 2 | | | |
| | RELEASE TO PRETRIAL SERVICE | 1 | | | |

## Action Information

| Date | Action | Judicial Officer | Crtrm | Dispo | Amount |
|------|--------|------------------|-------|-------|--------|
| 03/12/2018 8:30 AM | 2ND ADVISEMENT | EDDY | 2300 | | |
| 03/08/2018 11:11 AM | CASE ENTERED | | | | |
| 03/06/2018 1:52 PM | AUTO ELECT OF REPRESENTATION | | 2300 | | |
| 03/06/2018 1:30 PM | PO/BOND TRANSF TO CASE FILED | | 2300 | | |
| 03/06/2018 1:30 PM | BOND SET | | 2300 | | |
| 03/06/2018 1:30 PM | 1ST ADVISEMENT | EDDY | 2300 | DEFENDANT ADVISED | |
| 03/05/2018 6:22 PM | DENVER CITY JAIL IN CUSTODY | | | | |
| 03/05/2018 5:10 PM | PRE-CASE ENTERED | | | | |

Case No. 1:19-cv-02660-RM-JPO     Document 168     filed 12/08/23     USDC Colorado
Case No. 1:19-cv-02660-RM-SKC     Document 143-15 filed 08/02/23   USDC Colorado   pg 267
of 298
pg 178 of 215

 University of Colorado **Denver**

**Student Conduct and Community Standards**
Student Affairs

Campus Box 196
P.O. Box 173364 | Denver, CO  80217-3364
o 303 556 3682 | f 877 556 7704
studentconduct@ucdenver.edu
ucdenver.edu/standards



September 6, 2018

Chadwick Jordan
CD# 0000671906
P.O. Box 1108
Denver, CO 80201

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2017094401

Dear Chadwick:

This is a follow-up to our conference on July 31, 2018 regarding alleged violations of the CU Denver Code of Student Conduct, as outlined in your Conference Letters dated March 5, 2018 and June 25, 2018. I will address each of the charges and associated investigation below.

**Threats**
The CU Denver Office of Student Conduct and Community Standards received a report from Denver PD (2017-533672) regarding an interaction between you, Chadwick Jordan, and another individual where you threatened to kill the individual (your neighbor) by shooting him.

During our phone conduct conference on July 31, 2018, you were asked about the interaction and allegation of threat. Chadwick, you stated you were not found guilty of anything that your car had been stolen, you had been bloodied during the incident, and your neighbors were simply trying to help out. When asked the names of the neighbors, you stated you didn't know any of the neighbor's names and did not have a good relationship with them. Chadwick, you also stated you had restraining orders out against several of the neighbors. During our conversation it was presented to you that the court paperwork for your criminal case related to these allegations states you plead guilty to the threats charge. Chadwick, you reported that you were not found guilty and stated that you and your lawyer had worked things out. At that point, you stated you would obtain documentation from your lawyer regarding how things were worked out and would send the documentation to the CU Denver Conduct and Community Standards office. You then asked for additional time as it might take several weeks to obtain the paperwork, and that extension to provide documentation was granted.

As of the time of this decision, the documentation you were to send has not been provided by you, Chadwick, or your attorney, within the established time frame.

 I received documentation from the Denver County and Municipal Court regarding the disposition in relation to these allegations. These documents indicate that you, Chadwick, plead guilty to a charge of Threats to Injure Person/Property (38-92), while the charge of Disturbing the Peace was dismissed. Chadwick, the documentation shows that you signed the plea paperwork on February 7, 2018. The documentation also indicates a number of sentencing outcomes for the guilty plea, including supervised probation for one (1) year.

Based on this documentation, I believe it more likely than not that you, Chadwick, violated the CU Denver Student Code of Conduct by threatening your neighbor, therefore a finding of responsible for the code of conduct charges is appropriate.

**Drugs**
The CU Denver Office of Student Conduct and Community Standards received a report from Denver PD (2018-9518073) regarding a controlled substance (cocaine) found in the trunk of your vehicle as it was stopped on March 5, 2018. The report described that the amount of drugs, as well as the packaging of the drugs indicated the drugs may be intended for distribution.
During the phone conduct conference on July 31, 2018 you, Chadwick, stated there were no drugs in your vehicle and further stated the Denver PD officer intentionally lied in the report to convict you and the police officer was on a "witch hunt". You further alleged that the police officer was a racist and discriminatory.

Based on the available evidence at the time of this decision, I believe it is more likely than not that there was cocaine in the trunk of your car, and it was more likely than not packaged as described in the report, indicating it may be intended for drug distribution, and therefore you, Chadwick, violated the CU Denver Student Code of Conduct. A finding of responsible for the code of conduct charges is appropriate.

**Violation of Local, State, or Federal Law. (Weapons)**
The CU Denver Office of Student Conduct and Community Standards received information, Denver County Court case number 18CR01675, which stated that you, Chadwick, had firearms/illegal weapons in the trunk of your car.

During the phone conduct conference on July 31, 2018, you stated there were no weapons in your vehicle and that the Denver PD officer intentionally lied in the report to convict you.

However, based on the available evidence at the time of this decision, and my conversation with you, I believe it is more likely than not that you, Chadwick, violated the CU Denver Student Code of Conduct by possessing serviceable firearms in the trunk of your car. Therefore, a finding of responsible for the code of conduct charges is appropriate.

Based on our phone conference, the information and written documentation referenced above, and using a preponderance of the evidence standard, I have made the following determinations regarding the alleged violations outlined in your original conference letters:

**Threats – Responsible**
Threatening or endangering the mental and/or physical health or safety of a person.

**Drugs or Drug Paraphernalia – Responsible**
Possessing, using, providing, manufacturing, distributing, or selling drugs or drug paraphernalia in violation of law or University policies. Use or possession of marijuana, including medical marijuana used or possessed under Colorado Constitution Article 18, section 14, is strictly prohibited on campus. Any such use or possession is a violation of the student code of conduct. 1. Students may violate the student code of conduct if in the presence of prohibited behavior involving drugs. This includes students who knew, or reasonably should have known they were in the presence of drugs, or possessed, displayed, or was in the presence of drug paraphernalia. 2. Misuse of legal substances; use of general products as intoxicants or means to get high; and inhaling or ingesting a substance (including but not limited to nitrous oxide,

CU268

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-15    filed 08/02/23    USDC Colorado    pg 269
of 298

glue, paint, gasoline, solvent, etc.) other than in connection with its intended purpose is also prohibited. 3. Driving while under the influence of drugs. 4. Use of a prescription drug other than by the person to whom the drug is prescribed and in accordance with the prescription is prohibited. This includes sharing drugs such as Ritalin or Adderall. (1)Students may violate the student code of conduct if in the presence of prohibited behavior involving drugs. This includes students who knew, or reasonably should have known they were in the presence of drugs, or possessed, displayed, or was in the presence of drug paraphernalia. (2) Attending classes or university functions under the influence of drugs shall also be considered a violation of this student code of conduct. This includes disruptive behavior while under the influence of alcohol at official university functions.

**Violating any federal, state, local, or university law, regulation, or policy. – Responsible**

You have been sanctioned as follows:

**Disciplinary Expulsion**
The purpose of Disciplinary Expulsion is to protect the learning environment on the CU Denver campus. As a result of this incident and the culmination of other incidents, you are being expelled from the University of Colorado Denver. This expulsion also includes an exclusion from the University of Colorado Denver Campus and Campus Village Apartments. Expulsion is permanent removal from the University with no opportunity to return. Additionally, you are not eligible to enroll in any other University of Colorado campus.

**Auraria Campus Exclusion**
The purpose of the Auraria Campus Exclusion is to protect the learning environment on the Auraria Campus. As a result of this incident and the culmination of other incidents, you have been permanently excluded from the Auraria Campus beginning March 5, 2018.

This means that you are not eligible to be anywhere on the Auraria Campus. A hold has been placed on your account. Also, as a result of this expulsion and exclusion you are not eligible to enroll at any of the Auraria institutions including CU Denver, Metropolitan State University of Denver or the Community of College of Denver. If you are seen anywhere on the Auraria Campus during the period of your expulsion and exclusion, the police will be notified and you may be subject to additional Student Conduct or Criminal action.

If you have been given a sanction of probation with loss of good standing or higher, you have the right to appeal this decision. Such an appeal must be made in writing and submitted via the Student Conduct and Community Standards website, http://www.ucdenver.edu/life/services/standards/students/Pages/FAQ.aspx. This appeal must be submitted no later than September 11, 2018. More information about the appeals process can be found on the above listed webpage.

Sincerely,

David Steward
Director of Student Conduct and Community Standards

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 143-215    filed 08/02/23    USDC Colorado    pg 270
of 298



University of Colorado **Denver**

**Student Conduct and Community Standards**
Student Affairs

Campus Box 196
P.O. Box 173364 | Denver, CO  80217-3364
o 303 556 3682 | f 877 556 7704
studentconduct@ucdenver.edu
ucdenver.edu/standards

March 5, 2018

Chadwick Jordan
2246 Clarkson St., Apt. A, 80205
Denver, CO 80203
USA

                                        **PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2017094401

Dear Mr. Jordan,

I have received a report, dated February 19, 2018 which indicates you may have violated the
CU Denver Student Code of Conduct. Based on the severity of the report in addition to your
pattern of behavior as exhibited by you past conduct history, I am **summarily suspending you
from the University of Colorado Denver and excluding you from the Auraria Campus.**

This suspension includes an **immediate exclusion from the University of Colorado Denver
Campus** and Campus Village Apartments. You are not to be on campus, including attending
any scheduled classes, other than to attend your scheduled meeting with our office to discuss
these allegations. Violation of these restrictions may result in additional student conduct action
and/or arrest. This suspension will remain in effect until such a time as your case is heard by the
Office of Student Conduct and Community Standards.

According to the information I have received, you allegedly got into a verbal altercation outside
of your home in August of 2017 and during this you threatened to shoot the individual and then
in a different incident within the past several weeks told a different individual that you had
recently purchased an AR-15 after acknowledging you should not be talking about this. This
alleged behavior may be in violation of the following standards.

**Threats**
Threatening or endangering the mental and/or physical health or safety of a person.

**Violation of Local, State, or Federal Law**
Violating the established local, state, or federal laws.

Admission to the University carries with it the assumption that students will be responsible
members of our community. When you chose to enroll at the University of Colorado Denver, you
assumed the responsibility to uphold standards of conduct appropriate to the academic and
community goals set by the University.

I have scheduled a conference for you on **Thursday, March 8, 2018, at 1:00 PM**. The
conference will take place in the **Tivoli Student Union, Room 227**. The purpose of this
conference is to discuss your responsibility for this incident and to determine the next steps in
the student conduct process. At the time of the conference you may bring written accounts from
any witnesses present during the alleged incident, as well as your own account. You may also

CU270

Exhibit AA

Make blank

Pursuant to 28 U.S.C. Section 1332, Plaintiffs Christal [illegible] business entity, C. [illegible], LLC, appearing pro se, In January 2018, entered a contract with [illegible] International Co. As [illegible] the plaintiff [illegible] 193,922 [illegible] from attack of [illegible] Supposedly of the Wells Fargo [illegible] the plaintiff [illegible] account Contacted RBC [illegible] Bank [illegible] Somehow a digital check [illegible] altered C. [illegible], LLC, is claiming this is a breach of contract, and fiduciary duty since it was improperly [illegible] cause to [illegible] alter any [illegible] Also [illegible] with a [illegible] LLC [illegible] check could [illegible] Wells Fargo [illegible] ultimately [illegible] 193,922.37 from C. [illegible] LLC's account

Statement of Facts

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 198 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-1    filed 08/02/23    USDC Colorado    pg 273
of 298





3B, 9L, JORDAN

Chadwick Jordan
8853 Colorado Blvd. A-101
Denver, CO 80229

STUDENT CONDUCT AND COMMUNITY STANDARDS
Campus Box 196
P.O. Box 173364
Denver, CO 80217-3364

# APPEAL

Regarding Case Number: 2017094401

Here comes now respectfully Chadwick Jordan, the respondent appealing the Student Conduct Conference of July 31, 2018.

In support of the respondent states the following in regards to the charges of Threats:

1) The conference was not conducted fairly in light of the charges and information presented because:
   - There is no evidence-or any testimony, documents or tangible objects, that tends to prove or disprove the existence of any alleged facts. Hearsay is not evidence. The student conduct and community Standards Board states they received report (2017-5336720) from the Denver PD. This is not what they know personally as stated but only what others have said, evidently. There is no witness to any of these charges, there is not anyone who seen, knows or can vouch for these charges, and there is not anyone who gave testimony under oath or affirmation (1) in person, (2) by oral or written deposition, or (3) by affidavit. The proof is the plea deal, which found none of these charges to be true. As David stated in his decision there was a plea deal, which did not include any of the said charges. In fact the plea deal is the only legally binding material in this matter; or evidence therefore which proves my point that none of these charges are true. The burden of proof is not on me, therefore it is not my duty to provide the conduct office with the courts decision or the plea deal. It is foolish of the student conduct and community Standards Board to take hearsay of hearsay; or just what someone said someone said as evidence, especially with no means of corroboration. David never seen the plea deal therefore any evidence of these charges. The respondent did not threaten anyone nor is there any proof to the contrary. The respondent was never found guilty or plead to the charges of a threat as he has explained to David, now over and over, in which David does not want to believe, and there is no evidence otherwise. Davids assumptions and assertions are of full bias and prejudice in light of the charges and information presented.
   - The respondent was not given the opportunity to prepare and present relevant information to be considered in the appropriate outcome. As David stated in his decision letter I was to provide David documentation of the plea deal to be exact as a courtesy, because David knew then as he does now there is no evidence whatsoever to these charges I am not guilty of. David was aware

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 199 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-15 filed 08/02/23    USDC Colorado    pg 274
of 298

and knew I was not able to prepare and present this relevant information, as he stated in the
respondents Sept. 6, 2018 Conduct Record Request. Stating he had to provide me records
outside of his established procedure because I am currently unable to review the records in the
Office of Student Conduct and Community Standards. The reason I am not able to prepare and
present relevant information, which would exonerate me is, due to the fact I am in a trial which
I do not have a bail. I should at least be given a reasonably time to to prepare and present
relevant information when my current trial is over. These circumstances render an unbiased and
fair outcome impossible, therefore this hearing was not done in conformity with proscribed
procedures.

- These records (2017-5336720) are not public information so David needs to state  who the
complaining party is because the Denver PD is not at liberty to release private information.  The
threat case David is speaking of is a city ordinance violation which is not listed in public
records or background checks. If the Denver PD is the complaining party this is  a invasion of
the respondents privacy which is a constitutionally protected right, and discrimination which is
a Civil Rights violation.  Police do not have a policy and to report city ordinance violations on
everyone and in fact, this very act is against the Denver Pd's policy.  Furthermore this is a
extreme case of invasion of privacy as stated because the discovery in these cases are
intentionally not private for the protections of all parties involved.  The parties involved often
do not even view this information.  There must be a writ of mandamus submitted to the courts
that meet detailed criteria. In other words, the Freedom of Information Act does not increase
discovery rights in agency proceedings and cannot be used to transfer the adjudication of
discovery disputes from the agencies to the courts. **This is a plain case of invasion of privacy,**
therefore this conference was not conducted fairly in light of the charges and information
presented; and did not conform with proscribed procedures giving the respondent the
opportunity to prepare and present relevant information.

2. In the light of above information there should be no sanction.
3. I did not know the Denver report David was referring to was protected under the freedom of
   information laws.  This is a relevant fact not brought out in the original conference. I did not
   know David would be relying on such information.  I did not know I would be in trial with no
   option of bail, so we could actually know what was plead to, instead  of worthless information
   constitutionally protected.  And this would be a courtesy on my behalf nevertheless.

In support of the respondent states the following in regards to the charges of Drugs or Drug
Paraphernalia, and violation any federal, state, local or university law, regulation or policy:
1)

- These charges are ridiculous as I told David during the conference, "repeatedly." I did not have
any drugs or any weapons in my vehicle.  There is no evidence of such either.  There is no res
gestae. This hearing was not conducted fairly in light of the charges and information presented,
because the respondent did not have a weapon or drugs which will be proven upon the
conclusion of trial; or due process. The respondents trial or constitutional right to due process
is not over therefore, this conduct hearing is not in conformity with proscribed procedures
giving the respondent the opportunity to prepare and present the relevant information of the
respondents innocence. I do not have any idea why CU Denver office of student conduct and
community standards would believe such allegations.
- The report used in the conference (2018-9518073), and 18CR01675, which as stated the Denver

CU274

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 200 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-1    filed 08/02/23    USDC Colorado    pg 275
of 298

PD gave the CU Denver office of student conduct and community standards is a violation of the Denver Pd's policy and an invasion of the respondents privacy, and a violation of the freedom of information laws, and a violation of the respondents constitutional rights, including due process. Why would people do this is beyond me. In fact my attorney wont even let my mother see this information. This information is protected by attorney client privilege as well. CU Denver office of student conduct and community standards should not eve have this information. I am suffering and it ridiculous I was questioned, badgered and charged. Therefore, the conference was conducted unfairly in light of the charges and information presented.

- In fact this is an active case I am in trial for which I plead the fifth. I have the constitutional right to due process, and privacy, which the CU Denver office of student conduct and community standards; or David does not respect. Therefore, the conference was conducted unfairly in light of the charges and information presented. There is a obvious bias and prejudice, I should not have to say I am innocent until proven guilty.
- The fact that this is still a active case placed under the jurisdiction of a district, going thru due process, this conference was not conducted in conformity with proscribed procedure giving the respondent the opportunity to prepare and present relevant information to be considered in the determination of an appropriate outcome. How could the respondent prepare and present relevant information when all the information is not known. How could the CU Denver office of student conduct and community standards, assume to know such information under investigation.
- This is a blatant invasion of my privacy, and disregard of my constitutional rights. CU Denver office of student conduct and community standards and David should be held accountable for such violations and his source or the Denver PD. This appeal shall be granted because this conference was not conducted fairly in light of the charges and information presented, and in conformity with proscribed procedures giving both the respondent the opportunity to prepare and present relevant information to be considered in the determination of an appropriate outcome.

2) There should not be any sanctions at all.
3) There is new information, sufficient to alter the decision or other relevant facts not brought out in the original conference, which was not now to the respondent at the time. First off the respondent did not know the reports CU Denver office of student conduct and community standards relied on were in violation of the freedom of information laws, and the Denver PD and CU Denver office of student conduct and community standards was invading the respondent privacy and violating his constitutional rights, including his constitutional right to due process. Furthermore, the respondent did not know the district court would accept the respondents civil lawsuit against all the actors involved regarding these charges or that DORA would approve his claim against the actors involved in these charges.

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 201 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-11 filed 08/02/23    USDC Colorado    pg 276
of 298

# 3B, 9L, JORDAN
# Appeal

- This conference was not conducted fairly in light of the charges and information presented and in conformity with proscribed procedures giving both the respondent the opportunity to prepare and present relevant information to be considered in the determination of an appropriate outcome, because the University or the Office of Student Conducted Breached their contract, by charging the respondent with Student code of conduct violations the respondent does not meet the elements of. The charge of Threats and Drugs or Drug Paraphernalia, specifically states it has to occur on campus, which, it did not, nor is there any indication of otherwise; nor does the record or our charges Support such falsity. Furthermore under the there procedure rules; or conference rules they state that the respondent is to be given a opportunity for a face to face, which the respondent was not. The respondents student contract has yet to be scrutinized. There is extreme inequality of bargaining power so unreasonable terms and ambiguities against the drafting party should be construed.

- The fact that the charges of drugs and threats requires the student to be on campus and the charge of violating and federal, state, local or university law, regulation,or policy is so vague- the student was not on campus so he could not of violated the charge of drugs or threats, in fact he was not even accused of or indicated of violating any laws, regulations, or policy's pertaining to drugs or (weapon) to bring this said charge about. And the charge of threats is a city ordinance which does not fit under this definition either.- This provision is invalid on constitutional grounds. The student is only obligated to abide by "reasonable" regulations and not regulations of his character.

- This conference was not conducted fairly in light of the charges and information presented and in conformity with proscribed procedures giving both the respondent the opportunity to prepare and present relevant information to be considered in the determination of an appropriate outcome. The respondent was not awarded the fundamental tenets of due process as the right to be present during testimony, to cross-examine witnesses, to receive advance notice of evidence, to have an attorney present during hearings, or to have a tape recording of the transcripts of the proceedings. There is not a possibility of a fair hearing, because the respondent was not awarded the opportunity to cross-examine witnesses. In, fact there is not a witness specified at all. The respondent has not viewed the, "evidence," used against him. The failure to provide the respondent with a tape recording of the conference or proceedings is likely to render this appeal illusory.

- This conference was not conducted fairly in light of the charges and information presented and in conformity with proscribed procedures giving both the respondent the opportunity to prepare and present relevant information to be considered in the determination of an appropriate outcome. The respondent had been suspended for up o ten days without a hearing, in violation of the procedural due process component of the Fourteenth Amendment. On the 5th day of March, 2018 the respondent was suspended and did not receive notice of charges until the 25th day of June, 2018. This is a arbitrary deprivation of liberty, the student or respondent was not given an oral or written notice of charges against him, an explanation of the evidence or a

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 202 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 148-1   filed 08/02/23   USDC Colorado   pg 277
of 298

opportunity to present his side of the story within ten days or less. This is an expulsion hearing which requires more formal procedures.

- This conference was not conducted fairly in light of the charges and information presented and in conformity with proscribed procedures giving both the respondent the opportunity to prepare and present relevant information to be considered in the determination of an appropriate outcome. The respondent was not entitled to the presumption of innocence. More precisely the school should bear the burden of production of evidence to sustain the charges against the student. Beyond the burden of proof, the school should have an established standard of production and only discipline a student if there is , at a minimum, substantial evidence to support the charges. No court would uphold any of this administrative body's ruling, which is not even supported by evidence to reasonably base a decision. There is no established standard of production at this school, and there is no substantial evidence to support these charges. In this expulsion hearing, the equivalent of capital punishment in academia, these charges should go even further and have to be proved by clear and convincing evidence. Also, the respondent/ student has not had the opportunity to have access to counsel in this case.

- This conference was not conducted fairly in light of the charges and information presented and in conformity with proscribed procedures giving both the respondent the opportunity to prepare and present relevant information to be considered in the determination of an appropriate outcome. In order for a school's disciplinary procedure to be exercised "fairly" and in "good faith" it must satisfy two test.   There must be "just cause" by a preponderance of the evidence, which suggest that the school carries the burden of proving it is more likely than not that an offense has occurred. There is no legally sufficient reason to bring these charges. In fact this is a malicious prosecution, because this case was instituted by one person from motives that are wrongful or improper-The respondent did nothing  to the "claimant" in order to cause these charges to be brought- and there is no probable cause to sustain these charges. Second, a school must create a process that gives students accused of misconduct a fair opportunity to contest the charges, which includes, in serious cases, a hearing before an impartial panel. The respondent/student was not given a fair opportunity to contest the charges, especially since this is a serious case, which would require an impartial panel.

- The University cannot tell its students that certain procedures will be followed and then fail to follow them. In a hearing on a serious disciplinary matter there is simply too much at stake for the respondent /student to countenance the university;s failure to abide by the rules it has itself articulated. The respondent has not had a fair hearing since attending the university of Colorado-Denver. Thus, far superior evidential weight is in the respondent/students favor.

- Without question it is imperative to protect students, but this protection must not come at the expense of procedural safeguards designed to resolve credibility questions and lead to a reliable determination of the factual issues. The fourteenth amendment to due process prevails at public schools such as this . A good student disciplinary procedure should go beyond the constitutional minimum to avoid arbitrariness and to promote reasonable decision making and basic fairness. This conference was not conducted fairly in light of the charges and information presented and in conformity with proscribed procedures giving both the respondent the opportunity to prepare and present relevant information to be considered in the determination of an appropriate outcome.

CU277

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 203 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-3    filed 08/02/23    USDC Colorado    pg 278
of 298

- The student/respondent has a right to a written notice of the charges and evidence. The respondent was was not given this opportunity. Among the most basic procedural protections, this notice should advise the student of the charges against him as well as the nature of the evidence. The only charges the defendant was notified of prior to the phone conference was drugs and a threats charge, in the June 25, 2018 letter. The defendant was not made aware of the Violation of Local, State, or Federal Law charge until he received the decision letter dated Sept. 6, 2018. The written statement should further include the grounds which, if proven, would justify discipline, and the student should not be subjected to punishment on the basis of some ground other than that stated in the written charge. The formal notice should inform the student of the date, time and place of the disciplinary hearing and afford him or her sufficient time to prepare a defense. The school also failed in the interest of fairness and reliability, due to the fact the school should have an ongoing duty to disclose to the student any exculpatory evidence. This conference was not conducted fairly in light of the charges and information presented and in conformity with proscribed procedures giving both the respondent the opportunity to prepare and present relevant information to be considered in the determination of an appropriate outcome.

- Even if the benefit cannot be shared equally, there are two other reasons that a student accused of such serious charges should be entitled to the assistance of counsel in a campus disciplinary hearing. First, because an accused student's statements in a hearing may be relevant to subsequent or concurrent criminal proceedings, accused students should be entitled to representation by an attorney when they face potential criminal charges arising out of the same set of facts that led to the school's disciplinary charges. Otherwise, the respondent in this position faces the proverbial hobson's choice: they can meaningfully defend themselves in the disciplinary hearings, potentially incriminating themselves and certainly exposing the strengths and weaknesses of the case to the criminal prosecutor, or-wanting most of all to avoid going to prison-they can protect their criminal defense by opting to to contest the school's charges, virtually ensuring expulsion. Here the stakes are enormous and basic fairness requires that the accused student be permitted representation by counsel. Second , faced with serious disciplinary consequences, including expulsion, the accused student undoubtedly experienced an intense emotional response. School disciplinary hearings are intimidating; as a result, the student may not be forced to "go it alone"-an attorney can better articulate the student's position and protect his considerable interests. Therefore, this conference was not conducted fairly in light of the charges and information presented and in conformity with proscribed procedures giving both the respondent the opportunity to prepare and present relevant information to be considered in the determination of an appropriate outcome.

- While the university's obligation to keep members of its community safe from crimes is of great importance, at the same time the university cannot tell its students that certain procedures will be followed and then fail to follow them. In a hearing on serious discipl9nary matter there is simply too much at stake for an individual student to countenance the university's failure to abide by the rules it itself articulated.

CU278

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 204 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-1 filed 08/02/23    USDC Colorado    pg 279 of 298

# 3B, 9L, JORDAN

In support of the respondent states the following in regards to all of the charges:

- All of the information in this appeal determines that the conference was not conducted fairly in light of the charges and information  presented, and in conformity with proscribed procedures giving the Respondent the opportunity to prepare and present relevant information to be considered in the determination of an appropriate outcome. No deviations from designated procedures are minor; or the deviations from designated procedures are serious, which is basis for sustaining this appeal.  There is a demonstrable adverse effect on the outcome of the conference.

- All of the information in this appeal determines the sanctions imposed were inappropriate for the violation of the Student Code of Conduct, which the student was found to have committed.

- All of the information in this appeal is new and sufficient to alter the decision, and all of the information in this appeal is relevant facts not brought out in the original conference.  None of this information and/or facts were known to the Respondent  appealing at the time of the original conference.

This appeal was mailed timely and within the fourteen (14) day timeline of receipt of Auraria Case No. 18-0497, and Denver Case No. 18-9518073, 18-146667, and the University of Colorado Student Conduct and Community Standards Case No. 2017094401, notice.  This is illustrated in the USPS tracking No. 7014 0150 0000 5395 3571, located on usps.com, where the Respondents mail room did not receive the mentioned decisions until the 15th day of September, 2018.  Furthermore, as illustrated in the attached letter from the respondents mail room, they delivered the decisions to the  Respondent on the 18th day of September, 2018

# CERTIFICATE OF SERVICE

I CERTIFY that I have on this 25th day of September. 2018 sent by USPS a true and complete copy of an Appeal to the university of Colorado student conduct and community standards decision, regarding case no. 2017094401,  located at the executive office, Auraria higher education center, P.O. Box 173361, Campus Box A, Denver, Colorado 80217.

CHADWICK JORDAN
8853 Colorado Blvd., A-101
Thornton, CO 80229

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 205 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 148-1 filed 08/02/23    USDC Colorado    pg 280
of 298

In support of the respondent states the following
in regards to all of the charges:

• All of the information in this appeal determines
that the conference was not conducted fairly, in
light of the charges and information presented, and
in conformity with prescribed procedures giving the
respondent the opportunity to prepare and present
relevant information to be considered in the
determination of an appropriate outcome.

• All of the information in this appeal
determines the sanctions imposed were inappro-
priate for the violation of the student
code of conduct, which the student was found
to have committed

• All of the information in this appeal is new
and sufficient to alter the decision, and all
of the information in this appeal is relevant
facts not brought out in the original
conference. None of this information and/or
facts were known to the respondent applying
at the time of the original conference.

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC    Document 148-215    filed 08/02/23    USDC Colorado    pg 281
pg 206 of 215
of 298

This appeal was mailed timely and within
the fourteen (14) day timeline of receipt of
Aurora Case No. 18-0497 and Denver Case No.
18-9518073, 19-14667 and the University of
Colorado Student Conduct and Community
Standards Case No. 2017074901, notice.
This is illustrated in the USPS tracking
No. 70140150 0000 5395 3571, located
on usps.com, where the Respondents mail
room did not receive the mentioned decisions
until the 15th day of September, 2018.
Furthermore, as illustrated in the letter
that is attached from the respondents
mail room, they did not deliver the
decisions to the Respondent until the
18th day of September, 2018

Case No. 1:19-cv-02660-RM-JPO   Document 168   filed 12/08/23   USDC Colorado
pg 201 of 315
Case No. 1:19-cv-02660-RM-SKC   Document 148-3   filed 08/02/23   USDC Colorado   pg 282
of 298

~~DENVER COUNTY COURTHOUSE COURT~~
~~DENVER COUNTY COLORADO~~
~~520 W. COLFAX~~
~~DENVER, CO 80204~~

CHADWICK JORDAN
Plaintiff(s):
*Complaining Party*

Defendant(s):

~~▲ COURT USE ONLY ▲~~

Chadwick Jordan
8853 Colorado Blvd, A101
Thornton, CO 80229
C[...]
303-286-1997

Case Number: 2017 094901

~~Div.: Ctrm.:~~

CERTIFICATE OF SERVICE

CERTIFICATE OF SERVICE
I CERTIFY that I have on this 25 day of ~~August~~ *Sept*, 2018, sent by *legal mail, from the Denver Sheriff*
*Department*, a true and complete copy of an Appeal to the Undated Student
Conduct and Community Standards decision.
to: Executive office
Auraria Higher Education Center
P.O Box 173361, Campus Box A
Denver, Colorado 80217

Chadwick Jordan

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 208 of 215
Case No. 1:19-cv-02660-RM-SKC   Document 143-1   filed 08/02/23   USDC Colorado   pg 283
of 298

3B – Jordan

To whom it may concern,


The envelope that was delivered to inmate Jordan was received by the Denver Sheriff Department on 9/18/2018. It may have been at the post office prior, But it was delivered to inmate Jordan on 9/18/2018.


Thank you,

D/S Sewitsky

9/21/18

Case No. 1:19-cv-02660-RM-JPO   Document 168   filed 12/08/23   USDC Colorado
pg 209 of 215
Case No. 1:19-cv-02660-RM-SKC   Document 148-3   filed 08/02/23   USDC Colorado   pg 284
of 298

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____  ☑ Agent<br>☐ Addressee<br>B. Received by (*Printed Name*)   C. Date of Delivery<br>Alan Sewisky   11/6/18 |
| 1. Article Addressed to:<br><br>Chadwick Jordan<br>CO# 0000671906<br>P.O. Box 1108<br>Denver, CO 80201 | D. Is delivery address different from item 1?  ☐ Yes<br>If YES, enter delivery address below:  ☐ No<br><br>NOV - 8 REC'D |
| ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖<br>9590 9402 3094 7124 8507 24 | 3. Service Type<br>☐ Adult Signature<br>☐ Adult Signature Restricted Delivery<br>☐ Certified Mail®<br>☐ Certified Mail Restricted Delivery<br>☐ Collect on Delivery<br>☐ Collect on Delivery Restricted Delivery<br>☐ Insured Mail<br>☐ Insured Mail Restricted Delivery ($500)   ☐ Priority Mail Express®<br>☐ Registered Mail™<br>☐ Registered Mail Restricted Delivery<br>☐ Return Receipt for Merchandise<br>☐ Signature Confirmation™<br>☐ Signature Confirmation Restricted Delivery |
| 2. Article Number (*Transfer from service label*)<br>7006 0100 0005 2521 3260 | |
| PS Form 3811, July 2015 PSN 7530-02-000-9053 | Domestic Return Receipt |

CU284

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
Case No. 1:19-cv-02660-RM-SKC   Document 148-1   filed 08/02/23   USDC Colorado   pg 285
of 298

 University of Colorado **Denver**

**Student Conduct and Community Standards**
Student Affairs

Campus Box 196
P.O. Box 173364 | Denver, CO 80217-3364
o 303 556 3682 | f 877 556 7704
studentconduct@ucdenver.edu
ucdenver.edu/standards



November 2, 2018

Chadwick Jordan
Sent electronically to CHADWICK.JORDAN@UCDENVER.EDU

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2018052201

Dear Mr. Jordan,

I am in receipt of your letter appealing the decision of your hearing from July 31, 2018, conducted by David Steward. The Code of Student Conduct lists three reasons for which a student may appeal a decision:

1. To determine whether the conference was conducted fairly in light of the charges and information presented, and in conformity with proscribed procedures giving both the Respondent and complaining parties the opportunity to prepare and present relevant information to be considered in the determination of an appropriate outcome. Minor deviations from designated procedures will not be a basis for sustaining an appeal unless there is a demonstrable adverse effect on the outcome of the conference.

2. To determine whether the sanctions(s) imposed were appropriate for the violation of the Student Code of Conduct, which the student was found to have committed.

3. To consider new information, sufficient to alter the decision or other relevant facts not brought out in the original conference, because such information and/or facts were not known to the person appealing at the time of the original conference. This does not include information that was known at the time of the conference but was not shared.

Your conduct case and all accompanying appeal materials that you provided were reviewed by an appeal review committee member and the committee member has found that your appeal does not meet any of the three grounds listed above.

Therefore, the decision from July 31, 2018 still stands.

Please contact The Office of Student Conduct at 303-315-7310 should you have any questions regarding this letter.

Sincerely,

Kristin Kushmider
Dean of Students

CC:   David Steward, Director, Office of Student Conduct and Community Standards
      Raul Cardenas, Associate Vice Chancellor for Student Affairs

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 211 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-3    filed 08/02/23    USDC Colorado    pg 286
of 298

| District Court<br>Denver County, Colorado<br>Court Address: Lindsey-Flanigan Courthouse<br>520 West Colfax Avenue, Denver, Colorado  80204 | |
|---|---|
| **PEOPLE OF THE STATE OF COLORADO**<br>**vs.**<br>**Defendant:** Chadwick H. Jordan | DATE FILED: October 12, 2020 2:14 PM<br>CASE NUMBER: 2018CR1675<br><br>**COURT USE ONLY** |
| Office of Probation Department<br>Denver Adult Probation Department<br>303 West Colfax Avenue, Department 501<br>Denver, Colorado  80204<br>Phone: 303-607-7000    Fax: 303-607-7002 | Case Number:  18CR1675<br><br>ML Number:  84029050<br><br>Courtroom:  1G |
| **ADDENDUM COMPLAINT FOR REVOCATION OF PROBATION** | |

On October 18, 2019, the defendant was granted Probation for a term of two years to be served in Veterans Court for Controlled Substance-Possession with Intent/Distribute-Schedule 1/2 (DF3) by the Honorable Edward D. Bronfin, Judge.

On June 22, 2020, a revocation complaint was filed.

Since the revocation was submitted on June 22, 2020, the defendant has failed to comply with the terms and conditions set forth by the Court.

**VIOLATION:  Term and Condition number 1**

On June 26, 2020, in Denver County District Court case number 20CR3807 the defendant was charged with Second Degree Assault-cause Injury with Deadly Weapon (F4)-offense date June 11, 2020.  As of June 28, 2020, the defendant posted bond and is scheduled for Arraignment on November 30, 2020 in Courtroom 4G.

**PRE-SENTENCE CONFINEMENT CREDIT:**  303 days

**VICTIM NOTIFICATION (VNOT):**  Not Applicable - offense is not a VRA crime

**RECOMMENDATION**

The defendant is no longer appropriate for supervision by the Denver Adult Probation Department; therefore, it is respectfully recommended Probation be revoked and sentence to the Department of correction be imposed.

Dated the 12th day of October 2020.

_____
Donta McNeill
Probation Officer

_____
Scott Prendergast
Supervisor

1

CU286

Case No. 1:19-cv-02660-RM-JPO    Document 168    filed 12/08/23    USDC Colorado
pg 212 of 215
Case No. 1:19-cv-02660-RM-SKC    Document 143-15 filed 08/02/23    USDC Colorado    pg 188
of 298



Exhibit DD
B11111

# CU Denver Student Conduct Suspension Checklist

After the conduct conference:
- ✓ Determine if the sanctions should include a campus ban or not.

- ✓ Assign other sanctions as needed.

- ✓ Assign a follow-up meeting as a sanction to be held as the student returns from suspension.

- ✓ Send the decision letter to the student including appeal information. If the sanctions included an Auraria Campus Ban carbon copy Auraria PD, CU PD, MSU conduct office, and the CCD conduct office on all decision letters.

- ✓ Set the next deadline date in Maxient to match the appeal deadline.

- ✓ If the appeal is submitted allow time for the appeal to run the full course.

After the appeal or the appeal deadline:
- ✓ Place the suspension hold in CU-SIS. The start date should match the date of the results notification.

- ✓ Send the suspension notification email to the registrar's office, the financial aid office, and the bursar's office.

- ✓ If necessary send the campus ban notification to AHEC PD, CU PD, MSU, and CCD. This notification will include name, date of birth, address, and phone number.

Upon the student's return:
- ☐ Hold the follow-up meeting to discuss moving forward successfully.

- ☐ Remove suspension holds from CU-SIS.

- ☐ If appropriate notify AHEC PD, CU PD, MSU, and CCD of the lifting of the campus ban.

Case No. 1:19-cv-02660-RM-JPO   Document 168   filed 12/08/23   USDC Colorado
pg 213 of 215
Case No. 1:19-cv-02660-RM-SKC   Document 148-11 filed 08/02/23   USDC Colorado   pg 187
of 298



University of Colorado
Denver

Office of Student Conduct and Community Standards

Campus Box 196
P.O. Box 173364 | Denver, CO 80217-3364
o 303 556 2444 | f 303 352 3751
ucdenver.edu/standards

# Authorization for Release of Information

Please refer to the current CU Denver Catalog for information regarding the release of information. In compliance with the Family Rights and Privacy Act (FERPA) regulation 34 C.F.R. part 99.30, the disclosure of information from a student's education record requires the parent or eligible student to provide signed and dated written consent before CU Denver discloses personally identifiable information from the student's education records, except as provided in section 99.31.

Student Name: _Chadwick Jordan_   Student ID#: _830282211_

Address: _2246 N Clarkson St_   Phone#: _720 273 9741_

_____

I, _Chadwick Jordan_ , authorize the Office of Student Conduct and Community Standards to release:

✓  Any and all of my student conduct records
____  Only my records associated with the incident of _____
____  All of the following information/records:

_____

_____

_____

I permit the above listed information to be released to: (*please be specific and list all names that apply*)

_Omar Montgomery_

_____

Authorization to release expires (date): _____
        (*If left blank, authorization will expire one year after signing*)

By signing below, I am authorizing the Office of Student Conduct and Community Standards to release to the person(s)/organization specified above the information specified above for the timeframe I have indicated.

_____

(Student Signature)                                    (Date)

This form can be dropped off in Tivoli 227 or faxed to 303-352-3751. If you have any questions regarding this from please contact us directly at 303-556-2444

CU187

US POSTAGE

quadient
FIRST-CLASS MAIL
GROUND ADV
IMI
$009.00 ℮
12/06/2023 ZIP 80926
043MI31232237

**Colorado Department of Corrections**
Name: Chalmark Sodahl
Register Number: 159629
Unit: 20C
Box Number: 40250 Hwy 115
City, State, Zip: Canyon, CO 80826

UNITED STATES DISTRICT COURT

901 19th Street

DENVER, CO 80294





PRIORITY
★ MAIL ★

TRACKED
INSURED

UNITED STATES
POSTAL SERVICE ®

For Domestic and International Use

Label 107R, May 2014

UNITED STATES
POSTAL SERVICE ®

USPS TRACKING #

Label 400 Jan. 2013
7690-16-000-7948

9114 9022 0078 9392 1784 04

